UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

CHRISTOPHER M. MURPHY,

        Plaintiff

          vs.

ANDREW C. HUGHSON;  FRANK B.
HILLMAN;  DANIEL HOWE; GLENN
GUNDERMAN; WILLIAM WASHBURN;
JOSEPH SPENCER; and DAVID STRONG,

        Defendants

-------------------------------------------------------------x

**AMENDED COMPLAINT**

**Case No. 6:17-cv-06339-MAT**

      Plaintiff, Christopher M. Murphy, complaining of the Defendants above-named,
as and for his Amended Complaint, respectfully alleges and shows to this Court as fol-
lows:

## JURISDICTION & VENUE

      (1) This action arises under the Constitution of the United States and, more par-
ticularly, the Fourth, Eighth, Ninth and Fourteenth Amendments thereto  (U.S.Const.,
Amends. IV, VIII, IX and XIV § 1), as well as federal statutory law and, more particu-
larly  the Civil Rights Act, Title 42 of United States Code (42 U.S.C. § 1983).

      (2) Based upon the foregoing, this Court has jurisdiction of this action under
28 U.S.C. §§ 1331, 1343(a)(1), 1343(a)(3) and 1343(a)(4).

      (3) Venue in the Western District of New York is proper and appropriate under

28 U.S.C. § 1408(1) and 28 U.S.C. § 1391(b).

## THE PARTIES

(4) At all times hereinafter mentioned, Plaintiff, Christopher M. Murphy, was a resident of the City of Elmira, County of Chemung and State of New York.   Since October of 2015, Plaintiff has resided in the Village of Bath, County of Steuben.

(5) Upon information and belief, at all times hereinafter mentioned, Defendants Andrew C. Hughson and Frank B. Hillman were. and they now are, police officers employed by the City of Elmira and City of Elmira Police Department.

(6) Upon information and belief, at all times hereinafter mentioned, Defendants Daniel Howe, Glenn Gunderman, William Washburn, Joseph Spencer and David Strong were, and they now are, Deputy Sheriffs employed by the County of Chemung and the Chemung County Sheriff's Department.

(7) At all times hereinafter mentioned, Defendants Andrew C. Hughson and Frank B. Hillman acted toward Plaintiff under color of law, statutes, ordinances, regulations, customs and/or usages of the State of New York , City of Elmira and/or  the City of Elmira Police Department.

(8)  At all times hereinafter mentioned, Defendants Daniel Howe, Glenn Gunderman, William Washburn, Joseph Spencer and David Strong acted toward Plaintiff under the color of the laws, statutes,  ordinances, regulations, customs and/or usages of the State of New York, County of Chemung and/or the Chemung County Sheriff's Department.

Page 2

(9)  All of the aforementioned Defendants cited or referred to above are being sued in both their respective individual capacities and respective official capacities as law enforcement officers and employees of the City of Elmira and the County of Chemung.

## THE FACTS

(10)  As earlier mentioned, from in or about 1987 through September of 2015, Plaintiff ("Murphy") resided continuously in the City of Elmira in a home owned by him in fee simple absolute.

(11)  From in or about 2002, Murphy has had ongoing disagreements and disputes with various persons employed by the City of Elmira and, more particularly, various Code Enforcement officers employed by the City.

(12)  On or about February 12, 2010, Murphy filed a lawsuit against the City of Elmira and certain of its Code Enforcement officers in this Court, seeking various relief in connection with the situation alluded to above (Case No. 10-CV-6075T).

(13)  Murphy thereafter voluntarily dismissed or discontinued that action without prejudice, pursuant to F.R.Civ.Pr., R. 41(a)(1), on or about May 13, 2011.

(14)  Upon information and belief, these dealings and disputes with the City of Elmira gave rise to a significant animus, hostility or resentment on the part of certain employees, officials and/or officers employed by the City - toward Murphy.    As a result of this, Murphy has had recurrent problems with the City - especially with regard to any matters relating to code enforcement, law enforcement and police.

(15) More particularly, Murphy has been singled out for harsh, unfair, punitive, discriminatory and arbitrary treatment and selective enforcement of the laws by code enforcement and police officers employed by the City of Elmira on a number of occasions over the years.

(16) On or about March 16, 2012, the City of Elmira caused misdemeanor criminal charges to be filed against Murphy in the Elmira City Court, pursuant to Executive Law § 382(2), alleging a number of residential code violations inside his home.

(17) Upon information and belief, there is no reported state or federal case - from New York or any other State, jurisdiction or judicial district - in which an individual was subjected to criminal prosecution based upon alleged residential code violations said to exist inside his or her own home, at least in the absence of some demonstrable danger or threat to the public health, safety or welfare or the involvement of a minor or infant.

(18) In sum, it is respectfully submitted that the criminal charges filed against Murphy represented a clear case of unlawful selective enforcement of the law - in violation of rights and protections guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

(19) Murphy's case was initially assigned to Elmira City Judge Steven Forrest, but the matter was later reassigned to Ithaca City Judge Hon. Scott Miller by the Sixth District Administrative Judge, Hon. Robert C. Mulvey, Justice of the Supreme Court.

(20) On or about August 12, 2015, Judge Miller unconditionally dismissed all

of the misdemeanor charges filed against Murphy. The City of Elmira thereafter filed additional misdemeanor and quasi-criminal charges against him - all of which were also unconditionally dismissed by Judge Miller.

(21) In the early morning hours of June 5, 2014, Murphy was arrested by Elmira Police officers - pursuant to a bench warrant issued by Judge Forrest. Judge Forrest issued the bench warrant as a result of Murphy's failure to appear in court on a date when he was supposedly required to personally appear or attend. As it turned out, Murphy's then-attorney failed to let him know that he was supposed to show up in court at the date and time in question. Over the long pendency of the criminal proceedings, Murphy made numerous court appearances - and never missed an appearance except the one mentioned above.

(22) Following his arrest, Murphy was taken in handcuffs to appear before Judge Forrest in the courtroom upstairs from the Elmira Police station.

(23) Judge Forrest informed Murphy that he would have to post Seven Hundred and Fifty ($750.00) Dollars bail in order to secure his release from custody. Judge Forrest also said that he wanted Murphy back in court at 1:00 P.M. that day - preferably accompanied by his attorney of record at the time.

(24) At the time of his arrest, Murphy was with his girlfriend, Barbara Camilli ("Camilli," "Barbara") and she was present in the courtroom when Murphy appeared before Judge Forrest.

(25) At the time of his arrest, Murphy had approximately Four Hundred

($400.00) Dollars in his briefcase and before he was placed in the police car, he handed the briefcase with the money in it to Camilli. Upon hearing that $750.00 would be required to obtain Murphy's release from police custody, Camilli more or less immediately left the courtroom and went directly to an A.T.M. machine to obtain the additional money.      The A.T.M. machine was less than a block away from the courthouse.

(26) Following Murphy's appearance before City Judge Forrest, Murphy was taken downstairs to the Elmira Police station and locked handcuffed in a little room.

(27)  Within no more than five minutes following Murphy's  arrival at the police station, Camilli  had returned from the A.T.M. machine - and immediately attempted to post Murphy's  $750.00 cash bail with the two Elmira police officers who were directly involved with the matter.      Upon information and belief, these two Elmira police offi- cers were the aforementioned Defendants Andrew C. Hughson ("Hughson") and Frank B. Hillman ("Hillman").

(28) Defendants Hughson and/or Hillman informed Camilli that she could not post bail on Murphy's behalf and that, if she wanted to bail him out and secure his release from police custody, she would have to go over to the Chemung County Jail.

(29)  For at least the next thirty (30) minutes, Murphy sat handcuffed in a small room at the Elmira Police station.  At no time was he fingerprinted, photographed or ot- herwise "processed" by the Elmira police.

(30) One of the two  Elmira City Police officers named as Defendants in this ac-

tion made a comment to Murphy which clearly seemed to relate or refer to a letter that he (Murphy) had sent to then-Elmira Police Chief Michael "Robbie" Robertson on April 26, 2012 - shortly after learning that criminal charges had been filed, or were about to be filed, against him by the City of Elmira.

(31) In his letter to then-Chief Robertson, Murphy advised that he was going to voluntarily surrender himself to the Elmira Police in connection with any criminal charges filed against him.

(32) Nonetheless, as Murphy pointed out in that letter, it seemed clear to him at the time that the City of Elmira planned to make a big deal out of the case - and instigate a lot of local press and media coverage of the matter.       As it turned out, the case was the subject of a banner headline and lengthy first-page story in the Elmira *Star-Gazette* and was also the lead story on the nightly news on both local network television affiliate stations.

(33) Nonetheless, based upon the provisions and import of Criminal Procedure Law § 160.10, there is no lawful authority for fingerprinting (or photographing for a mug shot) an individual charged with misdemeanor violation of the statutory section involved here - namely, Executive Law § 382(2).

(34) In his April 26th letter to then-Chief Robertson, Murphy called his attention Section 160.10 - in the hope of avoiding having any mug shot photo of himself splashed all over the local television news or showing up in the local newspaper.

(35)  In any event, while Murphy was being held in custody at the Elmira Police

Page 7

station following his court appearance on June 5, 2014, one of the two Defendant Elmira police officers commented to him that he had heard that he (Murphy) was "camera shy." He proceeded to tell Murphy that "this time around, you're gonna get your picture taken" - or words very close to that.

(36) At this time, Murphy is unable to specifically identify the Elmira police officer who made the aforementioned comment - or which of the two Defendant officers named above..

(37) After a little more than a half hour sitting handcuffed in this room at the Elmira Police station, a City police officer transported Murphy in custody to the Chemung County Jail.

(38) Upon information and belief, Camilli arrived at the Chemung County Sheriff's Department/County Jail building complex before Murphy did - and immediately posted and paid the entire Seven Hundred and Fifty ($750.00) Dollars in cash required to secure his release from custody. At the time she posted Murphy's bail, Camilli signed a bail receipt form proffered by one of the deputies.

(39) Almost immediately following Murphy's arrival at the County Jail, a deputy advised Murphy that his bail had been posted by his "wife or girlfriend" and that she was apparently raising a considerable "fuss." Upon information and belief, this deputy was Defendant Glenn Gunderman.

(40) Camilli later admitted to Murphy that she had become rather impatient and vocal with deputies upon being informed by them that there would or might be

substantial delay in releasing Murphy from custody - even though his bail had been posted in full in cash and she had signed all of the documents that deputies insisted that she sign.

(41) Upon information and belief, Camilli's handling of things in connection with Murphy's bail irritated the deputies with whom she dealt - and they apparently made little effort to conceal their aggravation with her.

(42) Within a few minutes of Murphy's arrival at the County Jail, one of the deputies advised his colleagues who were present at the time that "this guy's bail is sitting out there and we've got to cut him loose" - saying this in Murphy's immediate presence and within his hearing.   Upon information and belief, this deputy was the Defendant Glenn Gunderman.

(43)  Nonetheless, another deputy commented upon Camilli's handling of things regarding Murphy's bail and release.  Although Murphy was unable to hear exactly what this deputy actually said, Murphy  heard enough to realize that he was talking about her - and about her exchange with other Sheriff's Department personnel at the time she posted Murphy's bail.     Upon information and belief, this deputy was especially irritated or provoked - at Camilli or at Camilli's handling of things - and, by extension or association, it seemed,  at Murphy himself.     Upon information and belief, this deputy was one of the four remaining County Defendants - in other words, Daniel Howe, William Washburn, Joseph Spencer or David Strong.

(44) The same deputy referred to in ¶ "43," *supra*, made  a comment to the effect

Page 9

that Murphy could sit in his jail for a while - and thereupon proceeded to lock Murphy in a jail cell.

(45) Murphy was locked in a jail cell  for more than two hours after his bail had been posted and after the point in time at which the deputies who were dealing with him had clearly become aware that his full cash bail had already been posted and received by Sheriff's Department personnel.

(46)  During this period, Murphy was taken out of the cell to be fingerprinted, photographed and "processed" - which included having to answer numerous questions and sign various documents.

(47) At one point, after Murphy had been in a jail cell for approximately one and a half hours, the same deputy referred to in ¶¶ "43" and "44," *supra*, removed Murphy from his cell and took him to a small room - where he was strip-searched by him. Murphy was forced to remove every stitch of clothing he was wearing and lift his scrotum - and spread the cheeks of his rearend and cough.     He was forced to do all of this while this deputy stood there watching him - smirking visibly almost the entire time,

(48) After this humiliating procedure, Murphy  was returned to his cell by the same deputy.   On the way back to the cell, this deputy made a gesture to his colleagues present - in front of the other individuals locked in holding cells - with his thumb and forefinger.   This gesture was clearly intended as a derogatory or disparaging commentary on Murphy's penis or the size thereof.

(49) Finally, more than two hours after Camilli posted his bail,  Murphy was re-

Page 10

leased from custody and jail and he thereafter went back to City Court for the 1:00 P.M. court appearance mentioned *supra*, in ¶ "23."

(50)  Murphy is presently seventy (70) years old and has no criminal record and the underlying misdemeanor charge against him was, in effect, having a messy house.

(51)  As the direct and proximate consequence of the unlawful acts and in-dignities of the Defendants,  Murphy suffered extreme emotional and mental pain and suffering.

(52) More particularly, as the direct result of the unlawful conduct of the De-fendants, Murphy suffered great emotional trauma and shock, shame, humiliation, em-barrassment, anguish and emotional and mental distress.

(53) Murphy's emotional and mental pain and suffering did not end upon his release from law enforcement custody on June 5, 2014 - but rather continued thereaf-ter, albeit diminishing somewhat over time.

(54) The events hereinabove described were devastating and emotionally trau-matic for Murphy - and has a lasting significant effect upon him and upon his sense of security, well-being and happiness in the world.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS ANDREW C. HUGHSON AND FRANK B. HILLMAN

(55) Repeats and restates each and every allegation hereinabove set forth in Paragraphs "1" through "54" inclusive with same force and effect as if herein

Page 11

set forth in their entirety.

(56) Criminal Procedure Law § 520.15(a), in pertinent part, expressly states that: "[u]pon proof of the deposit of the designated amount [of bail *ed.*] the principal must be forthwith released from custody."

(57) Upon information and belief, the Elmira Police Department routinely receives and accepts bail money - posted or paid by or on behalf of individuals arrested by Elmira police officers - and, upon receipt or posting of the specified bail, releases the arrestee from their custody.

(58) It is respectfully submitted that, on these facts, there was and is no lawful, reasonable or good faith reason or justification for the arbitrary refusal of Defendant Elmira police officers Hughson and Hillman to refuse to accept Camilli's tender of the Seven Hundred and Fifty ($750.00) Dollars cash bail specified by Elmira City Judge Forrest for Murphy's release from custody.

(59) Otherwise stated, it is respectfully submitted that, at least in the absence of facts or circumstances not remotely present here, as a matter of law, the Elmira City Police officers involved with this matter were lawfully obligated to accept the cash bail that was lawfully and properly posted or tendered by Camilli on Murphy's behalf - and thereupon promptly release him from their custody.

(60) City Defendants Andrew C. Hughson and Frank B. Hillman lacked any colorable or conceivable lawful authority, prerogative, power or discretion to arbitrarily refuse to accept the lawful tender of the cash bail which Camilli attempted to pay or post

on Murphy's behalf or arbitrarily refuse him from their custody upon the payment or posting of said bail money and signing any required receipt or paperwork.

(61) The actions of the aforementioned two Elmira City Police officers named as Defendants herein in this matter were wholly without any colorable or possible ground or justification in law, reason or good faith.

(62) Upon information and belief, these two City Defendants acted deliberately, maliciously and spitefully - intentionally singling Plaintiff out for harsh, discriminatory, arbitrary and unlawful treatment, in knowing disregard of the fact that they were clearly violating fundamental rights and protections guaranteed to Murphy under the Constitution of the United States and the Constitution of the State of New York.

(63) Upon information and belief, the motive of Defendants Andrew C. Hughson and Frank B. Hillman was to avail themselves of an opportunity to harass, oppress or penalize the Plaintiff - or perhaps teach him a lesson of sorts.

(64) These Defendants acted unlawfully and with actual malice toward the Plaintiff and with wanton indifference and deliberate disregard of the rights, immunities and protections guaranteed to him under the United States Constitution.

(65) The actions of Defendants Hughson and Hillman hereinbefore complained of clearly violated Murphy's fundamental rights, immunities and protections in the nature of due process of law, equal protection of the laws and to be free of unreasonable searches and seizures, all of which are guaranteed to all citizens of this country under the Fourth and Fourteenth Amendments to the United States Constitution.

(66) At all times herein mentioned, these fundamental federal constitutional rights and protections were, and they now are, all well-established under controlling decisions of the United States Supreme Court and the United States Court of Appeals for the Second Circuit.

(67) It is respectfully submitted that any reasonable and competent officer or official situated similarly to the Defendants Hughson and Hillman would be aware of the fact that the actions herein complained of were and are unlawful and unconstitutional - and thus totally beyond the permissible scope of their lawful authority. Otherwise stated, the actions herein complained of were and are clearly established to be beyond the scope of the Defendants' lawful authority and discretionary power.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS DANIEL HOWE, GLENN GUNDERMAN, WILLIAM WASHBURN, JOSEPH SPENCER AND DAVID STRONG

(68) Restates and realleges each and every allegation hereinabove set forth in Paragraphs "1" through "67" inclusive with same force and effect as if herein set forth in their entirety.

(69) Upon information and belief, the County Defendants Daniel Howe, Glenn Gunderman, William Washburn, Joseph Spencer and David Strong (hereinafter collectively referred to as "the County Defendants") are the five Chemung County Sheriff's Deputies who were personally and directly involved with, and responsible for, the unlawful and unconstitutional acts committed while Murphy was held in the custody of the

Page 14

Chemung County Sheriff's Department at the Chemung County Jail.

(70) The County Defendants acted unlawfully, unreasonably, wantonly and maliciously in arbitrarily refusing to promptly release Murphy from their custody upon receipt of the entire Seven Hundred and Fifty ($750.00) Dollars in cash bail specified by Elmira City Judge Forrest - and instead unlawfully, unreasonably and unjustifiably holding Murphy in a jail cell for over two hours without any colorable or arguable reason or cause therefor.

(71) Other than actually handing over the full amount of the required bail in cash to Sheriff's Deputies, the only other condition precedent to Murphy's release from custody "forthwith" (CPL § 520.15[1]) was for Camilli to complete and sign the form specified in Criminal Procedure Law § 520.15(2). Camilli duly completed and signed this form - the one presented to her by Deputies - at the time she paid over the cash to them.

(72) The County Defendants, and the deputy referred to in ¶¶ "43," "44," "47" and "48," *supra*, specifically, also acted unlawfully, unreasonably, wantonly and maliciously by arbitrarily subjecting Murphy to the humiliation of a strip search that was entirely unnecessary and unjustified - and that was clearly motivated by improper, punitive animus wholly unrelated to any possible legitimate law enforcement or security concerns or purposes.

(73) The strip search of Murphy was unlawful, unnecessary, unjustified and unconstitutional for at least the reason that it was carried out at least an hour and a half af-

ter Murphy's bail had been posted - and at least an hour and a half after the Defendant deputy referred to in ¶¶ "43," "44," "46" and "48," *supra*, and the other deputies had clearly been made aware of the fact that Murphy's bail had been posted and paid.

(74) It is respectfully submitted that the only possible lawful or reasonable justification for subjecting an arrestee or individual to the indignity, humiliation and emotional trauma of a full strip search such as the one that Murphy was subjected to is to insure that contraband such as weapons or drugs is not permitted to find its way into the jail and into the hands of the jail population.

(75)  Once the five County Defendants learned that Murphy's bail had been posted and any and all lawful conditions precedent to his release from custody had been satisfied, it is respectfully submitted that they were lawfully obligated to release Murphy from custody - and do so "forthwith" (CPL § 520.15[1]).

(76) At the time Murphy was subjected to a strip search by the Defendant deputy referred to in ¶¶ "43," "44," "47" and "48," *supra*, said Defendant clearly had actual personal notice or knowledge of the fact that Murphy's bail had been posted and that all conditions for his release from custody had been satisfied.

(77)  For at least the foregoing reasons, it is respectfully submitted that there could be no good faith reason or lawful justification for subjecting Murphy to a full strip search at that point in time.

(78)  The painful, degrading and humiliating strip search of Murphy conducted by this Defendant was clearly gratuitous, unlawful and unreasonable - violating Murphy's

rights and protections under the Fourth Amendment to the United States Constitution.

(79) For at least the reasons earlier set forth, it is respectfully submitted that the five County Defendants hereinbefore named deliberately and singled Murphy out for harsh, discriminatory, arbitrary and oppressive treatment and did so maliciously and wantonly.

(80) The strip search of Plaintiff was extremely degrading, humiliating and painful for Plaintiff - especially in light of the manner in which it was conducted and the disparaging hand gestures made by said Defendant following completion of the ordeal.

(81) On these facts, the County Defendants' conduct was and is wholly without any colorable or conceivable basis or justification in law, reason or good faith.   Indeed, the actions herein complained of were egregious, willful and malicious and, upon information and belief, were deliberately intended to penalize, oppress, humiliate and hurt the Plaintiff.

(82) The conduct herein complained of represents an unconscionable abuse of the enormous power and authority entrusted to these Defendants by reason of their office or position as law enforcement officers and government employees.

(83) The actions of the five County Defendants clearly violated Plaintiff's fundamental rights, protections and immunities in the nature of due process of law, equal protection of the laws, to be free of unreasonable search and seizure, to not be subjected to cruel and unusual punishment or treatment and to privacy, all of

which are guaranteed under the Fourth, Eighth, Ninth and Fourteenth Amendments
to the United States Constitution.

(84) The actions of the five County Defendants clearly violated federal constitu-
tional rights and protections that were and are well-established by controlling deci-
sions of the United States Supreme Court and the United States Court of Appeals for
the Second Circuit.

(85)  It is respectfully submitted that any reasonable officers situated similarly
to the aforementioned five County Defendants would unquestionably know that the ac-
tions hereinbefore complained of were unlawful and well beyond the permissible scope
of their lawful authority and discretion - and also violate the aforementioned provisions
and protections embodied in the United States Constitution.

## DEMAND FOR TRIAL BY JURY OF ALL ISSUES SO TRIABLE

(86) Pursuant to F.R.Civ.Pr., Rule 38(b), Plaintiff hereby demands trial by jury
as to any and all issues so triable as of right.

## REQUEST FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests judgment against the De-
fendants for at least the following relief, to wit:

[a] pursuant to the FIRST cause of action hereinbefore stated, the sum
of Two Thousand and Five Hundred ($2,500.00) Dollars in compensatory damages,

against Defendants Andrew C. Hughson and Frank B. Hillman, jointly and severally, in their official and their individual capacities respectively;

[b] pursuant to the FIRST cause of action hereinbefore stated, the sum of five Thousand ($5,000.00) Dollars in punitive damages, against Defendants Andrew C. Hughson and Frank B. Hillman, as individuals, jointly and severally;

[c] pursuant to the SECOND cause of action hereinbefore stated, the sum of Ten Thousand ($10,000.00) Dollars in compensatory damages, against Defendants Daniel Howe, Glenn Gunderman, William Washburn, Joseph Spencer and David Strong,  jointly and severally, in their official and their individual capacities respectively;

[d] pursuant to the SECOND cause of action hereinbefore stated, the sum of Ten Thousand ($10,000.00) Dollars in punitive damages, against Defendants Daniel Howe, Glenn Gunderman, William Washburn, Joseph Spencer and David Strong,  as individuals, jointly and severally;

[e] granting Plaintiff his reasonable attorney's fees, pursuant to 42 U.S.C. § 1988, in the event that he retains and is represented by counsel in connection with this action;

[f] prejudgment interest as mandated or recoverable under Article 50 of the Civil Practice Law and Rules and/or federal law;

[g] awarding Plaintiff the costs and disbursements of this action, insofar as the same were or are actually paid by him;

Page 19

[h] granting Plaintiff such additional and further relief as may be equitable and proper to this Court.

Date: October 25, 2017

Signed and respectfully submitted,

Christopher M. Murphy
Plaintiff, appearing *pro se*
Residence and Post Office Address:
105 Geneva Street, Apartment 237
Bath, New York 14810
Telephone: (607) 664-6717

**Christopher M. Murphy**
**105 Geneva Street, Apartment 237**
**Bath, New York 14810**
**(607) 664-6717**

October 25, 2017

Office of the Clerk
United States District Court
2120 United States Courthouse
100 State Street
Rochester, New York 14614-1387

> **Re: Murphy v. County of Chemung, City of Elmira et al.**
> **Case No. 6:17-cv-06339-MAT**

Dear Sir or Madam:

Please find enclosed my Amended Complaint in the above-encaptioned action.

I am also enclosing a copy of my letter of today's date to Judge Telesca - which was sent via facsimile (without enclosure) earlier today to (518) 613-4065.

Please feel free to contact me at any time if there is any question or problem regarding this matter.

Very truly yours,

Christopher M. Murphy

Enc.
Sent via Priority Mail (USPS)



**Christopher M. Murphy**
**105 Geneva Street, Apartment 237**
**Bath, New York 14810**
**(607) 664-6717**

October 25, 2017

Hon. Michael A. Telesca
United States District Judge
United States District Court
2120 United States Courthouse
100 State Street
Rochester, New York 14614-1387

### Re: Murphy v. County of Chemung, City of Elmira et al.
### Case Number: 6:17-cv-06339-MAT

Dear Judge Telesca:

In your Order dated September 25, 2017, you granted me thirty (30) days within which to submit an Amended Complaint in this action. According to the clear wording and import of your Order, this thirty-day period commenced on the date of entry thereof - in other words, on September 25th.

Regrettably, I expect to be one or two days late in filing my amended pleadings - inasmuch as I am not set up to file the papers electronically.

I respectfully request an extension of time within which to file my Amended Complaint - which will be sent out today before the close of business.

This has not been a good time for me. I've had some rather distressing health issues arise and my cat died of feline leukemia over this past weekend. I had this cat for all of his sixteen years and he slept with me every night.

I also made the stupid mistake of noting October 27th as the deadline on my calendar - based on the September 27th postmark on the envelope from the Clerk's Office enclosing your Order.

If I had a car, I would most assuredly get in it and drive to Rochester to file my papers today so as to timely comply with your Order. Nonetheless, I do not have a motor vehicle at this time.

In any event, I respectfully ask for an extension of time within which to file

Page 1

Hon. Michael A. Telesca
United States District Judge
October 25, 2017
Page Two

my Amended Complaint.          This case is extremely important to me and I would
hate to lose it as a result of such an avoidable mistake - wholly unrelated to the un-
derlying merits of my lawsuit. Barring the unforeseen, my papers will be delivered
via Priority Mail to the Clerk's Office tomorrow - or Friday, October 27th, at the la-
test.

      Thank you so much for your courtesy and consideration regarding this matter.

                Very truly yours,

                Christopher M. Murphy

Sent via Facsimile to (585) 613-4065

UNITED STATES DISTRICT COURT
CHAMBERS OF
JUDGE MICHAEL A. TELESCA
272 UNITED STATES COURTHOUSE
ROCHESTER, NY 14614

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300

ROCHESTER
NY 144
27 SEP '17
PM 2 1

Christopher M. Murphy
105 Geneva Street
Apt. 237
Bath, NY 14810

14810-941662