UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

CHRISTOPHER M. MURPHY,

*Plaintiff*

vs.                                           No. 17-CV-6339-MAT-MWP

ANDREW C. HUGHSON, FRANK B. HILLMAN,
DANIEL HOWE, GLENN GUNDERMAN,
WILLIAM WASHBURN, JOSEPH SPENCER
and DAVID STRONG,

*Defendants*
-----------------------------------------------------------------------x

<u>DECLARATION OF PLAINTIFF CHRISTOPHER MURPHY IN
OPPOSITION TO MOTION TO COMPEL BY DEFENDANTS,
PURSUANT TO FED.R.CIV.P. 37</u>

**PLAINTIFF CHRISTOPHER MURPHY,** appearing *pro se* at the present

time, in opposition to the motion by Defendants Howe, Gunderman, Washburn, Spen-

cer and Strong, to compel discovery, pursuant to Fed.R.Civ.P. 37, respectfully declares

and shows to this Court the following:

(1)  I am the Plaintiff above-named and I am appearing *pro se* at the present time.

I make this Declaration in opposition to the motion by Defendants Howe, Gunderman,

Washburn, Spencer and Strong ("County Defendants"), by their Attorneys, for an Order,

pursuant to Fed.R.Civ.P. 37(a)(2), 37(d), compelling me to comply with certain discov-

ery demands.

**AS A MATTER OF LAW, ALL DISCOVERY DEMANDS SERVED ON
OCTOBER 28TH WERE INVALID *AB INITIO* AND NULLITIES
IN THE EYES OF THE LAW**

(2) In his Declaration, Counsel points to certain discovery demands served on me on October 23, 2019.[1]   . Those discovery demands were actually sent out and served on me on October 28, 2019.[2].

(3) The discovery demands served on me on October 28, 2019[3] included the following:

> [a] Defendants' First Request for Production of Documents;[4]
>
> [b] Defendants' First Set of Interrogatories to Plaintiff;[5] and
>
> [c] Notice of Deposition Upon Oral Examination; said deposition to

take place at Counsel's law office in Rochester on December 10, 2019 at 9:00 A.M.[6]

(4) In his  his Declaration,[7] Counsel refers to  refers to the Amended Scheduling Order entered by Magistrate Judge Payson ("Judge Payson") on November 5th - which

---

[1] Sanders Declaration, Doc. 40-1, ¶ "9," at Page 2 of 4

[2] See Doc. No. 40-2, at Page 2 of 24; Doc. No. 40-2, at Page 13 of 24; and Doc. No. 40-3, at Page 2 of 4

[3] **PLEASE NOTE** : Unless otherwise explicitly specified, all dates herein mentioned are in the year *2019.*

[4] Doc. No. 40-2, at Pages 3 to 12 of 24

[5] Doc. No. 40-2, at Pages 14 to 20 of 24

[6] Doc. No. 40-2, at Pages 22-23 of 24

[7] Sanders Declaration, Doc. No. 40-1, ¶ "10," at Page 2 of 4

Page 2

set an extended or revised deadline for ***completion*** of discovery as February 18, 2020.[8]

(5) In the aforementioned Amended Scheduling Order, entered on November 5th Judge Payson further explicitly specified that "[a]ll motions to compel discovery shall be filed at least thirty (30) days <u>prior</u> to the factual discovery cutoff."[9]

(6) The above-referenced motion to compel by the County Defendants was filed on February 12, 2020. By my computation, this was twenty-four (24) days after the deadline for making such a motion set in Judge Payson's Amended Scheduling Order.

(7) Rather curiously, I think, in his Declaration, Counsel makes no mention at all of Judge Payson's prior Amended Scheduling Order, which was entered on June 26th - which set the deadline for completion of discovery as October 21st.[10]    This (First) Amended Scheduling Order entered on June 26th states that: "[a]ll motions to compel discovery shall be filed at least thirty (30) days <u>prior</u> to the factual discovery cutoff."[11]

(8) It was the (First) Amended Scheduling Order, entered on June 26th, which was in force and controlling of the timing and deadlines for discovery at all times prior to the entry of Judge Payson's (Second) Amended Scheduling Order on November 5th.

---

[8] Doc. No. 38 (emphasis added by me)

[9] Doc. No. 38, Page 1 of 4 (emphasis by the Court in original text)     The word ***shall*** is universally construed as imperative or mandatory. "The word 'shall' is a word of command." ***Black's Law Dictionary*** 1233 (3d ed. 1979)

[10] Doc. No. 35 (***Note:*** For simplicity, the Amended Scheduling Order entered on June 26th *will hereinafter be referred to as the (First) Amended Scheduling Order (Doc. No. 35).* The Amended Scheduling Order entered on November 5th (Doc. No. 38) will be designated the (Second) Amended Scheduling Order.

[11] Doc. No. 35, Page 1 of 4

(9) In light of the foregoing, it is submitted that all of the discovery demands served on October 28th were untimely and, accordingly, invalid.    More particularly, all of those discovery demands were void and legal nullities *ab initio*, as a matter of law.

(10) The entry of a (Second) Amended Scheduling Order on November 5th - setting a new deadline for completion of discovery - does not serve to rescue the untimely (and thus invalid) October 28th discovery demands from the existential abyss.

(11) In his Declaration, Counsel refers to my "failure to respond to discovery demands or appear for a deposition in compliance with the Court's Amended Scheduling Order and without court intervention."[12]

(12) Nonetheless, it is they, not I, who failed to comply with the Court's Scheduling Order.[13]    Rather than await a (Second Amended Scheduling Order from Judge Payson - extending and enlarging the previous deadline for completion of discovery - Attorneys Sanders and Arias chose to serve their discovery demands *after* the applicable deadline for completion of discovery (October 21st) set in the Scheduling Order in force and controlling at the time.

(13) In *Lohrenz v. Donnelly*, 187 F.R.D. 1, 11 (Dist.D.C. 1999): "When a party  is under an impending deadline, that deadline must be met unless the court grants an enlargement of time.  Submitting a motion for an enlargement of time at

---

[12] Sanders Declaration, Doc. No. 40-1, ¶ "16," at Pages 3-4 of 4

[13] See *United States v. Reyes*, 307 F.3d 451, 454, 458 (6th Cir.  2002); *Semi-Tech Litigation, LLC v. Bankers Trust Co.*, 219 F.R.D. 324, 325 (S.D.N.Y. 2004)

the last minute does not automatically allow plaintiff to pick a new deadline of her choosing."

(14)  The Court of Appeals has stated that "...we wish to emphasize the import-ance  we place on a party's compliance with discovery orders.   . .. A party who flouts such orders does so at his peril." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988) (Quoted in *Baker v. Ace Advertisers' Service, Inc.*, 153 F.R.D. 38, 40 [S.D.N.Y. 1992])

(15) In their Memorandum of Law,[14] Attorneys Sanders and Arias cite three un-published, unreported Western District cases.  Counsel cite *Metzgar v. U.A. Plumbers & Steamfitters Local No. 22 Pension Fund*, No. 13-CV-85V(F), 2017 U.S.Dist. LEXIS 164701, at 7, 2017 WL 4401499 (W.D.N.Y. Oct. 4, 2017)(Foschio, U.S.M.J.).     This case is cited in support of their contention that ". . . based on Plaintiff's failure to object or otherwise respond to Defendants' discovery demands, such objections have been waiv-ed."

(16)  I do not agree with Counsel's assertion in the above regard - at least as any sort of blanket proposition which applies universally.   "A party's failure to respond to discovery demands within the required time-frame may, . . ., be excused by the Court for good cause." *Melendez v. Greiner*, 2003 WL 22434101, at 2  (S.D.N.Y. Oct. 23, 2003)[15]

---

[14] Doc. No. 40-6, at Pages 4-5 of 6

[15] "[T]he protections and sanctions found in the discovery rules are not absolute and contemplate the use of judicial discretion.*" Davis v. City of New York*, 1988 WL 42189, at 2 (S.D.N.Y. Apr. 28, 1988)  (See also *Billups v. West et al.*, 1997 WL 177897, at 1 [S.D.N.Y. Apt. 11, 1997])

(17)  Magistrate Judge Foschio's decision and opinion in *Metzgar* is, I think,

significant for another reason - one which Counsel clearly seem to have overlooked

in seeking to make use of, and rely upon, that case.

(18)  Simplifying the material facts considerably:   Plaintiffs' answers to the

Defendants' Interrogatories were due March 27th.  On March 29th,  Plaintiffs moved

to amend the present Scheduling Order, so as to extend the time within which to re-

spond to Defendants' Interrogatories.    On April 6th, Defendants filed a cross-motion

to compel Plaintiffs to respond to their Interrogatories.  Plaintiffs neglected to oppose

Defendants' cross-motion to compel.

(19)  As Judge Foschio explains:

> If Plaintiffs genuinely believed Defendants had agreed to ex-
> tend the period for Plaintiffs' answers to Defendants' Interrog-
> atories thereby enlarging the time for Plaintiffs to assert timely
> objections to Interrogatory No. 4, it was incumbent upon Plain-
> tiffs to raise this as a ground in opposition to Defendants' cross-
> motion to compel at that time.   Nor could Plaintiffs reasonably .
> believe that by granting Plaintiffs' request to amend the schedu-
> ing order to extend the time within which to complete discovery
> in the case the court thereby also excused, *nunc pro tunc,* Plain-
> tiffs' failure to timely object to Interrogatory No. 4.      In short,
> Plaintiffs' apparent belief that by amending the Scheduling Or-
> der to extent the period for discovery to be completed the court
> thereby also enlarged the time for Plaintiffs to serve objections,
> which had then expired, was mistaken.[16]

(20)  So to here . . .By parity of reasoning and, I think, necessary implication,

the subsequent entry of a (Second) Amended Scheduling Order[17]  on November 5th

---

[16] *Metzgar*, 2017 U.S.Dist. LEXIS 164701, at 5-6

[17] That is to say, subsequent to the untimely served discovery demands on October 28th.

does not operate to excuse, *nunc pro tunc*, Counsel's failure to serve the discovery

demands in question on or before the October 21ˢᵗ deadline for completion of discov-

ery set by Judge Payson in the Scheduling Order in force at the time.   At all times pri-.

or to the entry of her (Second) Amended Scheduling Order on November 5ᵗʰ. the time-

table for discovery was controlled by the (First) Amended Scheduling Order.

(21) In a similar vein, in *Gavenda v. Orleans County*, 182 F.R.D. 17, 20 (W.D.

N.Y. 1997), Magistrate Judge Scott teaches us that:[18]

> Generally, discovery requests are to be made sufficiently in-
> side the discovery period to allow for a response prior to the
> discovery cut-off date.  Discovery requests which are served
> too late in the discovery period to allow for a timely response,
> have been disallowed.  (Citations omitted)

(22) In *Thomas v. Pacificorp*, 324 F.3d 1176, 1179 (10ᵗʰ Cir. 2003), this is

what the Tenth Circuit reminds:

> [Plaintiff] served several discovery requests on August 2,
> 2001, after the completion of discovery deadline of July 31,
> 2001. However, even if the requests had been served on Ju-
> ly 31, the requests were still not timely.  The Federal Rules
> of Civil Procedure allow parties thirty days to respond to in-
> terrogatories and requests for production.   Fed.R.Civ.P. 33
> (b)(3), 34(b).     Therefore, requests must be served at least
> thirty days prior to a completion of discovery deadline.[19]

(23) Intuitively, one might fairly suppose that where, as here, discovery de-

mands are *served* after the discovery-completion deadline, this is a more serious -

---

[18] And, all things considered, I am just a student, always and eternally.  Law is not
my strong suit, numbers are, so I am here to learn and seek guidance.

[19] Citing: *Smith v. Principal Casualty Ins. Co.*, 131 F.R.D. 104, 105 (S.D.Miss.
   1990)

and higher - order of unacceptability than, for example, the circumstance found in *Gavenda*.  In the latter case, as I read it, the discovery requests were *served* prior to the court-ordered deadline, but the thirty-day period allowed for *response* ran out after the discovery-completion deadline.[20]

(24) Common sense compels the same conclusion.   A party upon whom discovery demands have been served is justly and properly entitled to know whether not they are valid and legally efficacious - as of the time of service. The servee[21] may not reasonably or appropriately be placed in the unenviable position of not knowing whether he or she is really required to respond, pending some later judicial ruling or decision answers that question.  A ruling or decision which might - and, then again,  might not - actually come to pass.   In this case, Judge Payson's (Second) Amended Scheduling Order (Doc. No. 38) was entered in November 5th.  Hypothetically, if it had instead been entered two weeks later - on November 19th - would it still be reasonable  to impose upon me some affirmative duty to timely respond to the October 28th discovery demands?  I think not.  Nonetheless, by any meaningful yardstick of either law or logic, it is respectfully submitted that there is no distinction -  bright-line or otherwise - between the one circumstance and the bother.   Any attempt at line-drawing would necessarily be arbitrary.

(25) Quite apart from any of the above, Judge Payson's (Second) Amended

---

[20] Where, as here, the discovery demands are served "by any method other than hand delivery, . . .," three additional days must be tacked on to the permissible response period.  Fed.R.Civ.P.6(d).  (See also: Rule 5[b][2][c]) .

[21] My own word, I guess.

Scheduling Order (Doc. No. 38), entered November 5th, not only sets a February 18th deadline for completion of discovery.   It also explicitly states that "[a]ll motions to compel discovery shall be filed at least thirty (30) days <u>prior</u> to the factual discovery cutoff."

(26) County Defendants' pending motion to compel was filed on February 12, 2020.  In other words, only six (6) days prior to the February 18th deadline for completion of discovery.

(27) To be sure, on February 24, 2020, the Court entered an Amended Scheduling Order,[22] setting June 17, 2020 as the revised deadline for completion of discovery. I consented to the entry of this Order.

(28)  It appears that the aforementioned Order was granted in response to the February 19, 2020 letter request from Attorney Arias, on behalf of her County Defendant clients, [23] "request[ing] that the Discovery Deadlines be extended 120 days."

(29)  Nonetheless, on these facts, it is respectfully submitted that the subsequent entry of a (Third) Amended Scheduling Order (Doc. No. 44), on February 24, 2020, does not operate to validate, *nunc pro tunc* or otherwise, Counsel's untimely motion to compel, filed and served by them on February 12, 2020 (Doc. No. 40-1, at Pages 1 to 4).

(30) 7 *Moore's Federal Practice - Civil* § 34.10[3] (2020 ed.) provides, in

---

[22] Doc. No. 44 (hereinafter referred to  the "[Third] Amended Scheduling Order").

[23] Doc. No. 43, Page 1 of 2

pertinent part, as follows:

> Although Rule 34, like other discovery rules, is silent with respect to when a discovery request comes too late, Rule 16(b) requires that in most actions the court must enter a scheduling order setting the time for the completion of discovery.[24]   When such an order is entered, a party will have to seek leave from the court to serve Rule 34 requests that seek production or inspection after the cut-off date, whether service is accomplished before or after the cut-off date.[25]

> . . .

> In the rare case in which no discovery cut-off date has been set by the court, the judge may nonetheless sustain objections to production or inspection requests served at a late stage in the proceeding that their disposition may delay the trial.

(31)  The above-excerpted section of Moore's draws a distinction between cases in which a Rule 16 Scheduling Order has been entered, setting a date certain and deadline for completion of discovery, on one hand, and cases in which no such order has been entered by the Court, on the other.

(32)  suggest - with due deference - that, in the latter case, it falls to the servee to timely raise any objection(s) to the request and its timeliness, whereas, in the former, it is a horse of a decidedly different color.    Where there is a court-imposed deadline certain, and the server ignores it and fails to comply with it, the servee is under no duty or obligation to comply, respond or act in any way.

---

[24] Fed.R.Civ.P. 16(a)(3)

[25] Citing, *inter alia*, *Gavenda v. Orleans County*, 182 F.R.D. 17, 20 (W.D.N.Y. 1997) (Scott, U.S.M.J.); *Contardo v. Merrill Lynch, Pierce, Fenner & Smith*, 119 F.R.D. 622, 625 (D.Mass. 1988);   *Valcarcel v. ABM Indus./ Diversico Indus.*, 383 F.Supp.3d 562, 565 (M.D.N.C. 2019); and *Thomas v. Pacificorp*, 324 F.3d 1176, 1179 (10th Cir. 2003)

(33)  In other words, if a party is timely served with Interrogatories or a Request for the Production of Documents, and he or she wants to raise some objection to any or all of those discovery demands, the burden is on him or her to timely do this.      If he or she fails to do this in a timely fashion, any objections that he or she might otherwise have to same are generally waived.

(34) Conversely, and by way of contrast, where, as here, Interrogatories are untimely served - at least on the particular facts here presented - no burden to respond or object is shifted to or placed upon the servee.   Where, as here, there is an order of the Court setting a deadline for completion of discovery, timely service of any discovery demands is a condition precedent to their validity.    Where, as here, the discovery demands were untimely served - that is to say, served *after* the deadline for completion of discovery in the Scheduling Order, the servee is under no duty or obligation whatsoever to respond, object or otherwise affirmatively act.

(35)  Stated somewhat differently, where, as here, a party serving discovery demands that are clearly untimely - based on a court-imposed deadline -  the server may not thereby impose some affirmative duty or obligation to timely respond or object on the servee.   The reason for this is, quite simply, that such untimely discovery demands were and are invalid and void *ab initio*   They are nullities in the eyes of the law and possessed of no legal effect, force or import whatsoever.

(33) For at least the reasons mentioned above, as of November 5th - the date on which Judge Payson's (Second) Amended Scheduling Order (Doc. No. 38) was entered - the discovery demands served by Counsel on October 28th were already on the far bank

Page 11

of the Styx.        As Judge Foschio explained in Metzgar, the subsequent entry of a new Scheduling Order, setting a new deadline for completion of discovery, does not open- ate to excuse, ***nunc pro tunc***,  previous untimely service of discovery demands.

(34) I say - respectfully - that the foregoing line of reasoning puts any and all of the October 28th discovery demands on the far bank of the Styx from the moment of their service.      And, as Judge Foschio makes clear beyond peradventure, this is a one-way voyage - with no second act.

## AMENDED NOTICE OF DEPOSITION UPON ORAL EXAMINATION SERVED ON DECEMBER 23RD

(35) Admittedly, the Amended Notice of Deposition Upon Oral Examination served on December 23rd is valid.[26]    I am remiss for not either complying with it or otherwise timely responding to it in some appropriate fashion.

(36) I intended to raise an objection to this Amended Notice - pursuant to Rule 30(a)(1)(B) - namely, "the person to be examined has already been deposed in the case."[27]   In such case, leave of Court is required to seek to depose the person or party who has already been deposed in the case.

(37) I had also planned to bring a cross-motion for a protective order, pursu- ant to Fed.R.Civ.P. 26(c)(1)(hereafter, simply "Rule"), respectfully requesting a rel-

---

[26] Sanders Declaration, Doc. No. 40-1, ¶ "13," at Page 3 of 4; Exhibit C, Doc. No. 40-4, at Pages 4-5 of 5

[27] The most recent version of the Rules I have is from 2008.  It is possible that the sections have since been renumbered or other changed made in the interim.  I apol- ogize to the Court and Counsel for any confusion or inconvenience.

atively brief moratorium or stay of any depositions on oral questions, pursuant to Rule 30, but time does not allow.    It is quite possible, indeed likely, that I make such an application by way of independent motion - promptly following the filing and service of these papers.    I have what I believe are meritorious grounds for relief along these lines.    So too, the grace period that I seek is, and will be, relatively brief.    As alluded to above, I strongly feel that my reasons are, in this regard, good ones.

(38) One of several of those reasons goes to the fact that, to all practical intents and purposes, I have already been "deposed" - from soup-to-nuts, as to all of material facts, events and circumstances upon which my claims in the case *sub judice* rest.

(39) On or about September 14, 2014, I filed and served a formal Notice of Claim, pursuant to New York General Municipal Law § 50-e,  specifically dealing with the events of June 5, 2014 - noticing my claims against both the County of Chemung and the City of Elmira - in connection with the acts and events of June 5, 2014, which form the factual basis for each and every one of Plaintiff's claims and causes of action in the present case.

(40) Attorney Jeremy J. Hourihan, who represents Defendants Elmira Police Officers Hughson and Hillman in the present case, but who represented the County of Chemung at the time, served me with a Notice or Demand for Examination, pursuant

to General Municipal Law § 50-g[28] in connection with the Notice of Claim against Chemung County referred to above.

`       (41)  Pursuant to this Notice, I was required to personally appear at Counsel's then-law office to be examined and deposed on oral questions under oath regarding the facts and circumstances of my claim against the County arising from the events which took place on June 5, 2014.     In other words, the same acts, events and matters which form the basis of the claims and causes of action set out in both my original Complaint and my Amended Complaint in the case at bar.

        (42)   In pertinent part, General Municipal Law § 50-h(1) provides that a municipal entity against whom a Notice of Claim has been filed under Section 50-e has the right "to demand an examination of the claimant relative to the occurrence and the extent of the injuries or damages for which claim is made . . . "

        (43)   The purpose of the General Municipal Law provision governing examination of claims is to enable the municipality to make prompt investigation of those circumstances surrounding the claim - for the principal purpose of enabling it to determine whether the claim should be adjusted or satisfied before the parties are subjected to the expense of litigation.[29]

        (44)   That examination took place at Attorney Hourihan's former law office

---

[28] A copy of the Notice is attached as Exhibit A.  A copy of Attorney Hourihan's  cover letter is annexed as Exhibit B.

[29] *See generally*: *Nasca v. Town of Brookhaven,* 10 A.D.3d 415 (2d Dep't 2004); *Travelers Property Cas. Corp. v. City of Troy,* 6 Misc.3d 308 (2004);   *DiGiantomasso v. City of New York,* 55 A.D.3d 502 (1st Dep't 2008)

Page 14

on January 13, 2015.[30]   Former Assistant Elmira City Attorney Matthew Buzzetti was .

was also present during the examination, although almost all of the questioning was

done by Attorney Hourihan.    As noted above,  for purposes of this Examination, At-

torney Hourihan represented the County of Chemung and Attorney Buzzetti represent-

ed the City of Elmira.

(45)   I was not represented by counsel at that examination.    I answered every

single question put to me - in full and to the best of my ability.   I did not object to any

of the question, nor did I equivocate or attempt to qualify any of my answers. I did this

notwithstanding the fact that the number and scope of the questions put to me in the

course of that examination extended well beyond the normal and accepted scope of an

examination under Section 50-h of the General Municipal Law - based on the yardstick

furnished by the reported cases.

(46)   Attorney Hourihan subsequently sent me a copy of transcript of that ex-

amination - which was lengthy.      As I recall, it was close to a hundred pages long -

but my recollection is that it was not more than a hundred pages long.

(47)   Unfortunately (for me),  that transcript was in my former home at the time

it was demolished.[31]    I've been through everything that Barbara and I were able to sal-

vage or retrieve from our house with a fine-toothed comb and the transcript of the exam-

_____

[30] Attorney Hourihan was associated with Hiscok & Barclay, LLP, at that time.

[31] Also thereby lost to me forever are my letter from Alger Hiss, my autographed
pictures of Wilson Pickett, Richard Kiley ("Man of La Mancha" Broadway fame),
Tina  Turner and "People's Court" Judge Marilyn Milian - and also complete sets
of Am.Jur. *Proof of Facts* - both the Second and Third Series.    And several phy-
sics texts which were, to me, precious.

ination is nowhere to be found.[32]

(48)  Since nothing was ever thrown out or discarded by us, it is clear that this transcript was in our house at the time of its demolition.    For one reason or another, I still have the letters annexed as Exhibits A and B, but that is all I have with regard to that Section 50-h under oath grilling by Counsel.

(49) General Municipal Law § 50-h(4), in pertinent part, provides that:

> 4. A transcript of the testimony taken at an examination pursuant to the provisions of this section may be read in evidence by either party, in an action founded upon the claim in connection with which it was taken, at the trial thereof or upon assessment of damages or upon motion.[33]

(50)  In light of the particular facts and circumstances involved here, it is respectfully submitted that to suggest that my Section 50-h examination in this case is not the functional equivalent of a Rule 30 deposition on oral questions in this case proper is most assuredly to exalt form over substance.

(51) My thought was to defer any deposition on oral questions until such time as I am represented by counsel - which I most assuredly intend to be at the earliest possible time.

(52)  In my view, my handling of the January 13, 2015 deposition was neither prudent nor provident.    My thinking is, as well, if I was or am represented by an ex-

---

[32] That transcript will almost certainly be the first order of business for me as and when my turn for discovery comes around.

[33] *See also Kraut v. City of New York*, 85 A.D.3d 979 (1st Dep't 2011); *Robinson v. City of New York,* 37 A.D.3d 447 (2d Dep't 2007);    *Claypool v. City of New York,* 267 A.D.3d 33 (1st Dep't 1999)

perienced attorney in connection with such questioning, this would almost certainly in-
ure to my advantage.   Handling these things on a *pro se* basis again would clearly be a
mistake on my part.     I am bad in this regard - when it comes to both deposing and be-
ing deposed.  I am, sadly, better at thinking that I am at doing.

(53) More important for present purposes, I suggest - respectfully - that what-
ever benefit or protection for the County Defendants that would be gained from Coun-
sel's intended deposition of me on oral questions, they already enjoy far and away the
greater part thereof - simply by having the advantage of the transcript of my January
13, 2015 examination by then-Attorney for Chemung County, Mr. Hourihan.  Indeed,
they presumably have an even greater value thereby, for at least the reason that I was
not represented by an attorney at the time and answered every single question put to
me by Counsel fully and without objection.

(54) One final thought on the above: as and when I move for the protective or-
der mentioned above, I will - in my motion papers - set out grounds which strike me
as meritorious, if not rather compelling.     I can't preview them here owing to time
constraints[34] - because their adequate presentation requires a lot more ink and pages.

(55) The above having been said, I might only offer the Court my good faith
assurance that the stuff to be addressed in support of my request for a limited protec-
tive order will not be nonsensical or frivolous.   Although I can, of course, only spec-
ulate about this, my guess is that this Court will, at the end of the day, agree with me
in this regard - if not as to every little thing, at least to the essentials and substance.

---

[34] Concededly, of my own choosing, for the most part.

### **COUNSELS' CLAIMS OF "GOOD FAITH" AND "SINCERE ATTEMPTS" TO RESOLVE THE DISCOVERY DISPUTE INFORMALLY OR AMICABLY ARE BELIED BY THE FACTS, TRUTH AND REALITIES**

(56) It is axiomatic that there are, in this world, different kinds of inquiries. In my primary world - which might be classified generally as the natural  (as opposed to social) sciences and matters quantitative - there is one type of inquiry.     For present purposes, it suffices to serve up the following distinction. One one hand, for example, a question as to whether or not a notice of appeal was filed a day before or a day after the thirty-pay period prescribed by law.     On the other, the sort of inquiry that I think is called for here - at least insofar as it deals with the critical, yet nebulous and conceptual, question of *good faith*.

(57) According to *Black's Law Dictionary* 623 (3d. ed. 1979):

> Good faith is an intangible and abstract quality with no technical or statutory definition, and it encompasses, among other things, an honest belief, the absence of malice  and the absence of design to defraud or to seek an unconscionable advantage, and an individual's personal good faith is [a] concept of his *own mind and inner spirit and, therefore, may not conclusively* be determined by his protestations alone.[35]   Honesty of intention, and freedom from knowledge of circumstances which ought to put the holder on inquiry.   An honest intention to abstain from taking unconscionable advantage of another, even through technicalities of law, together with absence of all information, notice, or benefit of belief of facts which render [a] transaction unconscionable.   In common usage this term is ordinarily intended to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and,

---

[35] Citing *Doyle v. Gordon*, 158 N.Y.S.2d 248, 259, 260 (no date given)

generally speaking, means being faithful to one's duty or ob-
ligation.[36]

(58)   Rule 37(a)(captioned "*Motion for an Order Compelling Discovery*")

provides that:

> (1) *In General*.   On notice to other parties and all affected per-
> sons, a party may move for an order compelling disclosure or dis-
> covery.   The motion must include a certification that the movant
> has in good faith conferred or attempted to confer with the person
> or party failing to make disclosure or discovery in an attempt to ob-
> tain it without court action.

(59)   L.R.Civ.P. 7(d)(3)("Local Rule") is far more explicit and exacting:

> (3) **Discovery Motion**.   No motion for discovery and/or produc-
> tion of documents under Fed.R.Civ.P. 37 shall be heard unless ac-
> companied by an affidavit showing that sincere attempts to resolve
> *the discovery dispute have been made.    Such affidavit shall detail*
> the times and places of the parties' meetings or discussions concern-
> ing the discovery dispute and the names of all parties participating
> therein, and all related correspondence must be attached.

(60)   In his Declaration, Counsel - rather predictably, of course - includes the

*de rigueur* recital - "I therefore certify Counsel for the Defendants have made sincere

attempts to resolve the discovery dispute pursuant to Rule 7(d)(3) of the Local Rules

of Civil Procedure of the Western District of New York."[37]

(61) Until forty-five or so minutes ago, it was my intention to argue that

strict compliance with the duty or obligation imposed on Counsel by Rule 37(a)

and Local Rule 7(d)(3) was, categorically, a condition precedent to consideration

of a motion such as this one.

---

[36] Citing *Efron v. Kalmanovitz*, 249  Cal.App. 187, 57 Cal.Rptr. 248, 251 (no date)

[37] Sanders Declaration, Doc. No. 40-1, ¶ "17," at Page 4 of 4

(62) I was going to assert that the County Defendants' pending motion to compel should, as a matter of law, be summarily and unconditionally dismissed - without any consideration of the underlying merits - by reason of their failure to satisfy such condition precedent.[38]

(63) Nonetheless, I see now that it would be incorrect to posit this as some sort of universal or axiomatic rule or requirement.[39]

(64) The above having been said, however, I respectfully submit that the same result should obtain on the peculiar (and, I think, rather compelling) material facts of record presented in the situation here.

(65) In the discussion which follows in this writing, the principal focus will be on the question of good faith writ large and organically (as the notion is spelled out in the above-excerpted passage from *Black's Law Dictionary*) - rather than on the much narrower, more limited issue of compliance or non-compliance with the specific requirements of Rule 37(a) and/or Local Rule 7(d)(3).   Although, strictly speaking, separate and distinct, I think that it is all part of one big picture.

(66)  In one of the three cases cited by Counsel in their Memorandum of Law,[40]

---

[38] Unless, of course, this Court is of the view that naked recitals, hollow conclusory assertions and the like are adequate to satisfy the requirements Rule 37(a) and Local Rule 7(d)(3) - which I do *not* believe to be the case based on what I have seen to date..

[39] *See, e.g.*, ***Reidy v. Runyon***, 169 F.R.D. 486, 490-91 (E.D.N.Y. 1997)

[40] Memorandum of Law, Doc. No. 40-6, Page 4 of 6

namely, *Travelers Indem. Co. v. Joseph Davis. Inc.*, No. 05-CV-870A, 2006 U.S.Dist.

LEXIS 82905, at 7 (W.D.N.Y. Nov. 14, 2006)(Scott, U.S.M.J.), Judge Scott explains

that:

> Imposition of Rule 37(d) sanctions for failure to comply with dis-
> covery demands ... must be weighed in light of the full record.[41].
> ... Rule 37(d) calls upon the Court to make such orders in regard
> to disclosure failures as are just.  The Court has wide discretion to
> impose sanctions and determine the type of sanction to be imposed
> under Rule 37(d).[42]

(67) And, as the Court of Appeals notes in *Naviant Marketing Solutions,*

*Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 186 (3d Cir. 2003):

> Naviant's counsel contended at oral argument and in his brief
> that he 'repeatedly' conferred with defense counsel on an effort
> to resolve the discovery dispute.   We are unable to discover in
> the record before us that he ever made a *good faith* effort to con-
> fer with defense counsel to resolve discovery disputes,

(68)  The Court's observation above applies with at least equal force to the

present matter. The chasm between recitals and claims, on one hand, and the reali-

ty and truth of things, one the other, is so vast as to be untraversable.

(69) Counsel cites "multiple phone calls" and "multiple good faith efforts" to

amicably and informally resolve the discovery dispute(s) arising in this case .   By

necessary implication, he seeks to impute bad faith and culpability to me - in connec-

tion with the County Defendants' discovery demands.

(70)   More particularly, in his Declaration, Counsel refers to "several unsuc-

---

[41] *Citing Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602
F.2d 1062, 1068 (2d Cir. 1979)

[42] *Citing Reilly v. NatWest Markets Group, Inc.*, 181 F.3d 253, 267 (2d Cir. 1999)

cessful to reach Plaintiff by telephone"[43] and "multiple phone calls (that were not an-
swered")[44] - with regard to Defendants' discovery demands and noticed deposition.

(71)   As far as I know, during the period in question (that is, December 23rd to
January 17, 2020),[45] there were no telephone calls made to our phone and phone num-
ber originating from the "585" Area Code.

(72)   Early on, I asked Barbara to promptly let me know about any calls receiv-
ed originating in the "585" Area Code. My thinking is that any such calls might relate
to any of the three cases that I have pending in this Court.

(73) Upon information and belief, to the best of her recollection, there were
none.   Nonetheless, we have a very cheap cell phone and a very cheap program.   It
is only possible to view the record of incoming or outgoing calls going back as far as
the last twenty (20) calls.     There is no record of any calls received or made prior to
that.[46]

(74)   I am not referring here to those calls made by Attorney Sanders when he

---

[43] Sanders Declaration, Doc. No. 40-1, ¶ 14," at Page 3 of 4

[44] Sanders Declaration, Doc. No. 40-1, ¶ "16," at Pages 3-4 of 4

[45] Any calls made prior to the above-referenced period are immaterial for purposes of
this motion, insofar as they would necessarily relate to the October 28th discovery de-
mands which were, as earlier discussed, invalid and devoid of legal force or effect.

[46] Perhaps Counsel has such records - covering the entire period in question here.   If
he does, I invite him to produce them for the Court.   I have little doubt that he would
likely be in a position to document many calls to me in connection with his repeated
requests that I consent to his own requests for extensions of time in my other case -
that is to say, extensions of time within which to bring the motion to dismiss he want-
ed to bring in that other case.   .

wanted or needed something from me,[47] but rather about those calls, actual or purported, regarding matters as who which he clearly had no practical incentive to actually speak with me regarding the matters at hand.

(75)  In his Declaration, Counsel mentions that "[o]n December 9, 2019, I received a call from an individual who represented that she was Plaintiff's girlfriend, Barbara Camilli, and advised that Plaintiff would not appear for his deposition the following day."[48]

(76)  As already discussed, all of the discovery demands served on me on October 28th were and are, as a matter of pure law, invalid *ab initio*.      This being the . case, they are - in the eyes of the law - nullities.  This includes, of course, the Notice of Deposition Upon Oral Examination, purporting to compel my appearance at Counsel's Rochester office on the morning of December 10th.[49]

(77) For the reasons already discussed, I was under no colorable or conceivable duty or obligation - whether legal or ethical, or going to good faith, courtesy or civility - to contact Counsel to advise of the fact that I would not be showing up for the deposition which Counsel unlawfully scheduled for December 10th.

(78) Contrary to Counsel's apparent belief or assumption, merely by serving discovery demands that are, as a matter of pure law, invalid and legal nullities *ab ini-*

---

[47] See, for example, Attorney Sanders' letter to me dated September 12, 2019 (of which a copy is attached as Exhibit C).

[48] Sanders Declaration, Doc. No. 40-1, ¶ "12," at Page 3 of 4

[49] Sanders Declaration, Doc. No. 40-1, ¶ "9," at Page 2 of 4; Exhibit A, Doc. No. 40-2, Pages 22-23 of 24

*tio*, he may not thereby impose upon me some affirmative obligation or duty to act or object - or to respond in any way.

(79) Although I was under no legal, ethical or other obligation to respond, I saw no reason to cause or invite a situation whereby Counsel and presumably a stenographer as well would be sitting around for an hour or more, waiting for me to show up at Counsel's office to be deposed on the day in question - when I knew I would not be appearing at that time.   I would not be comfortable doing that.

(80)   Barbara and I have only one phone between us (a cell phone).  I am not the boss of it; she is.  I was in Ithaca all day on December 9th.   I asked Barbara to call Counsel's office during business hours that day to advise that they should not expect me to appear to be deposed the following day.

(81) It is, I think, directly material from the standpoint of the present discussion that, upon information and belief, based on what Barbara later told me, Counsel was downright nasty, rude, if not border-line abusive to her in the December 9th telephone conversation referred to above.

(82) Upon information and belief, in that telephone conversation, Attorney Sanders was clearly very angry that I would not be showing up at his office the next day to be deposed - and, so too it appears, angry at Barbara simply because she was the messenger.

(83) Upon information and belief, based on what Barbara told me when I got home later that same day, she could hardly get a word in edgewise - because Counsel was hell-bent on serving up the parade of horribles that he and Judge Payson were cer-

tainly going to visit on Chris in both this case and his other case (No. 18-CV-06628-MAT-MWP) - simply because of his (Chris') non-appearance for that deposition.

(84) When I later got home on December 9th, Barbara was still upset and rattled from her earlier telephone conversation with Attorney Sanders.    She seemed convinced, based on the things that Counsel said, that this would be the death-knell for me (and her), insofar as these pending § 1983 lawsuits are concerned.

(85) In light of what Barbara told me about that telephone conversation, I believe that only someone who is a friend of mistreatment would invite it again.[50]

(86) I respectfully ask the Court, once again, to bear in mind here that, as a matter of law and for at least the reasons already set out herein, the aforementioned Notice of Deposition on Oral Examination,[51] served on October 28th and calling upon me to show up to be deposed on December 10th, was void *ab initio* - and a legal nullity, devoid of any colorable or conceivable legal force or import.

(87) So I was under no duty or obligation whatsoever, whether legal, ethical or born of courtesy or civility, to respond or take any action of any kind.    It is only because the milk of human kindness courses through my veins that I asked Barbara to make that telephone call.

(88) Counsel annexes to his Declaration an e-mail and a fax sent by me, advising that I would not appear to be deposed on January 17th .  Both messages were sent and re-

---

[50] If there is any question or doubt about any of this, Barbara would be happy to put in her own first-person account and Declaration.

[51] Sanders Declaration, Doc. No. 40-1, ¶ "13, at Page 3 of 4; and Doc. No. 40-4, at Pages 4-5 of 5

ceived on January 16[th][52].

(89) *Counsel fails to mention the message that I left on Attorney Arias' voice-mail on the evening of January 15th* - to the same effect.  I left this telephone message so that Counsel would be notified as of the very next morning (January 16th) that I was not going to show up at his (her)office the next day (January 17th) to be deposed.[53]

(90)  To be sure, this is a minor point.  Nonetheless, I think that it bore mention in Counsel's Declaration - at least insofar as it might fairly be said that his aim and his intent therein were to present a balanced, complete and objective picture of the facts and circumstances material to his request for relief.

(91)  In his Declaration, Counsel points to two "Good Faith Letters."   Not merely "good faith letters," but rather "Good Faith Letters."[54]  Not the regular ones, but the *Uber* ones - with the first letters of each word capitalized.

(92)  In her Second "Good Faith Letter," dated December 23, 2019, Attorney Arias states "[p]lease also accept this letter as our good-faith attempt to resolve your failure to respond to our discovery demands without the need for motion practice."[55]

(93) The aforementioned recital in the aforementioned letter from Counsel fails to bespeak anything close to "good faith."    This is especially so when one factors in

---

[52] Sanders Declaration, Doc. No. 40-1, ¶ "15," at Page 3 of 4; and Exhibit D, Doc. No. 40-5, at Pages 2 to 3 of 3

[53] Both aforementioned dates in 2020, not 2019.

[54] Sanders Declaration, Doc. No. 40-1, ¶¶ "11," "13," at Page 3 of 4; Exhibit B, 40-3, Page 2 of 4; Exhibit C, Doc. No. 40-4, Pages 2-3 of 5

[55] Doc. No. 40-4, Page 2 of 5.

equation the incontrovertible fact that every single one of the discovery demands alluded to in Attorney Arias' December 23rd letter was and is invalid and, in the eyes of the law, a nullity - devoid of any colorable or conceivable legal force, effect or import.

(94)  As earlier mentioned, both Judge Payson's (First) Amended Scheduling Order[56] and her (Second) Amended Scheduling Order,[57] explicitly state that "[a]ll motions to compel discovery shall be filed at least thirty (30) days prior to the factual discovery cutoff."[58]

(95)  Even one looks solely to the Court's (Second) Amended Scheduling Order, Counsel's Motion to Compel was filed at least three weeks too late - for compliance with Judge Payson's Order.

(96)  To be sure, Attorney Arias submitted a February 19, 2020 letter request that "the Discovery Deadlines be extended 120 days."[59]

(97)  I consented to that request and relief - and Judge Payson granted Counsel's request, per the (Third) Amended Scheduling Order, entered on February 24.[60]

(98) Nonetheless, under Judge Payson's (Second) Amended Scheduling Or-

---

[56] Doc. No. 35, entered June 26th

[57]  Doc. No. 38, entered November 5th

[58] Underlining by the Court in original text.  It bears mention, I think, that "shall" is universally construed to be a word of command, denoting that compliance is mandatory or imperative, rather than merely permissive or discretionary.    (*See Black's Law Dictionary* 1233 [3d ed. 1979]) "Servee" nowhere to be found in book.

[59] Doc. No. 43, at Page 1 of 2

[60] Doc. No. 44

der, the deadline for completion of discovery was February 18, 2020.        Thus, any

motion to compel, under Rule 37, necessarily had to be filed no later than on or about

January 18, 2020.[61].

(99)  The County Defendants, by their Attorneys, filed their motion to compel on

February 12, 2020.        Under the (Second) Amended Scheduling Order, the deadline for

completion of discovery was February 18, 2020.        Judge Payson's (Third) Amended

Scheduling Order was not entered until February 24, 2020.

(100) Based on reasoning and authorities already cited and discussed, the bela-

ted entry of this (Third) Amended Scheduling Order, entered six days after the deadline

for completion of discovery had already passed, does not excuse, ***nunc pro tunc*** or other-

wise,  Counsels' failure to timely file their motion to compel.

### <u>COUNTY DEFENDANTS' RULE 37 MOTION TO COMPEL SHOULD BE SUMMARILY DISMISSED, WITHOUT REACHING OR CONSIDERING, THE UNDERLYING MERITS THEREOF, BASED ON THEIR FAILURE TO MEET AND SATISFY EXPLICIT CONDITION PRECEDENT</u>

(101) Based on at least the considerations already mentioned and discussed, it is

respectfully submitted that, as a matter of law, the County Defendants' pending motion

to compel should be summarily dismissed - without reaching the merits thereof and with-

out granting them any relief whatsoever.

(102) Notwithstanding the things that I said earlier,. I say - with due deference -

that the requirements of  Rule 37(a) and Local Rule 7(d)(3), excerpted, supra, ¶¶ "58"

---

[61]  Excluding from the computations the fact that January has thirty-one (31) days.
Does one, in such case, tack on another day or, alternatively, subtract a day?

and "59," at 19, should be declared and determined to arise to the level of a condition precedent on these facts.

(103) A look at the cases will show that, as a general proposition, the requirements imposed by the above-referenced procedural rules are waived or dispensed with almost always in cases in which it is clearly seen that one party's conduct was such as to reasonably suggest that such efforts or attempts to resolve the discovery dispute would almost certainly turn out to be unavailing or merely an exercise in futility.

(104) I respectfully submit that this was not - and is not - the case here. Indeed, if there is a shoe here, it is on the other foot.  It is an impudent brand of sorcery to blind us with the smoke without convincing us the fire has existed.

## THE GOOD FAITH QUESTION IN THE BIG

(105) As earlier mentioned, I think, I presently have three § 1983 lawsuits pending in this Court at the present time. Two of these have already been referred to Magistrate Judge Payson by (Senior) District Judge Telesca,  pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P. Rule 72(a).

(106) The case *sub judice* is one of the two.  The other is ***Murphy and Camilli v. Maggs et al.*** (No. 18-CV-06628-MAT-MWP).

(107) I respectfully suggest that the latter case is directly material to the County Defendants' pending motion to compel - for at least the reasons set out below.

(108) In the case at bar, Barclay Damon LLP Attorneys Sanders and Arias rep-

present the County Defendants.  In case No. 18-CV-06628, the same two attorneys

represent Defendant Bryan Maggs - whose liability is based on his unlawful conduct

during his tenure as Chemung County Attorney.

(109) Upon information and belief, when it comes to liability for compensatory

damage awards in tort or § 1983 cases,[62] Chemung County is a self-insurer.  Moreover,

the County is, also upon information and belief, obligated, whether by contract, custom

or legislative resolution, obligated to pay any such compensatory damage awards hand-

ed down against present or former county officials, officers or employees.

(110) In light of the above, it is respectfully submitted that Chemung County

is a, or maybe the, real party in interest in both of the cases presently before Judge Pay-

son for nondispositive pretrial matters.

(111) So too, Attorneys Sanders and Arias represent the County defendants in

both cases.[63]

(112) For at least the reasons mentioned above, but most assuredly not sole-

---

[62] The rule is somewhat more complicated when it comes to punitive damages and punitive damage awards against present or former county employees sued in their individual capacities.

[63] It might be noted that Attorney Roy Z. Rotenberg also filed a formal Notice of Appear-ance on behalf of Defendant Maggs in Case No. 18-CV-06628 (Do. No. 17, entered July 18, 2019). Attorney Rotenberg also filed a Notice of Appearance on behalf of the County in the case *sub judice* (Doc. No. 34, entered June 13, 2019).    Attorney Robert M. Shad-dock also filed a Notice of Appearance on behalf of Chemung County and Defendant Maggs is Case No. 18-CV-06628 (Doc. No. 16, filed July 11, 2019).    Attorney Shad-dock also filed a Notice of Appearance on behalf of the County Defendants in this case (Doc. No. 36, filed July 11, 2019).   Upon information and belief, none of the documents required by Local Rule 83.2(c) or 83.2(d) were ever filed by any of the four attorneys who appeared of record as attorneys for Defendant Maggs or the County Defendants in the present case.

ly for those reasons, I say - respectfully - that Counsel's conduct in connection with the case that is the companion (if not fraternal twin) of the instant case is material to the present discussion and motion.  At least given the exceptional and peculiar facts and circumstances set out in the narrative which follows herein.

(113)  My thinking in the foregoing regard has much to do with the fact that the matters of interest in my other case directly and materially involve similar questions relating to discovery, as later explained.

(114) In this other case, Defendant former-Chemung County Attorney Maggs, by his attorneys (Mr. Sanders and Ms. Arias) brought a dispositive motion - which is presently pending before Judge Telesca.

(115) While the underlying motion and principal relief is dismissal (or summary judgment), Counsel elected to tack on a motion for a protective order, pursuant to Rule 26(c)(1)   If Counsel's request for this relief is granted by Judge Telesca, the direct result would be to prevent and prohibit any discovery or discovery requests by us (Barbara and me) until after their underlying motion is determined and decided.

(116) Insofar as the timeline and procedural history to date in my three pending § 1983 suits is an accurate and reliable yardstick, it will almost certainly be six months or more before that motion is ruled on and discovery can thus proceed.

(117) In pertinent part, Rule 26(c)(1) states that:

> The court may, for good cause, issue an order to protect a
> a party or person from annoyance, embarrassment, oppres-

sion, or undue burden of expense, . . . [64]

(118) As the Court explains in *OMG Fidelity, Inc. v. Sirius Technologies, Inc.,*
239 F.R.D. 300, 304-05 (N.D.N.Y. 2006):

> The mere filing of a dismissal motion, without more, does not
> guaranty entitlement to such a stay. . . . 'Discovery should not be
> routinely stayed simply on the basis that a motion to dismiss has
> been filed.   Among the factors which inform the analysis of whet-
> her to grant a stay of discovery, in the face of a dispositive motion,
> are the burden of responding to the contemplated discovery, and
> the strength of the dispositive motion forming the basis of the stay
> request. . . .   The court must also consider any unfair prejudice
> which may be suffered by the party seeking to engage in discovery
> during the pendency of the dismissal motion.[65]

(119) In their lengthy papers on this motion in my other case, Counsel argue -
either expressly or by clear implication - that their client (Maggs) is justly and pro-
perly entitled to this protective order, so as to prevent me from subjecting him to the
bother, inconvenience, aggravation and burdens of complying with any discovery de-
mands that I would otherwise make of him.

(120)  Although these three cases are framed as three separate and distinct law-
suits, this is only because various claims accrued on differing dates, thus giving rise to
several different deadlines for filing in order to avoid any of them being time-barred.

(121)  Nonetheless, all three cases and all of the claims and causes of action
involved are really all part of one big, sprawling, organic and  messy real-world situ-

---

[64] Rule 26(c)(1) further provides and requires that: "The motion must include a certi-
fication that the movant has in good faith conferred or attempted to confer with other
affected parties in an effort to resolve the dispute without court action."      Counsel
did not bother to even colorably comply with or satisfy the above requirement.

[65] Citations, certain internal quotes and ellipsis omitted.

ation, which spans a period of well over four years. Dividing the whole up into three

distinct parts is, in a very real sense, artificial.

(122)   Rather than just make their motion - in what might fairly be character-

ized as the ordinary or typical way - Counsel handled things in a manner that delay-

ed significantly the orderly progress of the case.

(123)   Attorney Sanders requested - and was granted by Judge Payson - an ad-

journment of the Rule 16 Scheduling Conference that Judge Payson had scheduled

for July 24, 2019 at 11:00 A.M. - a request that I consented to.(Doc. No. 24).

(124))   Judge Payson rescheduled the Rule 16 Scheduling Conference for Au-

gust 27, 2019 at 11:00 A.M.  In a telephone conference call with Chambers Staff on

that date, Attorney Sanders requested another adjournment of the Rule 16 Scheduling

Conference (Doc. No. 25) - which Judge Payson granted.  (Doc. No. 26)

(125)   In the course of the conference call on August 27th, I consented to Attorney

Sander's request for an additional thirty (30) days - to September 26th - "to file a pre-ans-

er motion to dismiss the complaint (or notify the Court that he [Maggs] elects not to do

so); and 3. once the motion is fully briefed and ruled upon, Your Honor will schedule a

Rule 16 Conference to set a case management plan and scheduling order.  All parties are

in agreement with the above and respectfully request Your Honor's consent to proceed."

(Doc. No. 25)

(126)   Per Order entered August 28th (Doc. No. 26), Judge Payson granted Attor-

ney Sanders' request and indefinitely adjourned the Rule 16 Scheduling Conference, di-

recting Counsel to advise the Court in writing within ten days of the Court's determina-

tion of Defendant Maggs' motion to dismiss. (Doc. No. 26)

(127) I did, in fact, consent to the adjournments requested by Counsel - and also his requests for extensions of time to make his motion.   Nonetheless, I did so based entirely upon Attorney Sanders' explicit representations to me that the motion he planned to make was and would be a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

(128)  In two subsequent letters, Counsel again refers to his anticipated motion as "a motion to dismiss."[66]

(129) I had nothing whatsoever to fear from a Rule 12(b)(6) motion.   The standard or legal yardstick applied by the Court on such a motion is essentially the same as the one applied by the Court in connection with its screening function under 28 U.S.C. § 1915(e)(2).

(130)  In his February 19, 2019 Decision and Order in that case (namely, 18-CV-6639)(Doc. No. 5), (Senior) District Judge Telesca vetted the claims and causes of action stated in our Complaint. (Doc. No. 1).   Significantly, in the above-mentioned Decision and Order, Judge Telesca also went out of his way to explain the reasoning by which he arrived at his conclusions as to the merits, validity or "plausibility" of the various claims stated in our Complaint.

(131)  The claims and causes of action which Defendant Maggs attacked on his dispositive motion in this companion case (No. 18-CV-06628) were the same ones that

---

[66] Attorney Sanders' letters to Judge Payson dated September 18th and September 23rd.

District Judge Telesca had reviewed pursuant to his screening obligation under 28 U.S.C. § 1915(e)(2) and, moreover, had determined to be meritorious and actionable in his February 19th Decision and Order (Doc. No. 5).

(132)  In light of the foregoing, it is clear that Counsel - with regard to their dispositive motion in the companion case - were not writing on a clean slate or *tabula rasa*.

(133) Judge Telesca's rulings and determinations as to the merit of those claims that he concluded were meritorious and actionable, in his February 19th Decision and Order (Doc. No. 5) are clearly "law of the case."

(134)  In the Second Circuit, under settled "law of the case" jurisprudence, the prior rulings of the Court may not be disturbed, modified or revised unless there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (*citing Zdanok v. Glidden Co.*, 327 F.2d 944, 953 [2d Cir. 1964; *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 [2d Cir. 1992])(*See also American Canoe Assn. v. Murphy Farms, Inc.*, 326 F.3d 505, 514-16 [4[th] Cir. 2003]; and *Anixter Home-Stake Production Co.*, 977 F.2d 1533, 1547-48 [10[th] Cir. 1992])

(135) So, on his dispositive motion, Defendant Maggs was and is, as a matter of law, forced to clear a significantly higher and more demanding bar than would otherwise be the case - insofar as the relief he sought and asked the Court to give him was either dismissal,  or summary judgment dismissing, the very same claims that Judge Telesca

had reviewed and concluded were meritorious and actionable.

(136) In other words, on their dispositive motion in my other case, Counsel were clearly second-guessing Judge Telesca and urging a result which was squarely contrary to rulings and determinations made by him in his February 19th Decision and Order.

(137)   When Attorney Sanders started chirping about his planned motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12 (B)(6)[67], my thinking was "good luck" with that.        So too, I was curious to find out what, if anything, these guys might come up with by way of defense to my substantive claims and causes in that case.[68]

(138)   If, on the other hand, Counsel had mentioned - or so much as hinted - that the motion that he and his colleague, Attorney Arias, would ultimately wind up bringing would be a motion for summary judgment, I would never have consented to any of Attorney Sanders' serial requests for extensions of time to make his motion.  Indeed, in such case, I would have immediately come forward and objected to and opposed all of them.

(139) At the end of the day, of course,  the motion filed by Counsel on November 8th [69] was one for summary judgment.  Although framed facially as a "motion to dis-

---

[67] Which he initially mentioned in the course of the telephone conference call with Chambers Staff, me and Attorney Hourihan on the morning of August 27th.

[68] By any rational and meaningful yardstick of either law or logic, it is, I think.  correct to say that, of the three § 1983 actions that I presently have pending in this Court, that case - the one in which Barbara is also a plaintiff - is the most valuable one (from a monetary standpoint).   On an emotional level, all three of them go right to the very core of my being - for reasons that are, for the most part, largely inexplicable in purely rational terms.

[69] Doc.  No. 30-1 (in Case No. 18-CV-06628-MAT-MWP)

miss," under Rule 12(c), even a cursory look at their motion papers clearly points up the

fact that the relief that they *really* wanted - from the start - was "conversion" of their Rule

12(x) motion into a Rule 56 motion for summary judgment.

(140)   This is clearly why they initially framed their motion as a "motion to dis

miss," pursuant to Rule 12(c).     With such a high-powered four-person legal team on

the case, one might fairly suppose that at least one of them would have timely realized

that a motion under Rule 12(c) simply would not lie at the time in question.

(141)  As pointed out in our answering papers,. a motion under Rule 12(c) is not

a "motion to dismiss," but rather a "motion for judgment on the pleadings" - which, as

a matter of law, will only lie "after the pleadings are closed."   As I am quite sure Coun-

sel were aware from the start, issue had not as yet been joined in this case.     Indeed, to

this very day, Defendant Maggs has yet to interpose any Answer to the Complaint.   So,

it is clear that the "pleadings were not closed" - and thus a motion under Rule 12(c) was

a dog that would not hunt.

(142)   Nonetheless, if one's real intent and agenda is to induce the Court to "con-

vert" a dismissal motion into one for summary judgment, what better way to accomplish

that goal than ro initially frame one's motion so as to insure that, as a matter of law, it

will not lie - as unripe, premature or having been untimely brought?   The thinking on

this was, quite clearly, that by bringing a motion that they knew from the start was un-

timely, premature, unripe and would not lie, the Court would be induced to grant the re-

lief that Counsel *really* wanted from the start - namely, 'conversion" of their motion in-

to a motion for summary judgment, pursuant to Rule 56.

Page 37

(143)  All of the foregoing is clear beyond peradventure from the papers that Counsel filed on that motion.

(144) When I raised all of the above in our answering papers, Counsel - by way of reply - filed  an "Amended Notice of Motion," transforming their initial motion under Rule 12(c) into one under Rule 12(b)(6).[70]      Nonetheless, a look at their papers filed on December 23, 2019 clearly points up the fact that thing they really want to do on this motion is to induce the District Court to "convert" their motion into one for summary judgment,  pursuant to Rule 56.

(145)  Based upon all available facts and information of record at the present time, I say that Attorney Sanders deliberately misrepresented his true and actual intentions - regarding the motion that he and Attorney Arias planned to bring and did, in fact, ultimately, bring - to me.

(146)  From August 27th on, Attorney Sanders explicitly and consistently led me to believe that the motion that he was going to bring on behalf of Defendant Maggs was and would be a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

(147)  I say that this was a lie.   I say that Counsel's intention and plan was to mislead me as to his intentions and plan - and also to obtain my consent to his repeated requests for extensions of time to make his motion by disingenuously leading me to believe that the motion that he would, ultimately, bring was a Rule 12(b)(6) motion.

---

[70] Doc. No. 35-1, Pages 1 to 2 of 3; Doc. No. 35-2, Pages 1 to 12 of 12 (in Case No. 18-CV-06628-MAT-MWP)

(148)  A motion to dismiss, under Rule 12(b)(6), is, in effect, a common law de-murrer - which goes only to the sufficiency of the pleadings.[71]   This being the case, if such a motion by the defendant is granted, the plaintiff will generally be allowed to submit an amended complaint - with a view toward curing the deficiencies which led to the dismissal of his or her initial complaint.

(149) The relief that I say they really want - and have really wanted from the start - was summary judgment.   They want to put me out of court with finality and without a paddle or way back in.

(150)  Inasmuch as I feel that it is material to the instant motion, attached here-to as Exhibit D is an account or discussion of the merits of the dispositive motion by Counsel for Defendant Maggs in the companion case (No. 18-CV-06628).

(151)  As discussed in this sidebar, it has always been my intention and plan - from well before any of my three pending § 1983 cases were filed - to move for (par-tial) summary judgment, under Rule 56, as to the key question raised by Counsel on their dispositive motion in this companion case - namely, title to, and ownership of, the real property situate at 757 Linden Place, in the City of Elmira, at the times mate-rial to that case.

(152) To me, it is utterly fascinating that, in their papers on that motion Counsel say that it is beyond cavil and not open to any possible question or doubt

---

[71] Review of their motion papers leaves no doubt or question as to the fact that Counsel were not content to file a demurrer.  Their motion was really a "speaking demurrer." (See generally James, *Civil Procedure* § 4.1, n. 15 [1964]} and *Masline v. New York, New Haven & Hartford R.R.*, 95 Conn. 702, 112 A. 639 (1921)

that, at the time of our "removal" from the premises in the early morning hours of

September 2, 2015, Chemung County owned "the Property."

(153) I had been litigating with the County and wit Bryan Maggs and his

predecessor County Attorney - in both state and federal court - for years, before

any of three pending § 1983 cases were filed.

(154) When it comes to the critical question of title and ownership of 757

Linden Place, Bryan Maggs knows my case only too well.  I most assuredly know

his case (in other words, the County's case) very well.

(155) It - quite literally - boggles the mind and beggars the imagination to

think Defendant Maggs and his lawyers would even think to press the contention

that the County owned my home and my real property - at *any* time.

(156) I suggest to this Court - most respectfully - that this is why Counsel

deliberately led me down the primrose path - by deliberately and disingenuously

assuring me that the motion that he would bring would be one to dismiss for fail-

ure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

(157) I respectfully ask the Court, if so inclined, to take a look at Coun-

sel's papers on that motion in Case No. 18-CV-06628 - with particular atten-

tion to the amount of space and ink therein devoted to one and only one point

or request.

(158) Namely, inducing Judge Telesca to "convert" their dismissal mo-

tion into a motion for summary judgment, pursuant to Rule 56.  Based on their

motion papers, I suggest that Counsel go way out of their way - and, indeed, go

over the top - on that single point or request.

(160) I respectfully submit that, if one thoughtfully connects all dots that are presently available at the present juncture, it is clear beyond peradventure that the agenda and gameplan of defendant Bryan Maggs and his stellar legal team was and is one that is not remotely compatible with even minimal notions of good faith, fairness or honest intention and aim.

(162) So too, and more importantly, I think that is beyond cavil and not open to reasonable and genuine question, doubt or dispute that, at the end of the day, this motion brought by Attorneys Sanders and Arias in the companion case discussed earlier was and is completely frivolous, utterly devoid of merit and lacks any colorable or conceivable basis in either fact or law.

(163) Taken in the big and thoughtfully considered, one would be hard pressed to think of or conjure up a case or situation that presents a stronger, more compelling case for sanctions under Rule 11 than the one under discussion here.  I refer in this regard to Counsel's dispositive motion in Case No. 18-CV-06628.

(164) As mentioned above, the merits of Counsel's motion in this other case are discussed at some length in Exhibit D.

(165) As also mentioned earlier, I intend to make a motion for a protective order, pursuant to Rule 26(c)(1), in the very near future.   Certainly less than thirty days and as soon as two weeks.   As earlier alluded to, the relief that I will seek and ask for on that motion is, all things considered, reasonable and modest.

(166)  I am certainly cognizant of the basic fact that an individual who

comes to federal court - for example, with a § 1983 suit - thereby assumes a
good faith obligation to comply with any reasonable discovery demands made
of him or her.      I most assuredly intend to live up to that - in connection with
all three of my pending suits..

(167) To date, I do not think that any acts or omissions on my part be-
speak otherwise - contrary to the rather dark and negative picture painted by
Attorneys Sanders and Arias in their papers in support of the pending motion
to compel in the instant case.

## SUMMARY AND CONCLUSIONS

(168) Based at least on the facts, matters and considerations mentioned and
discussed above, it is respectfully submitted that, whether as a matter of law or in
the exercise of this Court's discretion, the County Defendants' pending motion to
compel, under the provisions of Rule 37, should justly and properly be dismissed,
unconditionally, summarily and in its entirety, without reaching or considering the
merits and without granting any of the relief specifically requested or that might ot-
herwise be given to them.

(169) Pending the submission of the motion for a protective order, pursuant
to Rule 26(c)(1), earlier discussed, I respectfully request that no order(s) be made or
granted, respecting discovery or discovery-related issues or matters.    This, with the
understanding that such motion will be filed within thirty days (or before April 11th
2020.)

(170)  In the event that Counsel for the County Defendants introduce new matter on their Reply to these Answering papers, I respectfully request leave to submit sur-reply papers for the purpose of addressing and responding to the same.

(171)  I declare under penalty of perjury that all of the foregoing is true and correct.

**WHEREFORE**, the undersigned respectfully requests that an Order be made, granting him at least the following relief, to wit:

[a] dismissing the County Defendants' motion to compel, pursuant to Fed.R.Civ.P. 37(a)(2) and 37(d), unconditionally and in its entirety, and granting no relief whatsoever to the Defendants pursuant to said motion;

[b] staying discovery and discovery-related matters and issues - more particularly, declining to make or issue any order(s) relating to discovery, until the earlier of the filing of the motion for a protective order discussed above or April 11, 2020;

[c]  if necessary or appropriate, granting the undersigned permission, pursuant to L.R.Civ.P. 7(a)(6), to submit sur-reply papers; and

[d] granting the undersigned such additional and further relief at may be equitable and proper to this Court.

March 9, 2020

Signed and Respectfully Submitted by,

Christopher M. Murphy
Plaintiff, appearing *pro se* at this time
Residence and Post Office Address:
105 Geneva Street, Apartment 237
Bath, New York 14810
Telephone: (607) 664-6717

:

Exhibit A

STATE OF NEW YORK      COUNTY OF CHEMUNG

| | |
|---|---|
| In the Matter of the Claim of | DEMAND FOR HEARING UNDER 50-h OF THE GENERAL MUNICIPAL LAW |
| CHRISTOPHER M. MURPHY, | |
|                 Claimant, | |
|      v. | |
| COUNTY OF CHEMUNG and one or more officials, officers, employees, agents thereof, individually and/or in their respective official capacities, | |
|                 Respondents. | |

**TO:     CHRISTOPHER M. MURPHY:**

         **PLEASE TAKE NOTICE,** that pursuant to Section 50-h of the General Municipal Law, demand is hereby made upon you and each of you, and you are hereby required to appear before the undersigned at the **Law Firm of Hiscock & Barclay, LLP, 243 Lake Street, Elmira, New York,** on **October 14, 2014** at **10:00 a.m.,** there to be orally examined, under oath, in relation to the occurrence and extent of the injuries for which claim was made against the respondents by a Notice of Claim filed with the Chemung County Clerk's office on or about September 3, 2014

DATED:     September 16, 2014

                                         Yours, etc.,

                                         HISCOCK & BARCLAY, LLP

                         By:

                                         Jeremy J. Hourihan, Esq.
                                         *Attorneys for Respondents*
                                         243 Lake Street
                                         Elmira, New York 14901-3192
                                         607/733-4635

TO:     CHRISTOPHER M. MURPHY
           Claimant pro se
           757 Linden Place
           Elmira, NY 14901

HISCOCK & BARCLAY, LLP

Exhibit B

# HISCOCK & BARCLAY LLP

**Jeremy J. Hourihan**
*Associate*

September 16, 2014

## CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Christopher M. Murphy
757 Linden Place
Elmira, NY 14901

Re:   Murphy v. Chemung County, et al.
      Our File #: 3071902

Dear Mr. Murphy:

Enclosed herein please find respondents' Demand for a 50-h Hearing scheduled for October 14, 2014 at 10:00 a.m. here in our offices in connection with the above captioned matter. I have made the necessary arrangements for the stenographer. If this date is inconvenient for you, please contact me as soon as possible to work out a mutually agreeable date.

I would also appreciate the enclosed medical authorizations being signed and returned to me as soon as possible *together with a list of names and complete addresses of your medical providers who have treated you for your alleged injuries* concerning the incident in question and the ambulance service utilized, if any.

If you have any medical records in your possession, please provide me with copies of same prior to the 50-h hearing for my review.

Thank you for your anticipated cooperation in this matter.

Very truly yours,

Jeremy J. Hourihan

JJH:kjc
Enclosures

Exhibit C

# BARCLAY DAMON LLP

**Paul A. Sanders**
*Partner*

September 12, 2019

**VIA OVERNIGHT DELIVERY**
Christopher M. Murphy
105 Geneva St., Apt. 237
Bath, NY 14810

      Re:   <u>Christopher M. Murphy and Barbara M. Camilli v. County of Chemung, et al.</u>
             WDNY Civil No.: 6:18-CV-06628-MAT
             Our File No.: 3101018

Dear Mr. Murphy:

    Please contact me at 585-295-4426 at your very earliest convenience to discuss or consent to the following. I respectfully request a 45 day extension to answer/respond to your Complaint, as I have yet to receive the information required to assess the matter. I assume you will agree since you indicated that you plan to bring an application yourself.

    Please let me know as soon as possible. Thank you in advance for your courtesies.

                    Very truly yours,

                    Paul A. Sanders

PAS:np

cc:   Barbara Camilli

2000 Five Star Bank Plaza - 100 Chestnut Street - Rochester, New York 14604  barclaydamon.com
PSanders@barclaydamon.com  Direct: (585) 295-4426  Fax: (585) 295-8422

19105125.1

# B A R C L A Y   D A M O N LLP

**Paul A. Sanders**
*Partner*

September 18, 2019

<u>**VIA CM/ECF**</u>
Hon. Marian W. Payson
U.S. Magistrate Judge
2310 United States Courthouse
100 State Street
Rochester, New York 14614

Re:   <u>Christopher M. Murphy and Barbara M. Camilli v. County of Chemung, et al.</u>
       WDNY Civil No.: 6:18-CV-06628-MAT
       Our File No.: 3101018

Dear Judge Payson:

We represent defendant Bryan Maggs in the above-referenced case. The current deadline for Mr. Maggs to move to dismiss or answer the complaint is September 26, 2019. As we are still in the process of gathering information and assessing the pleadings and any corresponding motion, we anticipate needing additional time (and do not want to wait till the last minute to request it). Consequently, we respectfully request a 45-day extension, to Monday November 11, 2019.

I have called Plaintiffs several times to obtain their consent, but plaintiffs have not answered the phone and there is no opportunity to leave a voicemail. I also sent a letter but have not received a response. Since Plaintiffs have advised me that they intend to file an application for reconsideration of a former ruling in this litigation, I do not anticipate any objection to this request for an extension. Counsel for the remaining defendants consents to this request.

Thank you for Your Honor's consideration of this Request.

Respectfully submitted,

Paul A. Sanders

PAS:ka
cc:   Jeremy J. Hourihan, Esq. (via ECF)
       Christopher Murphy (via regular mail)
       Barbara Camilli (via regular mail)

SO ORDERED:                                         _____
                                                    Hon. Marian W. Payson

2000 Five Star Bank Plaza - 100 Chestnut Street - Rochester, New York 14604  barclaydamon.com
PSanders@barclaydamon.com  Direct: (585) 295-4426  Fax: (585) 295-8422

19102381.1

Exhibit D

## EXHIBIT D

## PRELIMINARY STATEMENT

Review of Counsel's papers on the motion for dismissal/summary judgment Clearly shows that their one and only claim is this: at the time of Plaintiffs' "removal" from the premises situated at 757 Linden Place in the City of Elmira,[72] Chemung County owned the property.[73]

According to Counsel, the County's ownership of the property is beyond cavil and conclusively demonstrated by :"incontrovertible documentary evidence."   In support of this contention, they attach to their motion papers a plethora of documents relating to an in rem tax lien foreclosure proceeding commenced by the County in the Chemung County Court in 2011.

I say - respectfully - that this is nonsense.   At all times material to this case, I was - and now am - the lawful owner in fee of the real property premises  - situated at 757 Linden Place in the City of Elmira.    I have owned that real property since 1988 and called it home until September 2, 2015.

I fully intend to conclusively foreclose this material question of fact[74] once

---

[72] Which took place in the early morning hours of September 2, 2015.

[73] Memorandum of Law, Doc. No. 30-14, at Page 7 of 23

[74] Or mixed question of law and fact, as the case may be.

-1-

and for all by way of a motion for (partial) summary judgment in this case.[75]  This
is an issue that is suitable for conclusive resolution at the pretrial stage - by way of
summary judgment - in any state or federal court.   No disputed or disputable ques-
tions of fact,. material or otherwise, are presented or involved.      It is well-settled
that the proper construction of written documents is a question of law, to be determ-
ined by the Court, not a question of fact to be resolved by the jury.

As mentioned above.  Attorneys Sanders and Arias assert that the County of
Chemung owned "the Property" in fee at the time of our "removal" from the premises
by City of Elmira police officers (acting at the express direction of Defendants Maggs,
Buzzetti and Martino) in the early morning hours of September 2, 2015.

Counsel aver that "... Plaintiffs had no ownership interest in the Property at the
time of their removal.  Rather, undisputed documentary evidence demonstrates the Pro-
perty was owned in fee by Chemung County following a tax foreclosure proceeding."[76]

Review of Counsel's papers on this motion clearly shows that the County's naked
assertion of ownership of the property[77] rests entirely upon the so-called "Supplemental
Decision and Judgment" signed by former Chemung County Judge James T. Hayden on
August 11, 2015.[78]

---

[75] That is, **Murphy and Camilli v. Maggs** et al.

[76] Memorandum of Law, Doc. No. 30-14, at Page 7 or 23

[77] Initially announced in the August 24, 2015 Maggs-to-Buzzetti letter.

[78] Statement of Material Facts, signed by Attorney Sanders, Doc. No. 30-1, ¶ 27," at
Page 8 of 10.

On the strength of the aforementioned "Decision and Judgment" in the in rem tax lien foreclosure proceeding commenced in Chemung County Court in 2011, Chemung County Treasurer Joseph Sartori executed a deed on that same date, purporting to convey title to the property to Chemung County.[79].

The problem with the above line of reasoning set out by Attorneys Sanders and Arias - on behalf of their client, Bryan Maggs - is simply this: it is nothing bit a house of cards, which, at the end of the day, rests entirely on the default judgment signed by then-County Judge Hayden in the long dormant *in rem* tax lien foreclosure action commenced by the County under Article 11 of the New York Real Property Tax Law.

As a matter of pure law, that purported "judgment" was and is invalid and void *ab initio*.     Not merely erroneous, irregular or voidable, but rather void *ab initio* - and, accordingly, an absolute nullity in the eyes of the law.

The well-settled, clearly-controlling principles of New York statutory and decisional law in the foregoing regard are summed up in 1 Freeman, *Law of Judgments* § 322, at 643-45 (5th ed. 1925).   Commenting on "judgments" in the category of the one referred to above, the author says this:

> A judgment void on its face and requiring only an inspection
> of the record to demonstrate its invalidity is a mere nullity, in
> legal effect no judgment at all, conferring no right and afford-
> ing no justification.    Nothing can be acquired or lost by it; it
> neither bestows nor extinguishes any right, and may be success-
> fully assailed whenever it is offered as the foundation for the as-
> sertion of any claim or title.    It neither binds nor bars anyone.
> All acts performed under it and all claims flowing out of it are
> void.   The parties attempting to enforce it may be responsible

---

[79] Sanders Statement of Material Facts, Doc. No. 30-1, ¶ "28," at Page 8 of 10

as trespassers.

. . .

> Such a judgment has been characterized as a dead limb on the
> judicial tree, which may be chopped off at any time, capable
> of bearing no fruit to plaintiff, but constituting a constant men-
> ace to defendant.

In their papers on the dispositive motion in Case No. 18-CV-06628, Coun-

sel refer to the so-called "Supplementary Decision and Judgment" signed by Judge

Hayden on August 11, 2015, and the deed executed by County Treasurer Sartori on

that same date, taken together, as "incontrovertible documentary evidence" not only

of the County's ownership of "the Property" as of the time(s) material to that case.

Nonetheless, the mere fact that the documents attached to Counsel's motion

papers appear, at first blush and upon cursory glance, to constitute the "incontrovert-

ible documentary evidence" that Counsel claim is not controlling.      As a matter of

law, it is beyond cavil that any determination as to the validity or invalidity of a judg-

ment requires close and careful examination of the record as a whole - typically, the

judgment roll in the particular case.

In other words, the cherry-picked documents that Counsel attach as exhibits

to their motion papers are determinative or dispositive of nothing whatsoever.  One

must, perforce, look to the record as a whole, insofar as it is material from the stand-

point of the law.

When one does that in the present case, it is both clear beyond peradventure

and beyond reasonable question or doubt that, as a matter of pure law, the so-called

-4-

"judgment" upon which Counsel clearly rest their entire case on that motion was and

is invalid and void ab initio.     It is,  indeed, clearly within that category of cases -

which form only a tiny minority of cases - in which the "judgment" is universally

held to be most vulnerable to collateral attack in any state or federal forum.

All of the above will be addressed and dealt with at length and in detail on

the motion for (partial) summary judgment discussed above  .  In other words, the

selfsame motion that Plaintiffs in the companion case will bring in the near future.

Moreover, as discussed at considerable length in my papers on the Maggs mo-

tion, *post–Exxon Mobil*, *Rooker-Feldman* has no possible application here - and gives

rise to no subject-matter jurisdictional bar to the contemplated challenge to the Hayden

'judgment" which is the linchpin to their assertion of County ownership of the property

at the time(s) material to this case.

All of the above having been said, however, I mentioned earlier that it would be

a simple thing to conclusively demonstrate that their case on this motion was frivolous,

utterly devoid or merit and lacked any colorable or conceivable basis in either fact or

law.

The question of title or ownership does not permit such easy or quick resolu-

tion - even if there is no real question as to its ultimate resolution.

With this in mind - and for purposes of the present discussion - let us therefore

assume *arguendo* that Counsel is right.  In other words, let us assume *arguendo* - with-

out conceding, of course - that the County of Chemung did  somehow acquire title to,

and ownership of, the property.     Let us thus further assume - *arguendo* - that, at any

-5-

terest qualifies for protection under the United States Constitution.   As also noted earlier, Attorneys Sanders and Arias point to no case, statute or other authority indicating what the applicable principles of New York law are - or might be - in this case.

The applicable principle and rule of New York law rests upon a statutory provision - namely, Real Property Actions and Proceedings Law § 853:

> If a person is disseized, ejected or put out of real property in a
> forcible or unlawful manner, or, after he has been put out, is held
> and kept out by force or by putting him in fear of personal violence
> or by unlawful means, he is entitled to recover treble damages in an
> action therefor against the wrong-doer.[84]

Where, as here, the claim of unlawful or forcible entry or detainer is presented in the context of an action under 42 U.S.C. § 1983, the one-year limitations period applicable to intentional torts, under New York Civil Practice Law and Rules ("CPLR") § 215 does not apply.   Rather, as a matter of federal common law, the three-year limitations period under CPLR 214(5) controls.[85]

Insofar as applicable to the case at bar, the controlling principle and rule of New York law has been settled for at least two centuries.   As summed up in 89 N.Y.Jur.2d,  *Real Property - Possessory and Related Actions*  § 81  (1991 ed.):

> **National Background**   New York is in accord with the general rule that, apart from statutory authorization, the question of title may not be inquired into, and deeds or other testimony tend-

---

[84] RPAPL § 853 was amended, effective 1981, to expand liability to embrace entries and detainers that are "unlawful' - as well as those that are "forcible." (*See, e.g., Lee v. Park*, 16 A.D.3d 986 [3d Dep't 2005];  *Maracina v. Shirrmeister*, 105 A.D.2d 672 [1st Dep't 1984])

[85] Nor, in a § 1983 action, does the Notice of Claim requirement of General Municipal Law § 50-i apply.

ing to prove a superior title or right to possession in the defendant
are ordinarily not admissible.

Following the above prefatory comment, § 81 proceeds to state that:

> Even though the respondent in a forcible entry and detainer
> proceeding can show *a better title or superior right of posses-*
> *sion* to that of petitioner, this will not constitute any defense
> to the proceeding.   One cannot first take the law into one's
> hands to gain possession. and then invoke the law to keep it.[86].

The "majority" rule - which, as mentioned above, has been the rule in the

State of New York and a vast majority of other States for many years - is also sum-

med up in 35 A Am.Jur.2d, *Forcible Entry and Detainer* § 14 (2001 ed.):

> Since the action of forcible entry and detainer is grounded on
> the forcible expulsion or exclusion from possession, the proper
> party to institute and maintain the action is he who held the
> peaceable possession of the property as a matter of law at the
> time of the forcible dispossession, and who has the right of im-
> mediate possession of the property, regardless of who may have
> the title or the ultimate right to possession.

As further stated in *id.*, § 8, at 1042::

> . . . the plaintiff's possession and the forcible entry or detain-
> er of the property are ordinarily the sole questions at issue in ac-
> tions based on proceedings in forcible entry or detainer, it is nec-
> essary to prove only that the plaintiff was in actual and peaceable
> possession of the premises, and that the defendant forcibly enter-
> ed and turned him out or dispossessed him by force after a peace-
> able entry.
>
> **Caution:** The title to the property or the ultimate right to the
> possession of the premises is not involved and may not, apart

---

[86] Citing *Town of Oyster Bay v. Jacob*, 109 A.D. 613 (2d Dep't 1905; and *Tri-State Re-*
*freshments, Inc. v. Nitke*, 41 Misc.2d 386 (1964)(Emphasis added by me)

from statutory authorization, be inquired into.[87]

As further explained in 35 A Am.Jur.2d, *Forcible Entry and Detainer*, *supra*,

§ 14:

> Since the action of forcible entry and detainer is grounded on
> the forcible expulsion or exclusion from possession, the proper
> party to institute and maintain the action is he who held the
> peaceable possession of the property as a matter of law at the
> time of the forcible dispossession, and who has the right of im-
> mediate possession of the property, regardless of who may have
> the title or ultimate right of possession.[88]

In a nutshell, the sole factual predicate essential to support a claim of forcible

entry and/or detailed is that the claimant must be in peaceable possession of the prop-

arty or premises at the time of the forcible entry or detailed.   Neither title to the proper-

to, nor a superior right to possession, are elements of the claim or cause of action.   In-

deed, it universally held that evidence of either title or a superior right to possession of

the property is admissible upon trial of a forcible entry or detailed claim - according to

the sources cited above.

A litany of New York cases can be cited in support of the above proposition.

To mention just a few of them: *Wood v.  Phillips*, 43 N.Y. 152 (1870); *Fults v.  Mun-

ro*, 202 N.Y. 34, 36-37 (1911); H & P Research, Inc. v. Liza Realty Corp., 943 F.Supp.

328, 330-32 (S.D.N.Y. 1996);     *Marchese v. Great Neck Terrace Assoc., L.P.,* 138

A.D.3d 698, 699-700 (2d Dep't 2016)*; Mayes v. UVI Holdings, Inc.,* 280 A.D.2d 153,

---

[87] Citing, *inter alia*, *Denee v Ankeny*, 246 U.S. 208 (1918) and *Jordan v.  Talbot*, 55
Cal.2d 597, 12 Cal.Rptr. 488, 361 P.2d 20, 6 A.L.R.3d 161 (1961)

[88] Citing, *inter alia*, *Glass v. Wiener*, 92 ADAD 584 (2d .Depot 1983)

157-161 (1ˢᵗ Dep't 2001); *Matter of Ga Young Lee v. Chari-Ho Parl,* 16 A.D.3d 986,

988 (3d Dep't 2005); *Hood v. Koziej,* 140 A.D.3d 563, 564-65 (1ˢᵗ Dep't 2016);  *Town*

*of Oyster Bay v. Jacob*, 109 A.D. 613, 615 (2d Dep't 1905); *Clinkscale v. Sampson*, 48

A.D.3d 730, 730 (2d Dep't 2008); *Moran v Orth*, 36 A.D.3d 771, 773 (2d Dep't 2007);

*Matter of Tri-State Refreshments, Inc. v. Nitke,* 41 Misc.2d 386, 390-91 (1964);  *Bi-*

*anchi v. Hood*, 128 A.D.2d 1007, 1007-08 (1987); *Fronczak v. Town of Orchard Park,*

65 Misc.3d 246, 248-251, 252 (2019)

   The rule in California is essentially identical to the rule in New York. The rea-

soning, policies and history of the rule and principles of law are explained in two Cal-

ifornia cases - namely, *Jordan v. Talbot*, 55 Cal.2d 597, 12 Cal.Rptr. 488, 361 P.2d 20,

6 A.L.R.3d 161 91961)(Traynor, J.) and *Daluiso v. Boone*, 78 Cal. Rptr. 707, 455 P.2d

811 (1969)

   Significantly, I think, in their Memorandum of Law, Attorneys Sanders and Arias

cite, quote and rely upon no less that six Supreme Court and Second Circuit Court of Ap-

peals cases that no only wholly fail to lend any support to their own position and lines of

argument, but which actually support our own position and arguments.

   Foremost among those cases are *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61

(1992)("A 'seizure' of property . . . occurs when 'there is some meaningful interference

with an individual's *possessory* interest in that property.")[89]

---

[89] Sanders-Arias Memorandum of Law, Doc No. 30-14, at Page 13-14 of 24 (emphasis
added by me)(quoting *United States v. Jacobsen*, 466 U.S. 109, 113 [1984])

In their Memorandum of Law,[90] Counsel cite *Sullivan v. Stein*, 487 F.Supp.2d

52, 67-69 (D.Conn. 2007), citing *Soldal,* 506 U.S. at 61)("Thus, a Fourth Amendment

claim requires the Plaintiff to demonstrate a legitimate protectable property interest.")

Close and thoughtful reading of District Judge Kravitz's extremely well-reasoned

opinion in *Sullivan* leaves no possible question or doubt as to the fact that it lends over-

whelming support to our position in the case - and does so at the clear expense of Coun-

sel's position and arguments.

To cite just one example, Judge Kravitz comments on the fact that the Plaintiffs

in the case before him cited *Soldal* in support of their position.   Judge Kravitz, howev-

er, explains that:

> *Soldal* is distinguishable from the present case in several salient ways..
> For one, Soldal had a valid tenancy and an indisputable property interest
> in his home.   For another, the officers in *Soldal* know that the private de-
> fendants did not have an eviction order and that their actions in removing
> the home were illegal, and the officers had known this for some period of
> time before the actual date of removal.   *Sullivan*, 487 F.Supp,2d at 70 (ci-
> ting *Soldal*, 506 U.S. at 58-59).

Yet another case that Counsel cite in their Memorandum of Law is *Ostensen*

*v. Suffolk County*, 378 F.Supp.2d 140, 148 (E.D.N.Y.  2005),  *aff'd,*  236 Fed.Appx.

651 (2d Cir. 2007)("Without being able to establish that she had a *possessory* interest

in the house, the Plaintiff cannot successfully maintain an unreasonable seizure

claim.")[91]

In citing and excerpting the above language of *Ostensen*, however, Counsel ap-

---

[90] Doc. No. 30-14, at Page 14 of 23

[91] Memorandum of Law, Doc. No. 30-14, at Page 14 of 23

-10-

pear to have forgotten or lost sight of the fact that it is their stated position that title or

ownership alone determines whether an individual has an interest in real property that

qualifies for protection under the Fourth and/or Fourteenth Amendment.   *We* say rat-

her that peaceable or peaceful ***possession*** is the crucial factor in this regard.

Two other points made by the Supreme Court in ***Soldal*** bear mention in connec-

tion with the present discussion.

First, " . . . seizures of property are subject to Fourth Amendment scrutiny even

though no search within the meaning of the Fourth Amendment has taken place."   ***Sol-***

***dal***, 506 U.S. at 68

Second, "we have emphasized that 'at the very core of the Fourth Amendment

stands the right of a man to retreat into his own home.'" ***Soldal***, 506 U.S. at 61 (quo-

ting ***Silverman v. United States***, 365 U.S.  505, 511 [1961])[92]

The ***Soldal*** Court (506 U.S. at 61) also cites ***Oliver v. United States***, 466 U.S.

170, 178-79 (1984), in which the Court similarly points out that:

> The [Fourth] Amendment reflects the recognition of the Framers
> that certain enclaves should be free from arbitrary government in-
> terference.  For example, the Court since the enactment of the
> Fourth Amendment has stressed 'the overriding respect for the
> sanctity of the home that has been embedded in our traditions
> since the origins of the Republic.'[93]

It might be noted that, as the Supreme Court explains in ***Soldal***, 506 U.S. at

---

[92] Citing also, ***inter alia***, ***Payton v. New York***, 445 U.S. 573, 601 (1980)

[93] Quoting ***Payton***, 445 U.S. at 601 (and citing also: ***Silverman,*** 365 U.S. at 511; and
***United States v.  United States District Court***, 407 U.S. 297, 313 [1972])(See also ***Kyl-***
***lo v. United States,*** 533 U.S. 27, 31-39 [2001][Scalia, J.];  and ***id.***, 533 U.S. at 45-46
[Stevens, J., dissenting])

Arias changed their tune - in their Reply Memorandum of Law.[94] They added a new claim and argument - namely, that in the so-called "Supplemental Decision and Judgment," signed by then-Chemung County Judge James T. Hayden on August 11, 2015,[95] it states the following:

> "Chemung County is entitled to final judgment herein awarding possession of [the Property]": and "upon the recording of the deed . . . Chemung County shall be seized of an estate in fee simple absolute . . . and all persons . . . who may have had any rights, title, interest, claim, lien or equity of redemption . . . shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption."[96]

Two things - at least - might be noted by way of response to the above:

First, as earlier noted, the so-called Hayden "default judgment" was and is void *ab initio*; as also mentioned earlier, we intend and expect to demonstrate this, as a matter of law, by way of a motion for (partial) summary judgment.

Second, once again assuming arguendo that the Hayden "judgment" was and is valid, lawful and possessed of legal effect and import, this fact changes nothing. As earlier discussed at considerable length, it is well settled under New York law that even a superior right to possession on the part of one guilty of forcible or unlawful entry and/or detainer is not defense to such a claim.    Indeed, evidence of such a super-

---

[94] Doc. No. 35-2, at Pages 1 to 12

[95] Sanders Statement of Material Facts, Doc. No. 30-1, ¶ "27," at Page 8 of 10; Doc. No. 30-3, at Page 3)

[96] Sanders-Arias Reply Memorandum of Law, Doc. No. 35-2, at Page 8 of 12 (quoting "Supplemental Decision and Judgment" signed by Judge James T. Hayden on August 11, 2015 (Doc. No. 30-9, at Page 3).

ior right to possession is universally held to be inadmissible upon trial of such a claim.

## JUDGE TELESCA'S FEBRUARY 19, 2019 DECISION AND ORDER IS "LAW OF THE CASE" AS TO THE MERITS OF THE CLAIMS STATED IN OUR COMPLAINT

The legal standard on a motion under Rule 12(b)(6) is, to all practical intents and purposes, essentially the same as the standard which guides the Court in the exercise of its screening obligation and function under 28 U.S.C. § 1915(e)(2).

In its February 19th Order, the Court determined and ruled that the allegations set out in Plaintiffs' Complaint *plausibly* stated valid and actionable claims under the Fourth Amendment and under both the procedural and substantive prongs of the Fourteenth Amendment's Due Process Clause.

The Court's previous rulings, in its February 19th Order, that the allegations and factual showing set out in Plaintiffs' Complaint plausibly stated actionable claims under both the Fourth and Fourteenth Amendments to the United States Constitution must be regarded and accepted as "law of the case" in this § 1983 action.[97]

In the Second Circuit, under settled "law of the case" jurisprudence, the prior rulings of the Court may not be disturbed, modified or revised unless there is "an in-

---

[97] Plaintiffs use the word "plausibly" in the above to connote that the claims in question were stated in their Complaint in a manner sufficient to satisfy the heightened pleading standards promulgated by the Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).  Plaintiffs are cognizant of the more stringent and demanding pleading standard inaugurated by the Supreme Court in the two cases cited above.    All of the claims and causes of action stated in their Complaint meet and satisfy such heightened pleading standard.

Page 13

tervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (*citing Zdanok v. Glidden Co.*, 327 F.2d 944, 953 [2d Cir. 1964; *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 [2d Cir. 1992])(*See also American Canoe Assn. v. Murphy Farms, Inc.*, 326 F.3d 505, 514-16 [4th Cir. 2003]; and *Anixter Home-Stake Production Co.*, 977 F.2d 1533, 1547-48 [10th Cir. 1992])

In the instant case, it is clear beyond peradventure that, as a matter of law, Defendant Maggs has not made a showing on the instant motion which colorably or conceivably meets the standard cited above.

## CONCLUSION

The dispositive motion brought by Attorneys Sanders and Arias, on behalf of their client, Bryan Maggs, in the case that is the companion of the present case (to wit, *Murphy and Camilli v. Maggs et al.* (Case No. 18-CV-06628-MAT-MWP) is completely frivolous, utterly devoid of merit and lacks any colorable or conceivable basis in either fact or law.

For at least this reason, Counsel's motion for a protective order, pursuant to Rule 26(c)(1), in as part of that motion - which, if granted by Judge Telesca, was and is outrageous - and clearly bespeaks the antithesis of good faith, honest intent, fairness or clean hands.

So too, it is respectfully submitted that the above matters and issues are most

Page 14

assuredly material to Counsel's pending motion to compel in the instant case.

Date: March 9, 2020

Respectfully submitted,

Christopher M. Murphy
Plaintiff, appearing *pro se* at this time
Residence and Post Office Address:
105 Geneva Street, Apartment 237
Bath, New York 14810
Telephone: (607) 664-6717

Page 15

To: Hon. Marian W. Payson
    United States Magistrate Judge
From: Chris Murphy
Re: Murphy v. Hughson et al.
    Case No. 17-CV-6639-MAT-MWP
Date: March 10, 2020

Dear Judge Payson:

      I have only enough ink in my last remaining print cartridge to print out one set of the enclosed papers – and I am sending that one copy to you.

      I will serve copies on Counsel and send out a Certificate of Service to the Clerk's Office tomorrow.

      I am running so late that there is no time for an acceptable cover letter, so I ask you to bear with me – and forgive me – for such failing.

      Once again, thank you so much for your courtesy, consideration and forbearance with regard to this matter.

      I am,

               Very truly yours,

               Christopher Murphy