UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

CHRISTOPHER M. MURPHY,

               *Plaintiff*

               **v.**                            **Case No. 17-CV-6339-FPG-MWP**

ANDREW HUGHSON, FRANK HILLMAN,

GLENN GUNDERMAN, JOSEPH SPENCER,

WILLIAM WASHBURN, DAVID STRONG

and DANIEL HOWE,

               *Defendants*

-----------------------------------------------------------------x

## MOTION BY PLAINTIFF CHRISTOPHER MURPHY FOR EXTENSION OF FACT DISCOVERY COMPLETION OTHER SCHEDULING DEADLINES, PURSUANT TO FED.R.CIV.P. 16(b)(4)

       Plaintiff, Christopher M. Murphy, appearing ***pro se*** at the present time, brings a motion, pursuant to Fed.R.Civ.P. 16(b)(4), respectfully requesting a 120-day extension of the current fact discovery completion deadline and attendant scheduling deadlines in accordance therewith, together with such additional, further and related relief as hereinafter mentioned or requested, and in support of the instant motion, he respectfully declares and shows to this Court the following:

1

## Topical Index

*Page*

Preliminary Note  ...................................................................  5

Murphy's Declaration in Support of  Motion for Relief

      Pursuant to Fed.R.Civ.P. 56(d) is Properly Considered

      in Connection with this Motion for an Extension of the

      Scheduling Deadlins Pursuant to Fed.R.Civ.P. 16(b)(4) ..............  6

Procedural Backstory :  Attorney Hourihan and the City of Elmira

      Defendants' Numerous Previous Requests for Extensions of

      Discovery and Scheduling Deadlines  ...........................................  7

Attorney Hourihan Refuses to Respond to Murphy's Discovery

      Requests in Two Companion Cases ................................................  11

Murphy Fully and Timely Complied with All Discovery

      Requests Put to Him by All Defendants Months Ago .................  17

Sanders/Arias's Responses/Objections to Murphy's Discovery

      Requests Are a Paradigm of Discovery Abuse ............................  24

Sanders/Arias Unjustifiably Refused to Meet and Confer with

      Murphy Regarding Discovery in this Case (17-6339) ..................  34

Sanders/Arias Unjustifiably Refused to Meet and Confer with

      Murphy Regarding Discovery in Case No. 18-06628 ....................  40

Material Facts Raised on the Chemung County Defendants'

      Earlier Motion to Compel Discovery Strongly Support

      Murphy's Present Motion for Extension of Discovery and

other Scheduling Deadlines Pursuant to Rule 16(b)(4) ................   43

    *Sanders Declaration* ............................................................   43

    *Murphy Declaration (Answer)* .............................................   43

    *Sanders Declaration (Reply)* ...............................................   47

    *Murphy's Informal Sur-Reply Responses and Comments* ....   49

    *The Court's Ruling* ..............................................................   50

Murphy's Statement of Changes to the Transcript of his

    October 16, 2020 Deposition Pursuant to Fed.R.Civ.P.

    30(e) was Unlawfully Omitted from the Transcript

    Submitted by the Defendants in Support of their

    August 8, 2021 Motions for Summary Judgment ...............................   51

Request that Judicial Notice be Taken of All Papers and

    Proceedings of Record in Companion Cases Nos.

    18-CV-06628-FPG-WWP and 18-CV-06572-FPG-MWP ................   53

Request for Extension of Discovery and Scheduling Deadlines

    Pursuant to Fed.R.Civ.P. 16(b)(4) ....................................................   55

Declaration Pursuant to 28 U.S.C. § 1746(2) .............................................   57

Request for Relief .......................................................................................   57

3

**Exhibits**

U.S.P.S. Receipt (September 10, 2020) ....................................................... A

U.S.P.S. Receipt (October 8, 2020) ............................................................. B

Murphy Letter to Maggs/Hourihan (December 3, 2020) ............................ C

Hourihan Letter to Murphy (February 5, 2021) ........................................... D

Murphy Letter to Maggs/Hourihan (May 10, 2021) .................................... E

U.S.P.S. Receipt (September 30, 2020) ....................................................... F

Murphy Email Letter to Sanders/Arias (November 30, 2020) .................... G

Murphy Email Letter Sanders/Arias (May 10, 2021) .................................. H

Arias Email/Letter to Murphy (May 12, 2021) ............................................ I

Arias Letter to Murphy (October 13, 2020) ................................................. J

Envelope Containing Sanders' March 5, 2021 Letter to Court ................... K

Rotenberg June 12, 2019 Letter to Judge Payson ...................................... L

Murphy's Interrogatories to Gunderman, Spencer and Washburn .............. M

Murphy's Document Production Requests to Washburn ........................... N

Sanders/Arias November 9, 2020 Interrogatory Responses/Objections ....... O

Sanders/Arias November 9, 2020 Document Request Objections .............. P

"Documents bates CCS00069 through CCS00085" .................................. Q

Sanders/Arias April 8, 2021 "Supplementary" Discovery Responses ........ R

Hourihan's September 18, 2018 Letter to Murphy ...................................... S

"Statement of Changes" to Deposition Transcript (12/4/20) ...................... T

Court Reporter Wilson's November 2, 2020 Letter to Murphy ................... U

Receipt for Delivery "Statement of Changes" on December 4, 2020 .......... V

**Preliminary Note**

In a letter to Plaintiff ("Murphy") dated May 12, 2021 (**Exhibit I**),[1]  Attorney Arias ("Arias") reports "discovery closed on April 8, 2021."   Murphy disputes this assertion.

For at least the reasons later spelled out and explained, it is respectfully submitted that it is necessary to consider this motion and this case in conjunction with its two companion cases (No. 18-CV-066628-FPG-MWP and No. 18-CV-06572-FPG-MWP) - rather than in isolation or apart from either or both of those two cases.

Murphy is the plaintiff in all three cases.   Attorneys Sanders and Arias represent the Chemung County Defendants in this case and also in No. 18-06628.

Attorney Hourihan represents - or purports to represent - the City of Elmira Defendants in all three cases.[2]

"When you get the dragon out of his cave on to the plain and in the daylight, you can count his teeth and claws, and see just what is his strength."  Holmes, ***The Path of the Law***, 10 Harvard L.Rev. 457, 469 (1897)

Truth has a handsome countenance but torn garments.  ***German proverb***

---

[1] Unless otherwise explicitly noted, all dates herein mentioned are in the year 2021.
[2] Per numerous Orders of this Court, Attorney Hourihan was and is "terminated" as attorney for Defendants Hughson and Hillman in this case (Docs. Nos. 38, 41, 44, 45, 48, 55, 61, 63, 65, 68 and 71).  ***See also*** Murphy Declaration in Opposition to Motion for Summary Judgment and in Support of Motion for Relief Pursuant to Fed.R.Civ.P. 56(d0, filed August 30, 2021 (at 20-26).

## Murphy's  Declaration in Opposition to Defendants' Motion for Summary Judgment and in Support of Request for Relief Pursuant to Fed.R.Civ.P. 56(d) Should Properly be Considered in Conjunction with the Present Motion

Defendants Gunderman, Washburn, Spencer, Strong and Howe filed a motion for summary judgment on August 8, 2021 (Doc. No. 66).     The same day, Defendants Hughson and Hillman also filed a motion for summary judgment (Doc. No. 67).

On August 30th, Murphy filed a Declaration in Opposition to the Motions for Summary Judgment and in Support of Motion for Relief Pursuant to Fed.R.Civ.P. 56(d).

Murphy respectfully requests that the Declaration filed on August 30th be read and considered in conjunction with the present motion for relief under Rule 16(b)(4).

In his August 30th Declaration in opposition to the Defendants' motions for summary judgment (at 66-76), Murphy stated that the present Declaration in support of his request for relief under Rule 16(b)(4) should properly be read and considered in conjunction with the Defendants' motions for summary judgment.

For at least the reasons explained in Murphy's August 30th Declaration (at 67-76), this is particularly the case regarding Murphy's request for relief under Rule 56(d).  In other words, his request that both summary judgment motions be denied at the present time, so as to enable Murphy to conduct discovery to obtain the information and documents necessary to adequately and effectively oppose those two motions.

As more fully explained in his August 30th Declaration, Murphy's request for the appropriate relief under Rule 56(d) will presumably be moot if the Court decides to summarily deny or dismiss either or both summary judgment motions unconditionally.

Nonetheless, even if the Court agrees with Murphy that either or both motions for sum-

mary judgment should be dismissed or denied unconditionally, Murphy still needs - and here-with respectfully requests - an extension of the fact discovery completion deadline and other scheduling deadlines pursuant to Rule 16(b)(4) in this case.

In sum, Murphy respectfully requests that his August 30th Declaration be read and considered in connection with the instant motion for relief under Rule 16(b)(4).   This motion and Murphy's motion for relief under Rule 56(d) are necessarily intertwined - on both the law and the facts.

## Procedural  Backstory

## Attorney Hourihan and the City of Elmira Defendants'

## Plethora of Requests for Lengthy Extensions of Scheduling

## Deadlines Pursuant to Fed.R.Civ.P. 16(b)(4)

On June 12, 2019 (No. 17-CV-6639-FPG-MWP)("17-6339"), Attorney Hourihan ("Hourihan") wrote to this Court to advise:

> During the past few years, I have been employed in private practice through Barclay Damon . . .   However, a little over a month ago, I vacated my position with Barclay Damon, and moved to a different private practice firm.
>
> .  .  .
>
> We just recently completed the transfer of many files, and as a result, I am now asking for additional time to complete discovery in this case.   As new counsel is taking over on the Barclay Damon side, I am respectfully requesting an extension of time until October 21,

2019 to complete discovery.   Further, as that extension will run into

the other deadlines, I am asking that the remaining deadlines in the

Court's current Scheduling Order be pushed back 120 days, we well.[3]

At all times material to Case No. 06628, Defendant Bryan Maggs was Chemung County

Attorney.  He was also a Partner in Barclay Damon, LLP.  Attorney Hourihan was an Associate

in Barclay Damon, LLP, and Assistant Elmira City Attorney/Corporation Counsel.

On February 19, 2019, Bryan Maggs was fired from his position by Chemung County

Executive Christopher Moss.      Maggs' successor as County Attorney is M. Hyder Hussain,

Esq.

Based on reporting in the Elmira *Star-Gazette,* the Rochester ***Democrat & Chronicle*** and

on WSKG (NPR) in Binghamton:

Over a four-year period, $696,397.00 was improperly (unlawfully?) "funneled" by Che-

mung County Attorney Maggs to the private coffers of himself and the law firm in which he was

then a partner – to wit, Barclay Damon, LLP.

According to County Executive Moss and successor County Attorney Hussain, the

County continues to investigate all statements submitted to the County by Barclay Damon,

LLP, based on billing "inconsistencies" and "irregularities."

Maggs is out as both Chemung County Attorney and Barclay Damon, LLP, Partner.

Hourihan is out as both Assistant Corporation Counsel for the City of Elmira and

Barclay Damon, LLP, Associate.

The Bryan J. Maggs Law Offices, PLLC, are born.   Very limited liability.

In its Amended Scheduling Order entered June 26, 2019 (Doc. No. 35)(17-6339), the

---

[3] *See also* **Exhibit L** (June 12, 2019 Letter from Roy Z. Rotenberg, Esq., to this Court, joining in Hourihan's
request for additional time to complete discovery and for extension of the scheduling deadlines).

Court states:

> Pursuant to a letter having been received [from] Assistant
>
> Corporation Counsel Jeremy J. Hourihan, counsel for the City
>
> of Elmira defendants, Andrew C. Hughson and Frank B. Hill-
>
> man, dated June 12, 2019, requesting a 120-day extension of
>
> the deadlines contained in this Court's February 19, 2019
>
> Amended Scheduling Order (Docket # 30), and a letter having
>
> been received from Roy Z. Rotenberg, Esq., counsel for Che-
>
> mung County defendants, dated June 12, 2019, advising that
>
> they join in Mr. Hourihan's request, and this Court having re-
>
> ceived no opposition from plaintiff, and good cause having
>
> been shown, it is . . .

Hourihan sent a letter to the Court dated October 25, 2019 – docketed March 17, 2020 (17-6339):

> I write this letter to request an extension of the Scheduling
>
> Order in the above-referenced proceeding.  The parties are still
>
> in the midst of exchanging paper discovery in this case, and dep-
>
> ositions have yet to be scheduled.    As the Court is aware, there
>
> is a companion case involving Mr. Murphy as the Plaintiff (Case
>
> No. 18-CV-06628), that stems from the same underlying situation.
>
> The parties hope to conduct Plaintiff's deposition at the same time
>
> for both cases, however, the companion case is still in the pre-dis-
>
> covery phase.
>
> As a result, I respectfully request a 120-day extension of the

current deadlines in the Court's Scheduling Order dated June 26,

2019 . . .

   I have spoken with Attorney Sanders, counsel for the Chemung

County defendants, and he joins in this request, as well.

On November 1, 2019, Attorney Hourihan again writes to the Court (Doc. No. 51-2)

(17-6339)(docketed March 17, 2020):

   Per the Court's request, I have attempted reach the Plaintiff by

phone on several occasions this week in order to obtain his consent

to the Defendants' request for an extension of the Scheduling Order.

Unfortunately, my phone calls ring without an answer, and Plaintiff's

phone is not set up to accept voicemail.   As a result, I have been una-

ble to reach the Plaintiff to obtain his consent.   With that being said,

from previous conversations with the Plaintiff, I know he intended on

sending discovery demands to the parties, so this extension would ben-

efit him, as well.

In its Amended Scheduling Order entered November 5, 2019 (Doc. No. 38, at 1)

(17-6339), the Court granted counsel's request, noting in pertinent part:

   Pursuant to a letter having been received [from] Assistant

Corporation Counsel Jeremy J. Hourihan, Esq., . . . dated Octo-

ber 25, 2019, requesting a 120-day extension of the deadlines

contained in this Court's June 26, 2019 Amended Scheduling

Order (Docket # 35), and a follow-up letter having been received

from Mr. Hourihan, dated November 1, 2019, outlining his attempts

to contact Plaintiff, and Paul Sanders, Esq., . . . having joined Mr.

10

Hourihan's request, and this Court having received no opposition by

plaintiff to the requested extension, and good cause having been

shown, it is . . .

In its Order & Amended Scheduling Order entered February 24, 2020 (Doc. No.

44)(17-6339), the Court recites:

> Defendants Daniel Howe, Glenn Gunderman, William
>
> Washburn, Joseph Spencer and David Strong having filed
>
> a motion for a 120-day extension of time to complete dis-
>
> covery (Docket # 43), and defendants Frank B. Hillman
>
> and Andrew Hughson having joined the request (***id***.), and
>
> plaintiff Christopher Murphy having advised this Court by
>
> telephone on February 21, 2020 that he has no objection to
>
> defendants' motion for an extension of time to complete dis-
>
> covery, and good cause having been shown, it is hereby . . .[4]

### Murphy's Paper Discovery Requests to Elmira City Defendants
### Are as Yet Unanserwered After Eleven Months

I propounded no paper discovery requests to City of Elmira Defendants Hughson

and Hillman in 17-CV-6339-FPG-MWP.    I did, however, propound lots of them to City

of Elmira Defendants Buzzetti, Campanella, Martino and Overly in No. 18-CV-6572-FPG-

MWP ("6572") and No. 18-CV-06628-FPG-MWP ("06628") – all of these guys represented

---

[4] The material provisions of the Court's February 24, 2020 Scheduling Order (Doc. No. 44) are discussed ***infra***.

by Attorney Hourihan.

Interrogatories and Document Production Requests – sent out in two batches.

The first ones were served by mail at the United States Post Office in Bath on September 10, 2020 (**Exhibit A**).   It might be recalled that earlier that day, a Rule 16 Scheduling Conference was held before Judge Payson (in 06628)(**see Exhibit G**).

The second ones were sent out via Priority Mail on October 8, 2020 (**Exhibit B**). U.S.P.S. 1-800-222-1811 (Tracking No. 9505 5132 3056 0282 3163 52)

Nary a word back from Attorney Hourihan.     No discovery responses, no explanations, no asks for more time.

In a letter dated December 3, 2020 (a copy of which is attached as **Exhibit C**), I invite counsel to meet and confer.     Barbara Camilli hand-delivered it on December 4th and had the secretary (Ms. Jodi Van Zile) sign a receipt.

Once again, nothing back from counsel – until his letter to Murphy and Camilli (06628) dated February 5, 2021 (**Exhibit D**) – which says this:

Dear Mr. Murphy and Ms. Camilli:

In regard to the above Western District Matter, please find enclosed <u>one</u> set of Defendants [*sic*] Rule 26(a)(1) Disclosures. Should you need a second set of Disclosures, please let my office know.   These overlap somewhat with the discovery responses, as well.   I have almost completed putting those together, and should be able to get them to you in the next two weeks.    As such, please allow this to serve as our good faith request for an extension until February 19, 2021 to serve you with discovery responses.  (Underlining in original)

February 19th comes and goes.  Nothing back.   No responses, no further explanations, no more asks.

On May 12, 2021, I emailed Hourihan a letter dated May 10th (copy attached as **Exhibit E**)(copies to Sanders/Arias contemporaneously).

No response until from counsel until . . .

6:47 P.M. on June 2, 2021.   I get an email from Attorney Hourihan, which, in its en-tirety, says this:

> Good evening Mr. Murphy.
>
> Thank  you for your letter and the initial disclosures.  My under-standing is that you had a meet and confer with Barclay Damon.    I initially thought I would be included in that, but there was some con-fusion.   So, I am happy to schedule a time to discuss discovery with you on the two cases that require it.     My responses are almost com-plete  on both, but I am certainly happy to discuss timeframes with you, as well.  I am a bit behind on things as I have been in trial/trial prep for the last few weeks or so.
>
> First, would you consent to extending the discovery deadline by 60 days that is coming up soon?  Then we can meet and confer, and I can get you my  responses.  If you are agreeable to that, I will write to the Court and request an  extension.   Then, you and I can speak in the next week or two (and I will provide you with dates).
>
> Let me know your thoughts at your convenience.

I do not respond.

I got a copy of Attorney Hourihan's June 4th letter to the Court (Doc. No. ?)(06628)

13

(**VIA FAX ONLY: [585] 631-4085**]) in the mail on the 6th :

> . . . there are some outstanding discovery issues that
> need to be completed, as well as depositions in this case.
> Plaintiff recently wrote to me to request a meet and confer
> with regard to the outstanding discovery, and I recently
> reached out to him to attempt to schedule it, and to obtain
> his consent to extend the discovery deadlines.     I have not
> yet received a response, but plan to follow up again.     My
> hope is to have the meeting with the Plaintiff in the next week
> or two and finalize paper discovery in the weeks after that.[5]
> Thereafter, we can perform depositions.
>
> Based on the foregoing, I believe an extension of 90 days
> to the deadlines in the current Scheduling Order would provide
> sufficient time to complete discovery in this case.     I have dis-
> cussed this with co-defense counsel, and they consented to the
> extension of time, as well.
>
> • • •
>
> cc: Paul Sanders, Esq. (via E-Mail)
>
> Christopher Murphy and Barbara Camilli (via Postal Mail)

As of 6:47 P.M. on June 2nd - at the latest - we know that Attorney Hourihan knew

Murphy's email address.

By my count, this brings us to eleven months since I served my discovery requests on

---

[5] My hope is to have the meeting with the Plaintiff in the next week or two and finalize paper discovery
in the weeks after that.  Anyone?  Anyone at all?  Bueller?

this guy – and about eight months of being jerked around endlessly by him, my deferential (albeit persistent) attempts to get stuff I need to make my case from him notwithstanding.

From my standpoint, it would have been better if Hourihan had just informed me early on that he was not about to comply with any of the reasonable and legitimate paper discovery requests I propounded to his clients on the same day as the Scheduling Conference in No. 18-CV-06628 (September 10, 2020) (**Exhibit A**).

Next thing that happens is this:  I check my mailbox on June 14th and find this Court's June 11th Order (Doc. No. 61)(06628) inside it.

It might be noted that in a Status Report filed in companion case No. 18-CV-06572-FPG-MWP on August 4, 2021 (Doc. No. 34),[6] Attorney Hourihan states:

¶ 1. We attempted to reach Plaintiff by phone on Friday July 30, 2021 after he called our office, but phone calls by both myself and my assistant would not connect to the number provided by Defendant [*sic*].[7]

¶ 6.  Thereafter, the Defendants provided Plaintiff with initial disclosures which encompass most of the discovery in this case.

¶ 7.  Plaintiff references that he provided Interrogatories to the Defendants in this case, but we initially could not locate them.  However, the discovery demands came to our office within discovery demands in a companion case and were recently located.

---

[6] The pages of this Status Report are not numbered.
[7] I guess Hourihan means either *by* the Plaintiff or *to* the Defendants.

15

¶ 8.  As such, the Defendants are content to provide the

Plaintiff with responses to those Interrogatories in the near

future.

Going through the above proctological laundry list seriatim:

First, counsel's claims that the telephone number I gave him didn't work is

just nonense.   We've had the same phone number since day one and he has it.

Second, counsel's initial disclosures under Fed.R.Civ.p. 26(a)(1) contain-

ed nothing of any colorable or conceivable use or value to Plaintiff;     while a pile of stuff

was served up, it was clearly calculated to avoid disgorging anything that might be remote-

ly prejudicial to any of the Defendants or to lead Murphy to discovery of anything that might

be prejudicial to them; counsel's assertion that those "initial disclosures encompass most of

the discovery in this case" beggars the imagination.

Third, the numerous Interrogatories and Document Production Requests

Murphy propounded to Defendants Campanella, Buzzetti, Martino and Overly in Nos. 18-

CV-06628 and 18-CV-06572 were served by mail on Attorney Hourihan on September 10,

2020 (**Exhibit A**) and October 8, 2020 (**Exhibit B**).

In his February 5, 2021 letter to Murphy (**Exhibit D**), Hourihan refers to Murphy's

paper discovery requests and asks for an extension of time to February 19th to respond to

them.   As already mentioned, February 19th came and went - with nary a word from coun-

sel.

Now, most recently, in the Status Report filed August 4, 2021 Dioc. No. 34, ¶ 8), At-

torney Hourihan informs this Court that "[t]he Defendants are content to provide Plaintiff with

responses to those Interrogatories in the near future."

**Murphy Fully and Timely Responded to All Discovery Requests**

**Put to Him by All Defendants and Did This Months Ago**

Per Order entered January 22, 2018,  the Honorable Michael A. Telesca, U.S.D.J,

assigned this case to the Honorable Marian W. Payson, U.S.M.J., to handle pretrial proceed-

ings and determine any and all "nondispositive" matters and issues, pursuant to 28 U.S.C.

§ 636 (b)(1)(A), (B), and Fed.R.Civ.P. 72(a)(Doc. No. 12).    As I recall, Chief Judge Gera-

ci later issued as Order to the same effect (Doc. No. ?)

The District Court's ruling establishes the law of the case in this litigation. ***North River Ins. Co. v. Philadelphia Reinsurance Corp***., 63 F.3d 160, 164-165 (2d Cir. 1995); ***Prisco v. A & D Carting Corp.,*** 168 F.3d 593, 607 [2d Cir. 1999])

On February 24, 2020, Judge Payson granted an Amended Scheduling Order (Doc. No. 44) stating, in pertinent part, as follows:

All factual discovery in this case, including depositions, shall be completed on or before **June 17, 2020**.

Dispositive motions, if any, shall be filed no later than **August 12, 2020**.

. . .

Responding papers are due by **September 17, 2020**. Reply papers, if any, shall be filed by **October 15, 2020**.

. . .

A <u>trial date status conference</u> pursuant to Fed.R.Civ.P. 16(e) and Local Rule 16 will be held, if necessary, at a time and date to be determined by the trial judge after determination of dispositive motions.

Doc. No. 44 (at 1-2)(emphasis in original)(***See also*** Docs. Nos. 30, 35).

Taking a step back . . .  earlier pretrial discovery issues in the case ***sub judice*** (No. 17-CV-6339-FPG-MWP)("17-6339").

On February 12, 2020, Attorneys Sanders and Arias ("Sanders/Arias") brought a motion under Fed.R.Civ.P. 37(a) to compel discovery from  Murphy (Docs. Nos. 40-1 ***et seq***.; Doc. No. 51)

Per Order entered September 15, 2020 (Doc. No. 55), this Court granted the motion

and ordered Murphy to do two things:

> First, to present himself to be deposed by counsel for the movant **County** Defendants on October 16, 2020 at 10:00 A.M. – either in person or by telephone; and

> Second, to serve his written responses to a number of paper discovery requests that had earlier been propounded to me by counsel for the **County** Defendants – and to serve said written discovery responses on counsel **on or before October 2, 2020**. (Doc. No. 55, at 6)

> In a letter to the Court dated October 8, 2020 (Docs. Nos. 57, 58), Attorney Sanders claimed that, as of the date of his letter, he had not received any discovery responses from me.

> This is what Attorney Sanders tells this Court:

>> Defendants are considering requesting that the Court impose sanctions for Plaintiff's violation of the Court's Order, including dismissal of the case. In the meantime, Defendants respectfully request that the deadline for Plaintiff's deposition, currently scheduled for next Wednesday October 16th (only after three business days from today as Monday is a holiday, be stayed until at least five business days after Plaintiff serves its responses (if ever), so that Defendants have adequate time to review them, and follow up if necessary, before the deposition.

> Keep me on the sinner's stool, I guess. (**See** Doc. No. 55, at 3-5)

> I never received a copy of the above letter and, upon information and belief, no certificate of service was ever filed.

> That same day (October 8th), Sanders sent the Court another letter (Doc. No. 59 [filed October 9th])(Doc. No. 60 [filed October 13th]), in which he says this:

>> I am writing to advise the Court that we are withdrawing the appli-

cation to the Court filed yesterday, October 8, 2020 [Dkt. 57], seeking to

extend the deadline to conduct Plaintiff's deposition, as we have received

the plaintiff's discovery responses.   Accordingly, the Plaintiff's deposition

remains scheduled for next Wednesday, October 16th.

Murphy never received a copy of that letter either and, upon information and belief,

no certificate of service was ever filed.

Significantly, while, in his *second* October 8th letter (Doc. No. 59), Sanders acknow-

ledges receipt of Murphy's discovery responses, he does not indicate *when* he received them.

By leaving out this information, Sanders deliberately leaves firmly in place his *prior* (Doc. No.

58) assertion that of October 8th (the morning of that day, one fairly supposes), he had not yet

received those responses.    In other words, Sanders deliberately chose not to correct his repre-

sentation to this Court that Murphy had failed to meet the Court's October 2nd deadline by six

days - and he raised the prospect of seeking dismissal of Murphy's case as the possible sanction

pursuant to Fed.R.Civ.P. 37(b), (d).

On October 13th, the Court granted an Order (Doc. No. 61), stating:

Defendants having filed a motion to withdraw their motion for

an extension of time to complete discovery (Docket # 60), and good

cause having been shown, it is hereby

ORDERED, that the defendants' motion to withdraw their motion

is **GRANTED**.  Defendant's motion for an extension of time to com

plete discovery is deemed withdrawn.

I did, of course, timely receive a copy of the Court's October 13th Order.

"I have it here in black and white."   Jonson, Ben, *Every Man in his Humour*, IV, iii

(1623)

20

Attached hereto as **Exhibit F** is a copy of an official U.S.P.S. receipt, documenting that on September 30, 2020, at the United States Post Office in Bath, New York, a parcel weighing 2 lb, 11.90 oz., was sent via Priority Mail to an addressee in Rochester, New York 14604 at a cost of $8.70.

Probably not a fruitcake.

This receipt shows the U.S.P.S. toll-free number for tracking parcels or other mailings (1-800-222-1811).  It also shows the Tracking Number (9505 5132 3057 0274 3098 35).

Anyone with a telephone might call that number and enter that tracking number – and doing this will confirm that the aforementioned parcel was delivered to an office located at 100 Chestnut Street in Rochester, New York 14604 at 8:37 A.M. on October 1, 2020.

*Falsus in uno, falsus in omnibus*.[8]   ***Fisch on New York Evidence*** § 487, at 321 (2d ed. 1977)

In ***Lujan v. National Wildlife Federation***, 497 U.S. 871, 895-896 (1990), the Supreme Court excerpts the text of Fed.R.Civ.P. 6(b)(1), (2), then proceeds to explain:

> This provision not only specifically confers the 'discretion' relevant to the present issue, but also provides the mechanism by which that discretion is to be invoked and exercised.  First, any extension of a time limitation must be 'for cause shown.'  Second, although extensions before expiration of the time period may be 'with or without motion or notice,' any *post*deadline

---

[8] As the New York Court of Appeals points out in ***Moett v. People***, 85 N.Y. 373, 378 (1881). "[t]he Latin maxim . . . is unquestionably founded upon common sense and sound philosophy."

> extension must be 'upon motion made,' and is permissible only
>
> where the failure to meet the deadline 'was the result of excusable
>
> neglect.'  (Emphasis by the Court)

*See too Lujan*, 497 U.S. at 896 n. 5 (explaining the bright-line distinction between "motions,"

on one hand, and "requests," on the other).[9]

As the Court of Appeals notes in ***Drippe v. Tobelenski***, 604 F.3d 778, 784 n. 5 (3d Cir.

2010), although "***Lujan*** was decided in 1990, and in 2007 Rule 6(b) was amended . . . [t]he

amendment does not alter the request-motion dichotomy, and the rule remains substantively

the same as when addressed by ***Lujan***."

*See also Smith v. District of Columbia*, 430 F.3d 450, 456-57 (D.C.Cir. 2005)

It might also be recalled that, in its September 15, 2020 Order (Doc. No. 55, at 1 n. 1),

the Court pointed out that the City of Elmira Defendants Hughson and Hillman, who are repre-

sented by separate counsel, did ***not*** join in the County Defendants' motion to compel discovery.

This being the case, the Court ordered me ***only*** to respond to the County Defendants' paper

discovery requests and to be deposed ***only*** by counsel for those County Defendants.

Nonetheless, Attorney Hourihan had, in fact, earlier served me with a number of paper

discovery requests on behalf of his City of Elmira Defendant clients, Hughson and Hillman,

in this case (viz., No. 17-CV-6639).   As of the date of the Court's September 15, 2020 Order

(Doc. No. 55), ***all*** of them were unresponded to and remained outstanding.

Although the Court had not ordered me to respond to any of those, I responded to all

of them – within two or three days after I sent out my responses to the County Defendants'

---

[9] To be sure, ***Lujan*** deals with applications for extensions of time to act under Fed.R.Civ.P. 6(b)(1)(A), (B), not for extensions of deadlines set out in Scheduling Orders, pursuant to Fed.R.Civ.P. 16(b)(4).   Nonethe- less, I think this fairly begs the question as to whether the required showing of "good cause" for such relief was, in fact, made here – notwithstanding Murphy's apparent failure to timely oppose the request(s).

discovery requests.  Certainly not later than October 10th.   I have cell phone photos of the

mailings taken at the Bath post office after postage had been affixed.[10]

     I responded to every paper discovery request served on me by counsel for both the

County Defendants and the City Defendants in No. 17-CV-6339 – and responded to each

and every one of them fully, in good faith, non-evasively and in timely fashion.

     It will also be recalled that, in its September 15, 2020 Order (Doc. No. 55, at 6), the

Court ordered me *only* to be deposed on October 16th by counsel for the ***County*** Defendants –

the City Defendants, as aforesaid, not having joined in the motion to compel.

     When I presented myself to be deposed at the appointed hour on the appointed date, At-

torneys Sanders and Arias both noted their presence for the record, but only the latter asked the

questions on behalf of the County Defendants.

     Attorney Hourihan also appeared and questioned me.    I initially noted an objection –

– for the record.   I also mentioned to Attorney Hourihan that, in one of the Court's earlier or-

ders, there was a notation that he had been "terminated."[11]   I asked him what was up with that.

He told me that "things were confused and 'sort of messed up' in this regard."

     I did not press counsel to explain, but noted an objection for the  record.  (***See*** **Exhibit**

**T** ["Plaintiff's 'Statement of Changes' to Deposition Transcript Pursuant  to Fed.R.Civ.P. 30[e],"

dated December 2, 2020, at 1-2])

     I proceeded to answer every single question put to me by both lawyers – fully, in good

faith and non-evasively.

     At the conclusion of their questioning, I asked both lawyers – directly – whether this

---

[10] In the transcript of my October 16, 2020 deposition testimony (Tr., pp. 76-77, lns. 23-13), Hourihan acknowledges receipt of my responses to his paper discovery requests and thanks me for furnishing them to him.    Doc. No. 67, **Exhibit F**.

[11] Docs. Nos. 38, 44, 54, 55, 61, 63, 65 and 68 (17-6339)

would be the last and the final Rule 30 deposition they would call on me to submit to in this

case (17-6339).        Both attorneys explicitly assured me that it was, in fact, the last and final

one in the case.

       I fully responded to each and every paper discovery request and deposition question put

to me by counsel for both the County Defendants and the City Defendants.

       Months and months ago.

       No objections, complaints or gripes were ever forthcoming from any quarter as to a single

 one of my paper discovery responses or my Rule 30 deposition answers.

       No further or additional discovery requests were ever put to me by or on behalf of

any Defendants in this case, so there are most assuredly none left hanging somewhere out

in the ether that I have not complied with already.

       I respectfully call the Court's attention to the interrogatories and document requests

previously put to me by counsel (Docs. Nos. 45-1 *et seq.*)      It might be recalled that these

were the subject of their motion to compel (Docs. Nos. 40-1 *et seq*.)

       All of which I fully and timely responded to - even if not on a purely voluntary basis.

***But cf***.  Fed.R.Civ.P. 26(g)(1)(B)

       The Court ruled.   I complied.

       There's an end of it.


### Sanders/Arias's Responses/Objections to Murphy's Paper Discovery
### Requests Are Emblematic of a Paradigm of Discovery Abuse


       Murphy propounded a number of Interrogatories to Chemung County Defendants Gun-

derman, Spencer and Washburn on October 8, 2020, serving these by mail on Attorneys Sanders

24

and Arias. A copy of the official U.S.P.S. postal receipt is annexed as **Exhibit B**. Copies of Murphy's Interrogatories to these three defendants are attached as **Exhibit M**.     Copies of the Document Production Requests propounded to County Defendant William Washburn at the same time are attached as **Exhibit N**.

Sanders/Arias "responded" to Murphy's Interrogatories on November 9, 2020 (copies of the responses/objections to Murphy's Interrogatories to County Defendants Gunderman, Spencer and Washburn to Murphy's Interrogatories, along with a copy of Arias's November 9, 2020 cover letter to Murphy, are attached as **Exhibit O**).

Annexed as **Exhibit P** are copies of Defendant Washburn's initial (November 9, 2020) responses/objections to Murphy's Document Production Requests (**Exhibit N**).

The following are the only responses to my Interrogatories I received from the three County Defendants:

### INTERROGATORY NO. 1

Identify the person(s) answering these interrogatories, and any person(s) who assisted you in any way in answering these Interrogatories and his, her or their relationship to defendant Joseph Spencer.

**RESPONSE:**

Defendant identifies undersigned counsel and Joseph Spencer as the person answering these Interrogatories. (**Exhibit O**)

*Same Question*

**RESPONSE**:

Defendant identifies undersigned counsel and Glenn Gunderman as the person answering these Interrogatories. (**Exhibit O**)

25

*Same Question*

**RESPONSE**:

Defendant identifies undersigned counsel and William Washburn

as the person answering these Interrogatories.  (**Exhibit O**)

That's all I got.

I propounded twenty-nine Document Production Requests to Defendant William Wash-

burn (**Exhibit  N**).  I received the documents actually requested in response to one of them.

*See*  **Exhibit P**.

Attached as **Exhibit Q** are copies of what Sanders/Arias designate "documents bates

CCS00069 through CCS00085" in their responses/objections to Plaintiff's Interrogatories (**Ex-**

**hibit M**) and Rule 34 document requests (**Exhibit N** and **Exhibit P**).

"[D]ocuments bates CCS00001 through CCS00068" constitute the transcript of Plain-

tiff's examination pursuant to General Municipal Law § 50-e which took place on January 13,

2015 at the law offices of Hiscock & Barclay, in Elmira, at which time plaintiff was questioned

by Jeremy J. Hourihan, Esq., and Matthew Buzzetti, Esq.   A copy of this entire transcript is at-

tached as Exhibit E to the papers filed in this case on July 8, 2021 in support of the motion for

summary judgment by Defendants Andrew C. Hughson and Frank B. Hillman (Doc. No. 67)

(Exhibit F).

All of the "documents bates CCS00069 through CCS00085" had been previously furnish-

ed to me by Attorney Hourihan as part of his clients' mandatory disclosures pursuant to Fed.R.

Civ.P. 26(a)(1).     Hourihan mailed all of these documents to Plaintiff at a time when he repre-

sented *all* of the defendants in this case – both the City Defendants and the County Defendants.

Upon information and belief, copies of all of these initial Rule 26(a)(1) disclosure docu-

ments were furnished to the Barclay Damon lawyers by Hourihan long before Plaintiff served his

26

paper discovery requests on Sanders/Arias, as lawyers for Defendants Gunderman, Spencer and

Washburn.  ***See* Exhibit S** (Hourihan's September 21, 2018 letter to Plaintiff).   In other words,

at the time they prepared their responses/objections to Plaintiff's pretrial discovery requests, up-

on information and belief,  Sanders/Arias knew very well that Murphy was already in possession

of all of them.

None of the "documents bates CCS00001 through CCS00085" remotely qualify for the

"business records" option furnished by Fed.R.Civ.P. 33(d).   This being the case, as a matter of

law, it was impermissible to foist them on Plaintiff in lieu of the required narrative answers to his

Interrogatories.  ***Arnold v. Independent Health Assn***., 2019 WL 3955420, at *8 (W.D.N.Y. Aug.

22, 2019)(quoting ***Trueman v. New York State Canal Corp***., 2010 WL 6811341, at *2 [N.D.N.Y.

Feb. 24, 2010][citing also ***Poulio v. Paul Arpin Van Lines, Inc***., 2004  WL 1368869, at *2

[D.Conn. June 14, 2004])(***See also Sabel v. Mead Johnson & Co***., 110 F.R.D. 553, 554-557

[D.Mass. 1986]; ***Equal Rights Center v. Post Properties, Inc***., 246 F.R.D.  29, 34 [D.D.C.

2007]; ***United States Securities and Exchange Comm. v. Elfindepan, S.A***., 206 F.R.D. 574,

576-578 [M.D.N.C. 2002])

Quite apart from matters of law, ***factually***, ***none*** of the "documents bates CCS00001

through CCS00085" contained ***any*** of the information requested in ***any*** of the Interrogatories

to which they purport to respond.    They might just as well have been eighty-five pages ran-

domly torn out of any telephone book.

In his March 5th letter to Judge Geraci (Doc. No. 64), Sanders asked for a thirty-day ex-

tension of the fact discovery completion deadine to enable him to "prepare and serve supple-

mental [discovery] responses."

Per Text Order entered March 8th (Doc. No. 65), Judge Geraci granted Sanders the re-

lief he requested – stating that those "discovery responses are due no later than 4/8/21."

Copies of all of the Sanders/Arias ersatz "Supplemental Responses" to Murphy's Interrogatories (**Exhibit  M**) served by mail on April 8, 2021 (with Arias's cover letter to Murphy of  even date) are attached **Exhibit R**.     Sanders/Arias never sent Murphy "supplemental" responses/objections to any of  Document Production Requests to Defendant William Washburn (**Exhibit N** and **Exhibit P**).

The legal and logical disconnect between the mantra-like, cookie-cutter, cut-and-paste objections thrown up by Sanders and Arias, on the one hand, and the legitimate discovery questions to which these purport to respond, on the other, is total.    They might as well be generated randomly.

Sanders/Arias never furnish any particularized, concrete reasoned explanation as to why the information or document requested is not relevant, overly broad or why complying with the ask would be unduly burdensome or expensive.

 "'Generalized objections that a discovery request is burdensome without resort to specific reasons is similarly insufficient to justify a refusal to respond")(quoting *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592-93 [W.D.N.Y. 1996])

"In order to effectively resist providing a response to an interrogatory, a party must show 'specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive . . . by submitting affidavits or offering evidence revealing the nature of the burden.'"  *Carl v. Edwards*, 2017 WL 4271443, at *4 (quoting *Pegoraro v. Marrero*, 281 F.R.D. 122, 128 [S.D.N.Y. 2012])(quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co*., 105 F.R.D. 16, 42 [S.D.N.Y. 1984])

"Courts have held that a failure to respond or otherwise object to a discovery request in a timely manner waives any objection which may have been available."   *Land Ocean Lo-*

*gistics, Inc. v. Aqua Gulf Corp*., 181 F.R.D. 229, 236  (W.D.N.Y. 1998)(citations omitted)

"Such pat, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of  Civil Procedure."  ***Obiajulu v. City of Rochester, Dep't of Law***, 166 F.R.D. 293, 295 (W.D.N.Y. 1996)

"When a party seeks relevant discovery, the party resisting discovery bears the burden of establishing the factual basis for withholding the requested discovery." ***Abu-Nassar v. Elders Futures, Inc***., 1991 WL 45062, at *15 (S.D.N.Y. Mar. 28, 1991)(citations omitted)

 "This burden requires an evidentiary showing by competent evidence and cannot be 'discharged by merely conclusory or ***ipsit dixit*** assertions.'" ***Abu-Nassar,*** 1991 WL 45062, at *15 (citing ***von Bulow by Auersperg v. von Bulow***, 811 F.2d 134, 144 [2d Cir. 1984], ***cert. denied***, 481 U.S. 1015 [1987])

"When the relevancy of a discovery request has been demonstrated, the party claiming that a discovery request is overbroad or burdensome 'must show specifically . . .  how each question is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden.  The court is not required to sift each interrogatory to determine the usefulness of the answer sought." ***Compagnie Francaise d'Assurance Pour le Commerce Exterieur v.  Phillips Petroleum Co***., 105 F.R.D. 16, 42 (S.D.N.Y. 1984)(citation omitted)

"[G]eneral statements by counsel, unsupported by affidavits or other competent evidence, are inadequate to demonstrate the burden of complying with proposed discovery relating to relevant areas of inquiry by defendant in this action."  ***Abu-Nassar***, 1991 WL 45062, at *17 (citation omitted)

Sanders/Arias preface ***all*** of their Interrogatory "responses" with the following formulaic, generalized and boilerplate caveat, disclaimer and purported reservation of rights:

29

**OBJECTIONS**

The objections and responses below are based upon information now known or believed to be true.  Defendant and his attorneys have not yet completed their investigation of the facts relating to this action and have not completed discovery or their preparation for trial in this case.   Defendant therefore reserve the right to amend, modify or supplement the objections and responses stated herein.

Subject to and without waiver or limitation of the objections stated below, and subject to Defendant's right to amend and supplement his responses to Plaintiff's demands, Defendant provides the following objections:

In her November 9, 2020 cover letter to me (**Exhibit O**), Arias says:  "If additional information and/or documentation is located, we anticipate supplementing the enclosed discovery responses and interrogatory answers under separate cover and on ***a rolling basis***.[12]"

"Parties shall not recite a formulaic objection followed by an answer to the request.  It has become common practice for a party to object on the basis of any of the above reasons, and then state that 'notwithstanding the above,' the party will respond to the discovery request, 'subject to' or 'without waiving' such objection.   Such objection and answer preserves nothing, and constitutes only a waste of effort and the resources of both the  parties and the court.   Further, such practice leaves the requesting party uncertain as to whether the question has actually been fully answered, or only a portion of it  has been answered." ***Guzman v. Irmadan***, 249

---

[12] Emphasis mine

F.R.D. 399, 401 (S.D.Fla. 2008)(quoting Civil Discovery Standards, 2004 A.B.A Sec. Lit. 18)

*And see Samsung Electronics America, Inc. v. Yang Kun "Michael" Chung*, 321 F.R.D. 250, 283 (N.D.Tex. 2017)("[R]esponding to interrogatories and document[] requests 'subject to' and/or 'without waiving' objections is manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure; this manner of responding leaves the requesting party guessing and wondering as to the scope of the documents and information that will be provided as responsive will be" [some internal quotation marks omitted]).[13]  *See too Safeco Ins. Co. of American v. Rawstrom*, 183 F.R.D. 668, 669-672 (C.D.Cal. 1998)

As noted above, in order to induce Chief Judge Geraci to grant him a thirty-day exten-sion of time to "prepare and serve [our] supplemental [discovery] responses . . .", Sanders pro-claimed in his March 5, 2021 letter (Doc. No. 64)(17-6339) "[i]n recognition of Plaintiff's *pro se* status, in lieu of objecting, we responded to [his pretrial discovery] demands . . ."

Quite apart from the fatal flaws in Sanders/Arias November 9, 2020 "responses" to Murphy's Interrogatories (**Exhibit O**) already mentioned, none of these are signed, much less sworn to under oath, by any of  the three responding defendants.

Rule 33(b)(5) states that "[t]he person who makes the answers must sign them,  and the attorney who objects must sign any objections."

An unsigned and unverified writing does not qualify as an answer to interrogatories.  *Ca-bales v. United States*, 51 F.R.D. 498, 499 (S.D.N.Y. 1970), *aff'd* 447 F.2d 1358 (2d Cir. 1971)

"The oath requirement applicable to interrogatories has legal significance.  Courts have routinely refused to consider interrogatories that do not comport with that mandate."   *Richard v. Dignean*, 332 F.R.D. 450, 457 (W.D.N.Y. 2019)(Wolford, U.S.D.J.)(citing *Monclova v. City of*

---

[13] Cited with obvious approval [as 97 Fed.R.Serv.3d 380] in Pollack, "Litigation of 'Proportionality' as Re-quired by Federal Rule of Civil Procedure, as Amended December 1, 2015," 155 Am.Jur. *Trials* 413 (originally published 2018)(October 2020 Update), at 48, 58 n. 1.

*New York*, 726 Fed.Appx. 83, 84 [2d Cir. 2018])("'None of Monclova's interrogatories were sworn under oath.  Therefore, the district court did not err in disregarding them.'")(citing ***Cris v. Fareri***, 2011 WL 13228490, at *1 [D.Conn. Dec. 13, 2011])("'Requiring a party to sign interrogatory responses under oath serves the critical purpose of ensuing that the responding party attests to the truth of the responses.'"),  ***aff'd,*** 513 Fed.Appx. 8 (2d Cir. 2013)

"[I]nterrogatory responses may be used at trial and in that context are akin to testimony. In essence, when the attorney answers the interrogatory, and not the client, the attorney has effectively become the witness . . . Moreover, the Federal Rules are explicitly clear that interrogatories must be answered by the party to whom they are directed and signed by him under oath."   ***Trueman v. New York State Canal Corp.***, 2010 WL 681341, at *5 (N.D.N.Y. Feb. 24, 2010)(citations omitted).

***And see Roth v. Bank of Commonwealth,*** 1988 WL 43963, at *2 [W.D.N.Y.  May 4, 1988])("'Unsigned and unverified answers are not answers . . . and answers which are signed by the party's attorney and not made under oath by the party do not comply with Rule 33[.]'")(citing also ***McDougall v. Dunn***, 468 F.2d 468, 472 [2d Cir. 1972])

This clearly belies Sanders' assurance to the Court that "in lieu of objecting, [he and and Arias] responded to [Murphy's discovery] demands . . ."  This goes to matters directly material to his request for an extension of time.  Sanders essentially perpetrated a deliberate fraud on the Court to get the relief he wanted.

In his March 5, 2021 letter to the Court (Doc. No. 64). Sanders, commenting on the Sanders/Arias initial discovery responses served by them on November 10, 2020 (**Exhibits O, P** and **Q**), states:

In recognition of Plaintiff's ***pro se*** status, in lieu of objecting, we

responded to [Murphy's discovery] demands and reserved our right

to supplement the responses.    We expect to prepare and serve sup-

plemental responses in the next thirty days.    In addition, Jeremy

Hourihan, Counsel for Co-Defendants Hughson and Hillman, advis-

ed that he is also in the process of responding to Plaintiff's demands.

This is, of course, nonsense.

All of Murphy's discovery demands in this case were served by mail on Sanders/

Arias on October 8, 2020 (**Exhibit B**).  Pursuant to Fed.R.Civ.P. 33(b)(2) and Fed.R.Civ.P.

34(b)(2)(A), the deadline for responding/objecting to those requests was November 10, 2020.

Absent permission from the Court or stipulation, there is no "right" to "supplement"

paper discovery responses after the thirty-day deadline specified in Rule 33(b)(2) and Rule

34(b)(2)(A) expired.    *Safeco Ins. Co. of America v. Rawstrom*, 183 F.R.D. 668, 669-72

(C.D.Cal. 1998);  *Casson Construction Co. Inc. v. Armco Steel Corp*., 91 F.R.D. 376, 379

(D.Kan. 1980); *Dollar v. Long Mfg. Co, North Carolina, Inc*., 516 F.2d 613, 616-17 (5th

Cir. 1977)(*And see Richard v. Dignean*, 322 F.R.D. 450, 459 [W.D.N.Y. 2019];  *Carlson v.*

*City of  Geneva Sch. Dist*., 277 F.R.D. 90, 97 [W.D.N.Y. 2011])

Thanks to the "supplemental discovery responses" mentioned in Sanders' March 5,

2021 letter to Chief Judge Geraci (Doc. No. 64)(served by mail April 8, 2021)(*see* **Exhibit**

**R**), Murphy now knows where all three County Defendants went to high school.    He also

discovered that, after Defendant Joseph Spencer graduated from Waverly High School, he

"went on to attend Herkimer Community Community College and Corning Community Col-

lege in 1982 and 1983, but did not receive a diploma."

I think he meant to say "degree," not "diploma."  (*See, e.g.,* Mary-Claire van Leunen,

*A Handbook for Scholars* 304-306 [1978])

No "supplemental discovery responses" were forthcoming from counsel as to any of the

33

twenty-nine Rule 34 document requests put to William Washburn (**Exhibit N** and **Exhibit P**).

"Defendant responded to plaintiff's two document requests and interrogatories with with  boilerplate objections that include unsubstantiated claims of undue burden, over-breadth and lack of relevancy.   It fact produced no documents and answered no inter-rogatories.   Its responses are *a paradigm of discovery abuse*."   *Jacoby v. Hartford Life and Accident Ins. Co*., 254 F.R.D. 477, 478 (S.D.N.Y. 2009)(Lewis A. Kaplan, U.S.D.J.)(emphasis mine)

Judge Kaplan's words apply with at least equal, if not greater force, to the phony discovery "responses"/objections dumped on Murphy by the County Defendants on No-vember 9, 2020 (**Exhibits O, P** and **Q**).


### Sanders/Arias Unreasonably and Improperly Refused Murphy's Request to Meet and Confer Regarding Discovery in the Instant Case 17-CV-06639-FPG-MWP


Murphy sent Sanders/Arias an email on November 30, 2020 (**Exhibit G**), pointing out that their discovery "responses" are "unacceptable, inadequate and objectionable."   Citing the mandate of L.R.Civ.P. 7(d)(3), I invite them to pick a date and time to meet and confer.

Nary a word in response.

As already mentioned, on May 12, 2021, I emailed Attorney Hourihan a letter (**Ex-hibit E**).

 On that same day, Murphy emailed Attorney Sanders and Attorney Arias a letter as well – also dated May 12th (copy annexed as **Exhibit H**)(contemporaneously emailed to Hourihan).

Attorney Hourihan did not respond until 6:47 P.M. on June 2, 2021.

Attorney Arias responded in nanoseconds – with hers of May 12, 2021 (of which a copy is attached as **Exhibit I**).

It will be noted that in my letter to Sanders/Arias of May 12th (**Exhibit H**), I requested the same two things I requested of Attorney Hourihan (**Exhibit E**), to wit:

First, their consent to an extension of the fact discovery completion deadline in both cases (viz., No. 17-CV-6339-FPG-MWP and No. 18-CV-06628-FPG-MWP) to August 31, 2021 (it will be recalled that Attorneys Sanders and Arias are not involved in my third case – No. 18-CV-6572-FPG-MWP;   Attorney Hourihan represents the City of Elmira Defendants in all three of my pending cases); and

 Second, asking them to select a date and time of their own choosing to meet and confer with me regarding ***all*** discovery matters in ***both*** cases.

It will be noted that, in my May 12th to Sanders/Arias (**Exhibit H**), I mention the Interrogatories and Rule 34 Document Production Demands that ***they*** had served on ***me*** – on behalf of their client, Defendant Bryan Maggs, on February 23, 2021 (No. 18-CV-06628-FPG-MWP).

As of May 12th, I had not responded to any of those February 23rd  paper discovery requests, nor had Sanders/Arias as of yet yapped about such failure on my part.

Nor were there forthcoming from counsel any "good faith letters" (economy) or "Good Faith Letters" (***über***)(Doc. No. 40-1, at Page 3 of 4).   No holding of feet to the fire or Come to Jesus invites.

In my May 12th letter to the Sanders/Arias duo (**Exhibit H**), I made it clear that I would be happy to put ***their*** as-yet-unresponded-to February 23, 2021 paper discovery requests to me (in No. 18-CV-06628) on the menu as well at the proposed meet and confer regarding all of ***my*** discovery issues with them.

35

Responding to mine of May 12th (**Exhibit H**), Attorney Arias tells me the following in hers to me of even date (**Exhibit I**):

> First, as it relates [to] *Christopher M. Murphy v. Andrew C. Hughson, Frank B. Hillman et al*., discovery has been closed since April 8, 2021, and dispositive motions are due July 8, 2021.   As such, there is no need for a meet and confer, and we decline to consent to modifying the current Scheduling Order.

I was puzzled by the above.

Nonetheless, it might be recalled that Chief Judge Geraci had entered a Text Order on March 3, 2021 (Doc. No. 63), scheduling a Status Conference in No. 17-CV-6639 to be held on March 23rd.

Attorney Sanders thereupon sent Judge Geraci a letter dated March 5, 2021 (Doc. No. 64), in which he comments on my paper discovery requests and on his and Attorney Arias' responses/objections to them:

> While Plaintiff appeared for a Court Ordered [*sic*] deposition and served Court Ordered [*sic*] responses to discovery in October of 2020, Plaintiff (belatedly) served discovery demands on all defendants despite the close of fact discovery.
>
> In recognition of Plaintiff's *pro se* status, in lieu of objecting, we responded to demands and reserved our right to supplement the responses.   We expect to prepare and serve supplemental responses within the next thirty days.[14]   In addition, Jeremy

---

[14] *See Safeco Ins. Co. of America v. Rawstrom*, 183 F.R.D. 668, 669-672 (C.D.Cal. 1998)

Hourihan, Counsel for Co-Defendants  Hughson and Hillman, ad-

vised that he is in the process of responding to Plaintiff's demands.

All Defendants intend to file motions for summary judgment after

serving discovery (or supplemental) responses upon Plaintiff.

In light of the above, all defendants respectfully request that,

in lieu of a pre-trial conference, the Court afford the defendants

30 days to serve discovery and then 90-days [*sic*] to file disposi-

tive motions.

Sanders' March 5th letter to the Court (Doc. No. 64) was mailed to me in an envelope

bearing U.S.P.S. postmark March 6th (a copy of the envelope is attached as **Exhibit K**).

I check my mailbox at Lakeview Apartments every day.   Sanders' March 5th letter

was delivered here on March 8th.

In the Court's Order & Amended Scheduling Order entered February 24, 2020 (Doc.

No. 44), the deadline for completion of fact discovery is **June 17, 2020**. "Dispositive motions,

if any, shall be filed no later than **August 12, 2020** . . . " "Responding papers are due by **Sep-

tember 17, 2020**.  Reply papers, if any, shall be filed by **October 15, 2020**." (Doc. No. 44, at

2 of 4)

A formal motion on notice and a sufficient showing of good cause for an extension of

either the fact discovery completion deadline or the deadline for filing dispositive motions was

required, as a matter of law.   *Lujan v. National Wildlife Federation*, 497 U.S. at 895-896 and

896 n. 5 (1990)(*see too Drippe v. Tobelinski*, 604 F.3d at 782-786 and 784 n. 5;  *Smith v. Dis-

trict of Columbia*, 430 F.3d at 456-57)

In response to Sanders' March 5th letter (Doc. No. 64), Judge Geraci granted the fol-

lowing Text Order, entered at 10:46 A.M. on March 8th (Doc. No. 65):

Defendants have filed a letter requesting additional time to

serve discovery and file dispositive motions.   ECF  No. [64].

That request is granted.   Accordingly, discovery responses are

due no later than 4/8/2021.   Dispositive motions are due on or

before 7/8/2021.   The pre-trial conference set for 3/23/2021 is

cancelled.  ECF No. [63].

Judge Geraci's 10:46 A.M. March 8th Text Order (Doc. No. 65) was essentially granted

on an *ex parte* basis – because Sanders delayed sending me a copy of his March 5th letter (Doc.

No. 64)(**Exhibit M**).

In his March 5th letter (Doc. No. 64), Sanders proclaims:

In recognition of Plaintiff's *pro se* status, in lieu of objecting [to

his discovery demands], we responded to those demands and re-

served our right to supplement the responses.

But I guess it depends on what the meaning of the word "is" is.   I said earlier that I

**responded** to each and every one of the paper discovery requests propounded to me by all

defendants in this case.    By this, I mean, quite simply, just this: I actually disclosed all of

the information they asked for and actually provided to them all of the documents requested

of me and did so fully, nonevasively and in good faith.

The word "respond" obviously means something decidedly different to Sanders and Ari-

as.  It is, I think, rather interesting that in his March 5, 2021 letter to Judge Geraci (Doc. No. 64),

Sanders amazingly proclaims:

In recognition of Plaintiff's *pro se* status, in lieu of objecting,

we responded to [his discovery] demands and reserved our right

to supplement the responses.[15]

"It is an impudent brand of sorcery to attempt to blind us with the smoke without convincing us the fire has existed."  Junius (*nom de plume*),  London *Public Advertiser* (January, 1769)

As noted above, in her May 12th letter (**Exhibit I**), Attorney Arias states ". . . discovery has been closed since April 8, 2021."      Judge Geraci's Text Order (Doc. No. 65) specifically refers to Sanders' March 5th letter (Doc. No. 64), requesting "the Court afford the defendants 30 days to serve discovery and then 90-days [*sic*] to file dispositive motions."

I read Judge Geraci's Order somewhat differently - that is to say, not as "closing discovery" as of April 8, 2021.   Based on its clear wording, I read it as doing nothing more than granting Sanders' March 5th letter request for additional time to serve his own so-called "supplemental" discovery responses.

This is, of course, a question of law, not fact.    Sanders and Arias being lawyers, litigating this point should be right up their collective alley.  I invite them to answer and we can debate this. If they want to do so, I am happy to accommodate them.

I see not even the slightest hint in Judge Geraci's cursory March 8, 2021 Text Order (Doc. No. 65) of any intent to withdraw the assignment to Magistrate Judge Payson the job of handling any and all "nondispositive" matters and issues earlier made by not one, but two, District Judges, pursuant to Fed.R.Civ.P. 72(a) and 28 U.S.C. § 636(b)(1)(A).

The District Court's ruling establishes the law of the case in this litigation.[16]

---

[15] Not that I ever asked either this Court or any of these lawyers to cut me any slack *solely* because I am not a lawyer.  *Buckingham v. Lewis General Tires, Inc*., No. 13-CV-6624W, 2019 WL 1028611, at *9 (W.D. N.Y. Mar. 4, 2019)(Marian W. Payson, U.S.M.J.)   Solicitude for special snowflakes?  To be sure, I have asked to be cut slack for *other* reasons, but not *that* one.

[16] *North River Ins. Co. v. Philadelphia Reinsurance Co*., 63 F.3d at 164; *Prisco v. A & D Carting Corp*., 168 F.3d at 607

**Sanders/Arias Unreasonably and Improperly Refused Murphy's**

**Request to Meet and Confer Regarding Discovery in Companion**

**Case No. 18-CV-06628-FPG-MWP**

In her May 12th letter to Murphy (**Exhibit I**), Arias says this:

> Second, as to *Christopher M. Murphy and Barbara M.*
>
> *Camilli v. County of Chemung et al*., we are willing to meet
>
> and confer.  We can discuss extending the current June 4,
>
> 2021 discovery deadline during our meeting.
>
> . . .
>
> I will be available for a meet and confer on May 21, 2020
>
> [*sic*] at 1:00 P.M.   Please use dial in number 1-800-345-6202,
>
> dial in code 0703459.

I spent a good deal of time preparing for that meet and confer.   I wanted to be able to address and talk about each and every one of my discovery requests – and also all of the ones they had served on me on February 23, 2021 on behalf of their client, Defendant Bryan Maggs (06628)(alluded to, *supra*, at 20).

On May 21, 2021, at 1:00 P.M. (± thirty seconds), I called 1-800-345-6202 – the toll-free number given in Attorney Arias's May 12th letter (**Exhibit I**).

A woman answers.  Not Attorney Arias.   Another woman.   Not Attorney Arias, you say madam?   Is this Attorney Arias's office?    Who's Attorney Arias?    She's a lawyer, says I.    Is this Barclay Damon?    Barclay who?

"You've reached Expanko Resilient Flooring.  This is Stephanie Mason."

40

"No, we are not a law firm.   We do commercial flooring."

I immediately called back – 1-800-345-6202.  *Déjà vu* all over again.  Same woman – who couldn't have been more patient and gracious with me.  But same bad news – for me.

*See* October 13, 2020 letter from Arias to Murphy (17-6339)(copy attached as **Exhibit J**):

> You will need to call the following Dial-In Number and
>
> enter the Meeting ID and Passcode no later than 10:00 am
>
> Friday to participate in your deposition:
>
> **Dial In Number: 19294362866**
>
> **Meeting ID: 856 8263 6161**
>
> **Passcode: 809582**

At approximately 1:07 P.M., I called the number given on Attorney Arias's Barclay Damon letterhead – presumably her direct line or extension (315-413-7227), but only got her voicemail.    I left a message for counsel, advising her what had happened and asking her to call me back as soon as possible.    Five to ten minutes later, having received no response or return call from Ms. Arias, I called that number again, leaving the same message on her voice-mail.

Attorney Arias returned my phone call at 1:45 P.M. (± two minutes).  When I reiterated that she had obviously given me the wrong 800 number in her May 12th letter, she said "sorry about that" – offering me neither explanation nor further expressions of apology or regret.   Smug, facetious, disingenuous - and too cute by half really.

When I mentioned the meet and confer – in other words, the reason I was calling her at the time -  Attorney Arias politely informed me that there was nothing whatsoever for us to meet and confer about - because "we" [she and her colleague obviously] stand by *all* of "our"

41

[earlier-stated] objections to **all** of "your" discovery requests.

I asked her to kindly reiterate that – because I wanted to make sure I was picking up what she was laying down.

She did so.  "Absolutely," says she.

"I was all ear."   Milton, **Comus**, l. 560 (1653)

I thereupon told her that we had nothing more to talk about and ended my cursory telephone conversation of May 21st with Ms. Kayla Arias.

I am not an attorney, but I did not just fall off the turnip truck.      Counsel could could barely contain her glee or satisfaction with herself – or the way she handled me.   The tea leaves were there to be read.

As Nietzsche recounts and reminds in **Thus Spake Zarathustra**, Parts I-III (1883-1884)(Eng. trs. 1909, 1930), we cultivate our own hangmen (**Hängenmenschen**).

*See* **Exhibit H** (and Doc. No. 49, Pages 16-17 of 68, ¶¶ 51-52)

*See generally* Grimm, *Are We Insane?  The Quest for Proportionality in the Discovery Rules of the Federal Rules of Civil Procedure*, 36 Rev.Litig. 117, 148-149 (Winter 2017) and Gelbach and Kobayashi, *The Law and Economics of Proportionality in Discovery*, 50 Ga. L.Rev. 1093, 1103-1105 (Summer 2016)(*And see Mancia v. Mayflower Textile Servs. Co*., 253 F.R.D. 354, 362-363 [D.Md. 2008][Grimm, U.S.D.J][17] and *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc*., 246 F.R.D. 522, 529-30 [S.D.W.Va. 2007])

---

[17] Civil Rules Advisory Committee, Chair, Discovery Subcommittee (2009-2015)

**<u>A Number of Matters Raised in Connection with the Sanders/Arias</u>**

**<u>February 12, 2020 Motion to Compel Discovery Are Material to the</u>**

**<u>Present Application for an Extension of Scheduling Deadlines</u>**

**<u>Pursuant to Fed.R.Civ.P. 16(b)(4)</u>**


<u>*Doc. No. 40-1(Motion to Compel)(Sanders Declaration)*</u>


¶ 12   I received a call from an individual who represented that she was Plaintiff's girlfriend, Barbara Camilli, and advised Plaintiff would not appear for his deposition the following day.

¶ 14   In the interim, my Office made several unsuccessful attempts to reach Plaintiff by telephone to determine whether he intended to comply with Defendants' discovery demands.

¶ 16   To date, despite multiple good faith efforts, Plaintiff has failed to serve responses to Defendants' Discovery Demands   . . .  We made multiple phone calls (that were not answered) and sent multiple letters in a good faith attempt to meet and confer with Plaintiff regarding his failure to respond to discovery demands . . .


<u>*Doc. No. 49 (Answer)(Murphy Declaration)*</u>


¶ 12   Nonetheless, it is they, not I, who failed to comply with the Court's Scheduling Order.

¶ 52   Handling these things on a ***pro se*** basis again would clearly be a mistake

on my part.  I am bad in this regard – when it comes to both deposing and being deposed.
I am, sadly, better at thinking than I am at doing.

¶ 56   It is axiomatic that there are, in this world, different types of inquiries.
In my primary world – which might be classified generally as the natural (as opposed to so-
cial) sciences and matters quantitative – there is one type of inquiry.   For present purposes,
it suffices to serve up the following distinction.    On one hand, for example, a question as to
whether or not a notice of appeal was filed a day before or a day after the thirty-day period pre-
scribed by law.    On the other, the sort of inquiry that I think is called for here – at least insofar
as is deals with the critical, yet nebulous and conceptual, question of **good faith**.

¶ 61   Until forty-five or so minutes ago, it was my intention to argue that strict
compliance with the duty or obligation imposed on Counsel  by Rule 37(a) and Local Rule
7(d)(3) was, categorically, a condition precedent to consideration of a motion such as this
one.

¶ 63  Nonetheless, I see now that it would be incorrect to posit this as some sort
of universal or axiomatic rule or requirement.

¶ 63  n. 39   Unless,  of course, this Court is of  the view that naked recitals, hol-
low conclusory recitals and the like are adequate to satisfy the requirements [] of Rule 37(a)
and Local Rule 7(d)(3) – which I do **not** believe to be the case based on what I have seen to
date.

¶ 67  And, as the Court of Appeals notes in **Naviant Marketing Solutions, Inc. v.
Larry Tucker, Inc**., 339 F.3d 180, 186 (3d Cir. 2003):

> Naviant's counsel contended at oral argument and in his
>
> brief that he 'repeatedly' conferred with defense counsel on
>
> [**sic**][mine] an effort to resolve the discovery dispute.  We are

unable to discover in the record before us that he ever made a

***good faith*** to confer with defense counsel to resolve discovery

disputes[.](Emphasis in original)

¶ 68  The chasm between recitals and claims, on one hand, and the reality and truth of things, on the other, is so vast as to be untraversable.

¶ 69  Counsel cites 'multiple phone calls' and 'multiple good faith efforts' to amicably and informally resolve the discovery dispute(s) arising in this case.   By necessary implication, he seeks to impute bad faith and culpability to me – in connection with the County Defendants' discovery demands.

¶ 70  More particularly, in his Declaration, Counsel refers to 'several unsuccessful [] to reach Plaintiff by telephone and 'multiple phone calls (that were not answered') – with regard to Defendants' discovery demands and noticed deposition.

¶ 71  As far as I know, during the period in question (that is, December 23rd to January 17, 2020), there were no telephone calls made to our phone and phone number originating from the '585' Area Code.

¶ 72  Early on, I asked Barbara to promptly let me know about any calls originating in the '585' Area Code.    My thinking is that any such any such calls might relate to any of the three cases I have pending in this Court.

¶ 73  Upon information and belief,  to the best of her recollection, there were none. Nonetheless, we have a very cheap cell phone and a very cheap program.   It is only possible to view the record of incoming or outgoing calls going as far back as the last twenty (20) calls. There is no record of any calls received or made prior to that.

¶ 73  n. 46  Perhaps Counsel has such records – covering the entire period in question here.     If he does, I invite him to produce them for the Court.   I have little doubt that he

would likely be in a position to document many calls to me in connection with his repeated requests that I consent to his own requests for extensions of time in my other case – that is to say, extensions of time within which to bring the motion to dismiss he wanted to bring in that other case.

¶ 74  I am not referring here to those calls made by Attorney Sanders when he wanted or needed something from me, but rather about those calls, actual or purported, regarding matters as to which he had no practical incentive to actually speak with me regarding the matters at hand.

¶ 75  In his Declaration, Counsel mentions that '[o]n December 9, 2019, I received a call from an individual who represented that she was Plaintiff's girlfriend, Barbara Camilli, and advised that Plaintiff would not appear for his deposition the following day.'

¶ 80  Barbara and I have only one phone between us (a cell phone).  I am not the boss of it; she is.   I was in Ithaca all day on December 9th.   I asked Barbara to call Counsel's office during business hours that day to advise that they should not expect me to appear to be deposed the following day.

¶ 81  It is, I think, directly material from the standpoint of the present discussion that, upon information and belief, based on was downright nasty, rude, if not border-line abusive to her in the December 9th telephone conversation referred to above.

¶ 82  Upon information and belief, in that telephone conversation, Attorney Sanders was clearly very angry that I would not be showing up at his office the next day to be deposed – and, so too it appears, angry at Barbara simply because she was the messenger.

¶ 83  Upon information and belief,  based on what Barbara told me when I got home later that same day, she could hardly get a word in edgewise – because Counsel was hell-bent on serving up the parade of horribles that he and Judge Payson were certainly going to visit on Chris in both this case and his other case (No. 18-CV-06628-MAT-MWP) – simply because of

46

his (Chris') non-appearance for that deposition.

¶ 84  When I later got home on December 9th,  Barbara was still upset and rattled from

her earlier telephone conversation with Attorney Sanders.     She seemed convinced, based on

the things Counsel said, that this would be the death-knell for me (and her), insofar as these pen-

ding § 1983 lawsuits are concerned.

¶ 85  In light of what Barbara told me about that telephone conversation, I believe that

only someone who is a friend of mistreatment would invite it again.

¶  85 n. 50   If there is any question or doubt about any of this, Barbara would be happy

to put in her own first-person account and Declaration.

¶ 87  I was under no duty or obligation whatsoever, whether legal, ethical or born of

courtesy or civility, to respond or take any action of any kind.   It is only because the milk of

human kindness courses through my veins that I asked Barbara to make that telephone call.


### Doc. No. 51 (Sanders Reply Declaration)


¶ 3   Preliminarily, Plaintiff has not been forthright about his intentions.   Plaintiff's

opposition papers establish that despite having no substantive objections to the discovery de-

mands, he formulated a specific intention to never respond to the outstanding discovery de-

mands or appear for his deposition(s).  See Murphy Declaration, ¶ 9.  Despite that intentional

decision, Plaintiff failed to notify Defendants of his position, keeping them in the dark.

¶ 5  Three days prior, on October 25, 2019,  Jeremy Hourihan, Counsel for Defendants

Hughson and Hillman, had requested a 120-day extension of discovery, which was granted by

the Court by Text Order on November 30, 2019.     A copy of the October 25, 2019 letter is at-

tached as **Exhibit 1**; Text Order available at Dkt. 38.  Notably, the Court directed Mr. Hourihan

to secure  Plaintiff's consent to the request, which resulted in a delay in the granting of a request due to Plaintiff's failure to respond to Mr. Hourihan's phone calls.    A copy of the November 1, 2019 letter is attached as **Exhibit 2**.

¶ 6  As such, Plaintiff is incorrect in the assertion that Defendants' demands were untimely; they were served in October, and the current deadline for fact discovery is June 17, 2020. [Dkt. 45].   Plaintiff should not benefit from his own failure to meaningfully participate in discovery, given his refusal to return phone calls.

*See*  Court's September 15, 2020 Order (Doc No. 55, Page 2 of 7)  ". . . [T]he County Defendants served their discovery requests after the court-ordered deadline for discovery had passed and before the Court had decided whether to grant their request for a further extension."

¶ 7  Even if the Court were to agree the Defendant's [*sic*] initial service of the discovery demands was untimely (because the deadline for fact discovery was not extended until the Court's Text Order on November 5, 2019), Defendants served their first good-faith letter on December 3, 2019, well after the Court's November 5th Text Order extending discovery, which notified Plaintiff that Defendants continued to seek responses to their demands. [Dkt. 40-3].

¶ 8  Therefore, there is no basis in either fact or law, to support Plaintiff's contention that Defendants' discovery demands were untimely.

*See* Doc. No. 49, Pages 3-12 of 68

*See* Doc. No. 55, Page 2 of 7

¶ 9  Plaintiff has the ability and means to draft a 68 page response to this Motion to Compel, yet he refuses to respond to Defendants' reasonable and standard discovery demands.[18]

---

[18] *See* Fed.R.Civ.P. 26(g)(1)(B)

*Murphy's Informal  Sur-Reply Responses and Comments*

*Telephone Calls*

Why is it these guys never write, text or email?  Is it maybe because the lesson of history and experience is that I simply do not answer or respond to cold calls?  And perhaps that our cheapie cell phone is not set up for leaving voicemail messages?

These people know this and they use it to their advantage – the record evidence amply attests to just this fact.

Am I under any legal, ethical or other obligation to answer, respond to or acknowledge unsolicited telephone calls made to my cell phone out of the blue?   Am I reasonably or properly chargeable with such unanswered phone calls?

*A fortiori*, what about phone calls that were not, in fact, made?

For me, the lesson of history and experience is to steer clear of oral discussions with persons of low repute and dubious credibility.   With them, things tend to get twisted, distorted – and out-and-out lies told about the substance and/or import of such conversations.

Their byword: "Say it, forget it; write it, regret it." Judge Marilyn Milian (*The People's Court*)

Bertrand Russell wrote that "[i]t is not *what* the man of science believes that distinguishes him, but *how* and *why* he believes it.   His beliefs are tentative, not dogmatic;  they are based on evidence, not on authority."

Where's Sanders' *evidence* of all the phone calls he claimed to have made to me about depositions and discovery?

Telephone bills?   Cell phone records?   Office calling logs?      Documentation of any kind?   As silent as the grave.   Miguel de Cervantes Saavedra, *Don Quixote de La*

*Mancha, Part II  lxii* (1615)


### The Court's September 15, 2020 Order (Doc. No. 55)


Discretionary authority is circumscribed by reason and law and its outermost contours are not typically delineated with bright-line boundaries.

"A magistrate judge possesses wide discretion in handling pre-trial discovery matters." *United Parcel Service of America, Inc. v. The Net, Inc*., 222 F.R.D. 69, 70 (E.D.N.Y. 2009) (Spatt, D.J.)(citation omitted)(*See also Carmona v. Wright*, 233 F.R.D. 270, 276 [N.D.N.Y. 2006])

The range of valid choice which the Court might make within this area is undoubtedly a wide one and the wisdom of any particular choice within the allowable spectrum is not for me to decide.

"Rules are like doughnuts.   They have holes in 'em – and that's where discretion lives." *Your Honor*, Part V (© CBS Studios, Inc. 2021)

"As Lord Chief Justice Holt said, '[d]iscretionary is but a softer word for arbitrary.' But there are some stars to steer by."  Tigar, Michael E., *Federal Appeals: Jurisdiction and Practice* 180 (2d ed. 1993)

As earlier mentioned, the Court ruled.   I complied - and did so fully, nonevasively, in good faith and timely fashion.

**Murphy's Statement of Changes to the October 16, 2020 Deposition**

**Transcript, Pursuant to Fed.R.Civ.P. 30(e), Was Unlawfully Omitted**

**From the Transcript Now Before this Court**


In support of their respective motions for summary judgment, both the City Defendants (Doc. No. 66 [Exhibit 2]) and the County Defendants (Doc. No. 67 [Exhibit F]) attach as exhibits a copy of the transcript of my deposition testimony on October 16, 2020.     Neither of them, however, include a copy of  "Statement of Changes by Plaintiff Christopher Murphy, Pursuant to Fed.R.Civ.P. 30(e), to Transcript of Deposition of Plaintiff held on October 20, 2020," dated December 2, 2020 (of which a copy is attached as **Exhibit T**).

Annexed as **Exhibit U** is a copy of the letter to Plaintiff dated November 2, 2020 from the reporter who transcribed my deposition testimony on October 16, 2020, Jordan T. Wilson, directing me to the transcript to the "Maggs Law Offices, PLLC, 110 Baldwin Street, Elmira, New York 14901."

This is where Barbara Camilli hand-delivered a copy of Murphy's  "Statement of Changes" (**Exhibit V**) on December 4, 2020 (attached as **Exhibit V** is a copy of a receipt acknowledging delivery of same to that office on that date signed by Ms. Jodi Van Zile, the secretary or receptionist).

Pursuant to Fed.R.Civ.P. 30(e)(2), Wilson was required to "note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period."

Hand-delivery to Hourihan's office on December 4, 2020 was timely under Fed.R.Civ.P. 30(e), inasmuch as the transcript was served by mail on November 2, 2020.     Pursuant to Fed.R.Civ.P. 6(d), three days must be added  to the period which would otherwise expire un-

der Rule 6(a).  *See, e.g. CNPQ v. Inter-Trade, Inc*., 50 F.3d 56, 58 (D.C.Cir. 1995)

Wilson, however, failed to comply with Fed.R.Civ.P. 30(e)(2) by "not[ing] in the certificate prescribed by Rule 30(f)(1) whether review was requested and, if so, must attach any change the deponent makes during the 30-day period."

Wilson did not comply with the duties and obligations imposed upon an "officer" under Fed.R.Civ. 28(a)(1) and Fed.R.Civ.P. 30(b)(5)(A).  *See generally* Skinner, *A Handbook for Notaries Public and Commissioners of Deeds* §§ 11-12, 53-55, 204[a], 221-229 (3d ed. 1963)

The only words coming out of her mouth were directed to me – "raise your right hand" – said in a nasty manner.

Throughout the entire deposition, Arias and Hourihan directed "Jordan" to go off the record, so that they could confer privately with her, out of my hearing.  Wilson invariably accommodated counsel in this regard.     I have no clue as to what was discussed during these private off-the-record conversations between counsel and Wilson, inasmuch as they all took place outside my hearing.

For at least the reasons explained in my "Statement of Changes" (**Exhibit T**), the deposition transcript prepared and delivered by Wilson substantially changed and distorted much of my deposition testimony and did so in material respects.    My "Statement of Changes" reflects only some of these errors, inaccuracies and distortions -  the ones recalled from my contemporaneous notes.

**<u>Request that Judicial Notice be Taken</u>**


Pursuant to Fed.R.Evid. 201(b), Plaintiff respectfully requests that the Court take judicial notice of all papers and proceedings in both of two companion cases (No. 18-CV-06572-FPG-MWP and No. 18-CV-06628-FPG-MWP).

As earlier mentioned, in his October 25, 2019 letter to the Court (Doc. No. 51-1)(17-6339), Hourihan says this:

> As the Court is aware, there is a companion case involving
>
> Mr. Murphy as the Plaintiff (Case No. 18-CV-6628), that stems
>
> from the same underlying situation.  The parties hope to conduct
>
> Plaintiff's deposition at the same time for both cases.

Similarly, in companion case No. 18-CV-06572-FPG-MWP, Attorney Maggs filed a Status Report on August 4, 2021 (Doc. No. 35 [or Doc. No. 34]), in which he explains that:

> As the Court is aware, there are two companion cases involving
>
> the Plaintiff, Christopher Murphy, that are ongoing . . .  These three
>
> cases have been running simultaneously . . . Although the cases were
>
> filed separately, many of the issues in the cases overlap.
>
> . . .
>
> My hope is that we can depose Plaintiff on both outstanding cases
>
> on the same date on August 24, if the Plaintiff would consent to such.

*See Fisch on New York Evidence* § 1066 (2d ed. 1977)(*and also Sam & Mary Housing v. Jo/Sal Market*, 100 A.D.2d 901, 903 [2d Dep't 1984])(judicial notice of records in the same court of either the pending matter or other actions),  *aff'd*, 64 N.Y.2d

167 [1985]; *Mebert v. Mebert*, 111 Misc.2d 500, 502 [1981])("[t]he court takes judicial notice of its own records")(*And see* Wright and Kane, *Federal Practice and Procedure: Federal Practice Deskbook* § 99 [2002 ed.]; *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 [2d Cir. 1999])

　　　*See* Doc. No. 41, at Pages 3-4 (18-CV-06628-FPG-MWP).  Here, all of the documents which are the subject of the instant request that judicial notice be taken are, conveniently, already before this Court.

　　　These three cases are each an integral part of an organic whole.   Not just the same plaintiff in all three, but overlapping defendants and lawyers.    The three cases are artificially set off by formal bright-line dividing lines soley because the various and sundry claims and causes of action are attended by differing periods of limitation.    Substantively, nothing more than bells and whistles.

　　　All three actions trace their origins to one sprawling, incohate, messy real-world fact situation triggered a decade earlier  – on July 2, 2011 (warrantless search of Murphy's home by City of Elmira actors, including Defendant Timothy Overly [No. 18-CV-06572]).

　　　To be sure, in his Reply Declaration on the earlier motion to compel (Doc. No. 51, at Page 3 of 5, ¶ 12), Sanders raised an objection to this, saying:  "[f]inally, Plaintiff raises two other lawsuits irrelevant to this case and the pending application.    For the sake of judicial, economy, Defendants decline to address them."

　　　It is, I think, interesting that Sanders presumes to set himself up as the ultimate arbiter of judicial economies and diseconomies.

**Plaintiff's Request for Extension of Scheduling Deadlines**

**Pursuant to Fed.R.Civ.P. 16(b)(4)**

As the Court of Appeals explains in ***Burlington Coat Factory Warehouse Corp. v. Esprit de Corp***., 769 F.2d 919, 927 (2d Cir. 1985),

> There is, of course, no litmus test to determine the exact amount of time needed for discovery in a particular case. Claims of a need for more discovery by a party who has dilligently used the time available, however, should be given more favorable consideration than claims by one who has allowed months to pass unused.

***See also Grochowski v. Phoenix Construction***, 318 F.3d 80, 86 (2d Cir. 2003)("A finding of good cause depends on the dilligence of the moving party.")[19]

More particularly, as Magistrate Judge Foschio teaches in ***Arnold v. Krause***, 232 F.R.D. 58, 65 (W.D.N.Y. 2004):

> [a] request to modify a case management order pursuant to Rule 16(b) requires a showing of 'good cause' . . . 'Good cause' for amending a Rule 16(b) order requires that a party demonstrate that despite their due dilligence the time table could not reasonably have been met.   (Citations and some internal quotation marks omitted)

***Accord***: ***Carlson v. Geneva City School District***, 277 F.R.D. 90, 95 (W.D.N.Y. 2011); ***Nelson***

---

[19] ***Grochowski*** and several other cases cited here involve the interplay of Fed.R.Civ.P. 15(a) and Fed.R.Civ. P. 16(b)(4) - which is not the question here.   Notwithstanding, the discussion in these cases is still directly material, I think, to the present motion.

*v. Gleason*, No. 14-CV-870[A], 2018 WL 1569381, at *2-3 [W.D.N.Y. Mar. 29, 2018]; *Staple-
ton v. Pavillion Building Installation Systems, Ltd*., No. 09-CV-0934S[F], 2015 WL 13659265,
at *3 [W.D.N.Y. Dec. 18, 2015]; *McDaniel v. Town of Enfield*, 227 F.Supp.3d 195, 197 [D.
Conn. 2016])

　　　*Cf*. *Star Direct Telecom, Inc. v. Global Bandwidth, Inc*., 272 F.R.D. 350, 359 (W.D.N.Y.
2011)

　　　*And see Squyres v. Heico Cos., LLC*, 782 F.3d 224, 237-238 (5th Cir. 2015); *Filguiera
v. U.S. Bank Nat'l Ass'n*, 502 F.3d 7, 10-11 (1st Cir. 2007); *Sherman v. Winco Fireworks*,
*Inc*., 532 F.3d 709, 716 (8th Cir. 2008); *Rivera-Torres v. Rey-Hernandez*, 502 F.3d 7, 10-11
(1st Cir. 2007); *Days Inn Worldwide, Inc. v. Sonia Investments, LLC*, 237 F.R.D. 395, 396-99
(N.D.Tex. 2006); and *Molokai Chamber of Commerce v. Kukui (Molokai), Inc*., 161 F.R.D. 5,
10 (D.Haw. 1995)

　　　*See generally* 3 *Moore's Federal Practice* § 16.13 (3d ed. rev. 2020)

　　　　Based on the above, Murphy respectfully requests an extension of the fact discovery
completion deadline and attendant scheduling deadlines of one hundred and twenty days from
the date of entry of the Court's Order determining this motion - but *only* for himself, as the plain-
tiff in this case, to enable him to move to compel discovery and conduct such additional and fur-
ther discovery as is necessary or appropriate to enable him to obtain the information and evidence
he needs to prepare and present his case.

　　　"In order to be able to ask, one must want to know, which involves knowing that
one does not know." Phelps and Pitts, *Questioning the Text: The Significance of Phenom-
enological Hermeneutics for Legal Interpretation*, 29 St. Loius U.L.J. 353, 353 (1985)(quo-
ting H. G. Gadamer, *Truth and Method* 326 [1975])

　　　　Murphy opposes any request by any of the Defendants for an extension of the fact

discovery completion deadline and/or other scheduling deadlines for the purpose of either

conducting further discovery or calling upon Murphy to meet and confer with counsel regard-

ing discovery as a condition precedent to any Rule 37 motion to compel by him.

      While Murphy is entitled to the relief he respectfully requests of this Court pursu-

ant to Fed.R.Civ.P. 16(b)(4),  none of the Defendants are.    As to them, "good cause" does

not exist.


### Declaration under 28 U.S.C. § 1746(2)


      I declare under penality of perjury that all of the above is true and correct.


### Request for Relief


      **WHEREFORE**, the undersigned declarant respectfully requests an Order granting him

the following relief, to wit:

      [a] pursuant to Fed.R.Civ.P. 16(b)(4), extending the current deadline for comple-

tion of fact discovery, together with attendant scheduling deadlines, for one hundred and twenty

(120) days from the date of entry of the Order determining this motion;

      [b] pursuant to Fed.R.Evid. 201(b), taking judicial notice of all papers and proceed-

ings of record in both of two companion cases (No. 18-CV-06628-FPG-MWP and No. 18-CV-

06572-FPG-MWP);

      [c] denying any motion or request by any of the Defendants for an extension of

the fact discovery completion deadline or other scheduling deadlines; and

      [d]  granting the undersigned such additional and further relief as may be equita-

ble and proper to this Court.

Date: September 2, 2021

<div style="margin-left:40%;">

Signed and Respectfully Submitted,

*s/Christopher Murphy*

Christopher M. Murphy

Plaintiff, appearing ***pro se*** for the moment

Residence and Post Office Address:

105 Geneva Street, Apartment 237

Bath, New York 14810

Telephone: (607) 664-6717

</div>

To: Paul A. Sanders, Esq.

Kayla A. Arias, Esq.

Roy Z. Rotenberg, Esq.

Robert M. Shaddock, Esq.

Jeremy J. Hourihan, Esq.

Bryan J. Maggs, Esq.

Exhibit C

To: Bryan J. Maggs, Esq.

    Jeremy J. Hourihan, Esq.

From: Christopher Murphy

Re: ***Murphy v. Campanella et al.***

    Case No. 18-CV-06572-FPG-MWP

    ***Murphy v. Maggs et al.***

    Case No. 18-CV-06628-FPG-MWP

Date: December 3, 2020

Dear Attorney Maggs and Attorney Hourihan:

      As you know, I served interrogatories and demands for the production of documents to be responded to by the City Defendants whom you represent.    These were sent via Priority Mail on September 10, September 30 and October 8.   I have tracking numbers for each mailing, so I know not only that these were delivered, but also the exact time and date they were delivered to your office.

     To date, there has been nary a word from you in response – and it is well past the thirty-day deadline for you and your clients to respond.

     I invite you to advise me – by mail and ***not*** by telephone – as to a specific date and time to meet and confer by telephone with a view toward resolving any and all discovery-related matters informally and between ourselves, so as to avoid having to resort to judicial intervention.

      You can pick a date and time of your choosing and, so too, I invite you to block out as much time as you deem necessary for this conference.    I ask you to give me at least five (5) days advance notice of the date you choose – and, as I said, in writing and not by telephone.  For reasons that are not here relevant, I simply do not receive word of

attempts to reach me by cell phone.

      Inasmuch as my discovery requests were served so long ago – with no response of any kind from you – I think it is reasonable and fair to impose a deadline for the telephone conference I propose.   I expect you to schedule this conference on or before December 21st. I will be prepared to address and discuss any discovery-related matters you might want to raise and I trust you, too, will be prepared to do so at that time.

                  Very truly yours,

                  Christopher M. Murphy

                  105 Geneva Street,  Apartment 237

                  Bath, New York 14810

    To be hand-delivered at Maggs Law Offices, PLLC, 110 Baldwin Street, Elmira, during normal business hours on Friday, December 4, 2020

Exhibit E

To: Jeremy J. Hourihan, Esq.

   Bryan J. Maggs, Esq.

From: Christopher Murphy

Re:  ***Murphy and Camilli v. Maggs et al***. (Case No. 18-CV-06628-FPG-WWP)

   ***Murphy v. Campanella et al***. (Case No. 18-CV-06572-FPG-MWP)

   ***Murphy v. Hughson et al.*** (Case No. 17-CV-6339-FPG-MWP)

Date: May 10, 2021

Dear Attorney Hourihan and Attorney Maggs:

   I have yet to receive your clients' written responses/objections to the discovery requests that I served by mail in early September of last year.

   As you may recall, on November 30th, Barbara hand-delivered a written invitation to meet and confer with you regarding your failure to timely respond to my discovery requests.   I never heard back from you concerning the matter.

   I got your letter dated February 3rd of this year, inquiring as to whether I would agree to an extension of time to February 19th to serve your clients' responses to my paper discovery requests.

   I did not get back to you regarding that request.    My thinking was that, if your clients responded to my discovery requests reasonably, adequately and in good faith by the February 19th cut-off date you proposed, that would be acceptable to me.

   Nonetheless, since your February 3rd letter, there has been nary a word from you regarding the matter.     No discovery responses, no requests for more time, no attempt to explain the long delays on your part – in connection with my paper discovery requests to your clients.

   At this point, it is my position that your clients have waived any and all possible

objections that they might otherwise have interposed to any of my discovery requests.

That said, I am willing to meet and confer with you regarding any or all issues and matters relating to discovery – in all three of my pending cases.   This should not be construed or mistaken as a waiver of any objections on my part.  I explicitly reserve any or all objections and rights I have or might have at the present juncture.

That having been said, nothing is written in stone with me.  I like to think that I will always respond to logical arguments – insofar as they strike me as reasonable and persuasive.

More to the point, I guess, it is reasonably possible that, in the course of any meet and confer, I might be willing to agree to an additional and further extension of time for you to respond to my discovery requests.

In any event, I invite you to meet and confer with me regarding any and all discovery-related matters in all three cases.      You can pick a date and time at your own convenience and block out as much time as you think necessary to address and deal with the entire gamut of discovery matters and issues.

The above said, I would like at least three days notice beforehand – in other words, in advance of the date you decide on.

I write as well to inquire whether you will agree to an extension of the deadline for fact discovery in the three cases captioned above.   If so, I propose an extension in all three cases to August 31, 2021.     If you do not consent to an extension, I will make the appropriate motion to respectfully request such relief.

As I am sure you realize, we are working against time constraints in each of these cases, so I would ask you to get back to me at your earliest convenience.

Thank you for your prompt attention to this matter.

I remain . . .

Very truly yours,

 s/ Christopher Murphy

Christopher M. Murphy

105 Geneva Street, Apartment 237

Bath, New York 14810

Telephone: (607) 664-6717


P.S.  As something of an aside, I think that the "M" with a circle around it on your letter-

head should probably be bigger.   Make a ***real*** statement, as it were.   Just a thought.


cc: Paul A. Sanders, Esq.

    Kayla A. Arias, Esq.

Exhibit G

To: Paul A. Sanders, Esq.

    Kayla A. Arias, Esq.

    Barclay Damon, LLP

From: Christopher Murphy and Barbara Camilli

Re: ***Murphy and Camilli v. Maggs et al***.

    Case No. 18-CV-06628-FPG-MWP

    Your File No. 3101018

Date: November 30, 2020

Dear Ms. Arias and Mr. Sanders:

    I received your responses to my discovery responses dated September 10th and October 21st.

    With very few exceptions, these are unacceptable, inadequate and objectionable.

    As Mr. Sanders correctly points out in his letter of October 29th,  Rule 7(d)(3) of the Local Rules of Civil Procedure require the parties to make a good faith attempt to resolve disputes regarding discovery on their own prior to making any formal motions or otherwise invoking the intervention of the Court.

    With this in mind, please advise in writing – not by telephone – as to one or more dates and times that will be acceptable to you for the purpose of conferring with a view toward resolving any and all discovery-related disputes informally.

    Thank you for your prompt attention to this matter.

                Very truly yours,

                s/Christopher Murphy

                Christopher M. Murphy

                105 Geneva Street, Apartment 237

Bath, New York 14810


cc: Jeremy J. Hourihan, Esq.

   Bryan J. Maggs, Esq.

Exhibit H

To: Paul A. Sanders, Esq.

　Kayla A. Arias, Esq.

From: Christopher Murphy and Barbara Camilli

Re: ***Murphy and Camilli v. Maggs et al***. (Case No. 18-CV-06628-FPG-MWP)

　***Murphy v. Hughson et al.*** (Case No. 17-CV-6339-FPG-MWP)

Date: May 10, 2021

Dear Attorney Sanders and Attorney Arias:

　I am writing for two reasons.

　First, I invite you to pick a date and time to meet and confer with me regarding any and all discovery-related matters in the two cases captioned cases.　Select a date and time that is convenient for you.　Block out as much time as you think necessary to resolve what needs to be accomplished.

　If it would be preferable or more convenient for you to do this on a Saturday or Sunday, that would be okay for me.

　What's your pleasure?

　The meet and confer I propose would, as I said, embrace any and all discovery-related matters in both cases.  This includes the discovery requests that you propounded to me on behalf of your client, Defendant Bryan Maggs, that I received on or about March 1, 2021.

　I would like at least three days ***written*** notice of the date and time you decide on. trying to contact me by telephone is problematic.   Lest there be any question on this, I do not mean three days from the date of postmark or mailing, but rather three days as measured from the date of receipt or delivery.

　As you may recall, at the Scheduling Conference in No. 18-CV-06628 held on

70

September 10th of last year, Judge Payson stressed the fact that, when it comes to dis-
covery, she expects all parties to make every reasonable effort to resolve any and all
differences and disputes between themselves before asking the Court to step in to re-
solve them.    In my view, the Court's emphatic admonition concerning strict compli-
ance with the mandate of L.R.Civ.P. 7(d)(3) falls in the category of words to the wise,
not to mention a stern warning to the unwise or improvident.

As a non-lawyer *pro se* litigant, the last thing I want to do is tempt the furies
and test the Court's resolve when it comes to stuff like this.    If for no reason other
than pure self-interest, I believe that you will find me ready to work with you with
regard to these matters in good faith and with a spirit of cooperation.

I have never done a meet and confer before, so I am inclined to defer to your
more extensive experience in dealing with these matters.      Quite apart from all else
involved, I view things like this as a learning experience for me.   If it comes down to
a motion to compel, the learning curve is, for me, a steep and unappealing one.   This
being the case, I'd like to think that we will be able to work things out informally and,
if not *truly* amicably, at least somewhat so.    And without the need of intervention by
the Court.

Second, please advise me whether or not you will agree to an extension of the pre-
sent deadline for completion of fact discovery in these two cases.   I propose an extension
of the deadline to August 31, 2021.

If you consent to such extension of time, we can join in a request that Judge Payson
grant such relief – or, if you wish, I will handle this on my own.

If you decide not to consent to what I propose, I will make the appropriate motion
to respectfully request that relief of the Court.

Plaintiff Barbara Camilli joins with me as to the matters mentioned above.

As I am sure you are aware, we are under time constraints here, so I ask you to

get back to me at your earliest convenience.

Thank you for your prompt attention to these matters.

I am . . .

Very truly yours,

*s/ Christopher Murphy*

_____

Christopher M. Murphy

Plaintiff, appearing *pro se* at this time

105 Geneva Street, Apartment 237

Bath, New York 14810

Telephone: (607) 664-6717

cc: Jeremy J. Hourihan, Esq.

Bryan J. Maggs, Esq.